John J. Hebert (#010633)
Mark W. Roth (#010708)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART PC**
3636 North Central Avenue, Suite 1200
Phoenix, AZ 85012
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-mail: PhoenixBankruptcyECF@polsinelli.com
E-Mail: jhebert@polsinelli.com
E-Mail: mroth@polsinelli.com
E-Mail: wray@polsinelli.com

*Attorneys for Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| LONE TREE INVESTMENTS, LLC<br>PINE CANYON GOLF, L.L.C.<br>MOUNTAIN VISTA AT PINE CANYON, L.L.C.<br>ELK PASS, L.L.C.<br>DEER CREEK CROSSING, L.L.C.<br>CREEKSIDE VILLAGE HOMES, LLC | Case No. 2:10-bk-26776-RTBP<br>Case No. 2:10-bk-26779-RTBP<br>Case No. 2:10-bk-26785-RTBP<br>Case No. 2:10-bk-26790-RTBP<br>Case No. 2:10-bk-26792-RTBP<br>Case No. 2:10-bk-26794-RTBP |
| Debtors. | Joint Administration under<br>Case No. 2:10-bk-26776-RTBP |
| This filing applies to:<br>☒ ALL DEBTORS<br>☐ SPECIFIED DEBTORS | **MOTION TO SELL HOMES AND RESIDENTIAL LOTS IN THE ORDINARY COURSE OF BUSINESS** |

Lone Tree Investments, LLC ("Lone Tree"), Creekside Village Homes, LLC ("Creekside"), Elk Pass, L.L.C. ("Elk Pass"), Mountain Vista at Pine Canyon, L.L.C. ("Mountain Vista"), Deer Creek Crossing, L.L.C. ("Deer Creek") and Pine Canyon Golf, L.L.C. ("Pine Canyon Golf") (collectively, the "Debtors"), through counsel undersigned, hereby move this Court for an order, pursuant to 11 U.S.C. §363, permitting the Debtors to sell homes and residential lots in the ordinary course of the Debtors' business. The Debtors own and operate the residential community, golf course, and related facilities commonly known as Pine Canyon in Flagstaff, Arizona. Aside from

2734322.1

1

the operation and management of a golf course and related facilities, the Debtors' principal source of revenue is the construction and sale of residential homes and the sale of residential lots. The sale of such homes and residential lots is one of the Debtors' primary business functions, and has been conducted scores of times since the Debtors' inception. The Debtors intend to sell their inventory of homes and lots, pay the ordinary closing costs and commissions, and distribute or retain the remaining proceeds consistent with existing contractual obligations or any supervening Order of this Court. Although the Debtors submit that these sales are plainly within the ordinary course of their business, and as a result, may be undertaken without prior notice or hearing, they request the Order sought herein in an abundance of caution. This Motion is supported by the following Memorandum of Points and Authorities and the Declaration of Patricia E. Nolan attached as Exhibit "C" to the Debtors' Motion to Approve Debtor-in-Possession Financing (the "DIP Financing Motion"), filed concurrently herewith and incorporated herein by this reference.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     FACTUAL BACKGROUND**

1. On August 24, 2010, Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

2. Debtors are authorized to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

4. The subject matter of this motion is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (M).

5. The Debtors, collectively, own and operate the residential community, golf course, and related facilities commonly known as Pine Canyon in Flagstaff, Arizona (the "Property").

6. Pine Canyon Golf operates the golf course, and attendant facilities, while the other Debtors own various parcels of real property at varying stages of development within the Property. (See attached Exhibit "A" for a summary of the entities and their properties).

2734322.1

7. The Debtors currently own three single family residences, five condominiums and five townhomes, as well as 20 lots on which additional townhomes can be constructed, pads on which an additional 48 condominiums can be constructed, and 80 residential lots located within the Property.

8. The Debtors intend to continue to develop and sell these homes and residential lots in order to fund their reorganization.

9. Such sales of the Debtors' homes and residential lots are in the ordinary course of the Debtor's business.

10. To refinance former acquisition and development loans regarding the Property, Debtors entered into that certain Construction Loan Agreement, dated June 26, 2008, whereby Johnson Bank ("Johnson") agreed to advance to the Debtors as much as $25,000,000 (the "Johnson Loan").

11. The documents executed by the Debtors in connection with the Johnson Loan establish a regime whereby 75% of the gross proceeds generated through the sale of any portion of the Property subject to Johnson's lien is transferred to Johnson.

12. Concurrently herewith, the Debtors have filed the DIP Financing Motion, seeking the Court's permission to incur up to $1,000,000 in post-petition indebtedness (the "DIP Loan").

13. If the DIP Financing Motion is granted, the lien of Johnson Bank will be subordinated to a lien in favor of Flagstaff Acquisitions, L.L.C. (the "DIP Lender").

14. The loan documents that will be executed by the Debtors in connection with the DIP Loan require that 75% of all net proceeds generated through the sale of any portion of the Property be transferred to the DIP Lender, and the remainder be transferred to Johnson.

15. The proceeds of all sales to be conducted by the Debtors during the course of their reorganization shall be distributed to Johnson and / or the DIP Lender as is required by the agreements in place, as modified by any order of this Court entered as a result of the DIP Financing Motion.

2734322.1

16. As set forth in the Purchase Contract attached hereto as Exhibit "B", the Debtors are presently set to close the sale of a townhome residence located within the Property, with a purchase price of $635,000, on or before August 25, 2010.

17. This residence is not subject to the lien in favor of Johnson.

18. As set for the in the Purchase Contract / Escrow Instructions attached hereto as Exhibit "C", the Debtors are presently set to close on the sale of a condominium unit located within the Property, with a purchase price of $500,000, on or before August 27, 2010.

19. These sales, and the purchase contracts used to effectuate them, are typical and included herein only as exemplars of the sales that the Debtors intend to transact without future Court involvement.

## II. LEGAL DISCUSSION

Pursuant to 11 U.S.C. §363(c)(1), a debtor in bankruptcy may sell property of the estate in the ordinary course of the debtor's business without notice and a hearing. "A determination of whether a transaction falls outside the ordinary course of business is a question of fact that depends on the nature of industry practice." *In re Jan Weilert RV, Inc.*, 315 F.3d 1192, 1196 (9th Cir. 2003). Two inquiries must be considered when determining whether a given transaction is within the ordinary course of a debtor's business. First, a Court must consider "whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit." Secondly, it must be determined "whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." *In re Straightline Investments, Inc.* 525 F.3d 870, 879-81 (9th Cir. 2008)(citing *In re Dant & Russell, Inc*., 853 F.2d 700 (9th Cir 1988)).

In the present case, both of these inquiries lead indubitably to the conclusion that the sales of homes and residential lots described herein are within the ordinary course of the Debtors' business. It cannot be said that the sale of homes and lots subjects any creditor to an unforeseen risk. The loan documents executed in connection with the Johnson Loan and the DIP Loan

4

specifically contemplated and account for the distribution of proceeds upon such a sale. In fact, because the sale of homes and lots is responsible for a significant portion of the Debtors' revenues, to endanger them with the delay and stigma of prior Court approval would create risk for which the pre-petition creditor did not bargain.

Similarly straightforward is a determination that similar businesses would undertake such sales in the ordinary course of their business. Except for Pine Canyon Golf, the Debtors were created to, and are in the business of, selling homes and residential lots. Since their inception the Debtors have developed, marketed, and sold homes and residential lots. That any business similarly created and operated would engage in the types of transactions discussed herein goes without saying. Selling property must be in the ordinary course of a business created to sell property.

Based on the foregoing, the Debtors respectfully request that this Court enter an Order authorizing the sale of homes and residential lots, on terms negotiated by the Debtors, without the necessity of prior notice or a hearing, and deeming such sales to be within the ordinary course of the Debtors' business.

DATED: August 24, 2010.

POLSINELLI SHUGHART PC

By: /s/ Wesley D. Ray
John J. Hebert
Mark W. Roth
Wesley D. Ray
3636 N. Central Ave., Suite 1200
Phoenix, AZ 85012

*Attorneys for Debtors*

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") on August 25, 2010, to:

U.S. TRUSTEE'S OFFICE
230 N. 1st Avenue, Suite 204
Phoenix, AZ 85003

Joseph E. Cotterman
GALLAGHER & KENNEDY P.A.
2575 E. Camelback Road, Suite 1100
Phoenix, AZ 85016-9225
*Attorneys for Johnson Bank*

By: /s/ Mary Shultz

5

2734322.1