John J. Hebert (#010633)
Mark W. Roth (#010708)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART PC**
3636 North Central Avenue, Suite 1200
Phoenix, AZ 85012
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-mail: PhoenixBankruptcyECF@polsinelli.com
E-Mail: jhebert@polsinelli.com
E-Mail: mroth@polsinelli.com
E-Mail: wray@polsinelli.com

*Attorneys for Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT

## THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| LONE TREE INVESTMENTS, LLC<br>PINE CANYON GOLF, L.L.C.<br>MOUNTAIN VISTA AT PINE CANYON, L.L.C.<br>ELK PASS, L.L.C.<br>DEER CREEK CROSSING, L.L.C.<br>CREEKSIDE VILLAGE HOMES, LLC | Case No. 2:10-bk-26776-RTBP<br>Case No. 2:10-bk-26779-RTBP<br>Case No. 2:10-bk-26785-RTBP<br>Case No. 2:10-bk-26790-RTBP<br>Case No. 2:10-bk-26792-RTBP<br>Case No. 2:10-bk-26794-RTBP |
| Debtors. | Joint Administration under<br>Case No. 2:10-bk-26776-RTBP |
| This filing applies to: | **MOTION TO APPROVE DEBTOR-IN-POSSESSION FINANCING** |
| ☒ ALL DEBTORS | |
| ☐ SPECIFIED DEBTORS | |

Lone Tree Investments, LLC ("Lone Tree"), Creekside Village Homes, LLC ("Creekside"), Elk Pass, L.L.C. ("Elk Pass"), Mountain Vista at Pine Canyon, L.L.C. ("Mountain Vista"), Deer Creek Crossing, L.L.C. ("Deer Creek") and Pine Canyon Golf, L.L.C. ("Pine Canyon Golf") (collectively, the "Debtors") hereby move this Court for an order permitting the Debtors to borrow up to $1,000,000 (the "Post-Petition Advance") from Flagstaff Acquisitions, L.L.C. ("Lender"). As an incentive to make the Post-Petition Advance, Lender would be given a lien on the Property, as hereafter defined, senior to all existing encumbrances. If approved, the lien by which the Post-

Petition Advance would be secured would prime an existing lien in favor of Johnson Bank ("Johnson"), the Debtors' primary creditor. This lien, and the other terms of the Post-Petition Advance, are prerequisite to Lender's willingness to extend credit to the Debtors, and common in the context of debtor-in-possession financing. According to an appraisal commissioned by Johnson, as of May 6, 2010, the Property is worth approximately $60,120,000. Johnson's claim against the Debtors is presently estimated to be in the principal amount of $24,275,826. As is clear, then, sufficient equity exists in the Property to allow for the Post-Petition Advance without harming Johnson's interests.

The Post-Petition Advance is absolutely essential to the Debtors' ongoing operations and necessary to the prospect of a successful reorganization. The funds received thereunder would be used to pay the Debtors' ordinary and necessary operating expenses and prevent the serious harm to the estates and the interests of creditors that would result from the liquidation that would inevitably accompany an unavailability of operating capital. The Post-Petition Advance is designed to be short-term only (through the end of November 2010) to allow Debtors to seek and negotiate more permanent debtor-in-possession financing while they prepare and submit their plan of reorganization.

## I.  PROPOSED FINANCING TERMS

1. <u>Principal Amount</u>:      $1,000,000

2. <u>Structure</u>:      Revolving line of credit

3. <u>Interest Rate</u>:      15% per annum

4. <u>Maturity Date</u>:      November 30, 2010

5. <u>Payments</u>:      75% of the net proceeds generated through the sale of any of the Property shall be remitted to Lender (to a maximum of the amount then due to Lender) and applied to the outstanding balance, the remaining 25% (or higher amount) shall be remitted to Johnson, presuming that the sale is of property that is part of Johnson's collateral.

6. <u>Collateral</u>:      A first-position lien on the Property. This lien would prime an existing lien in favor of Johnson on portions of the Property.

7. <u>Lender</u>:      Flagstaff Acquisitions, L.L.C.; a member holding a 99% interest in Debtor Lone Tree Investments, LLC.

2733764.4

## II.     FACTUAL AND PROCEDURAL BACKGROUND

1.     On August 24, 2010, Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

2.     Debtors are authorized to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

4.     The subject matter of this motion is a core proceeding under 28 U.S.C. §157(b)(2)(A), (D), and (M).

5.     The Debtors, collectively, own and operate the residential community, golf course, and related facilities commonly known as Pine Canyon in Flagstaff, Arizona (the "Property").

6.     Pine Canyon Golf operates the golf course, and attendant facilities, while the other Debtors own various parcels of real property at varying stages of development within the Property. (See attached Exhibit "A" for a summary of the entities and their respective properties).

### A.     The Johnson Loan

7.     To refinance former acquisition and development loans regarding the Property, Debtors entered into that certain Construction Loan Agreement, dated June 26, 2008, whereby Johnson agreed to advance to the Debtors as much as $25,000,000 (the "Johnson Loan").

8.     In connection with the Johnson Loan, the Debtors executed that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing, dated June 26, 2008, (the "Deed of Trust") in favor of Johnson.

9.     The Deed of Trust purports to establish a first-position lien on certain real property included in the Property in favor of Johnson.[1]

10.     According to the Debtors' records, the Johnson Loan's current balance is approximately $24,275,826.

### B.     The Debtors' Need for Debtor-in-Possession Financing

11.     The Debtors' current operating revenue is insufficient to pay their operational

---

[1] Nothing herein shall be construed as an admission as to the validity or extent of Johnson's claim against the Debtors or its interest in the Property.

expenses. These expenses include, but are not limited to, payroll, golf-course maintenance, operation of golf club amenities and other ordinary and necessary expenses. Attached hereto as Exhibit "B" is a schedule of projected cash requirements showing the expenses, and certain of the revenues, expected over the next 120 days.

12. The Debtors' negative cash flow is principally due to the Debtors' inability to close sales of its real property in Arizona's stressed economy. As a result of their current cash-flow deficit, the Debtors are in dire need of additional financing to maintain operations and preserve the value of their estates while formulating and implementing strategies to improve cash flow. The Debtors are presently considering a number of alternatives for operations which Debtors believe would decrease operating expenses and increase revenues. But the alternatives being considered are complex, and have other implications, so the Debtors need more time and research to determine which, if any alternatives should be considered and implemented.

13. Without additional financing, the Debtors project that they will run out of operating capital within 10 days.

14. The lack of cash with which to pay operating expenses will result in foreclosure on the Property by Johnson and other creditors, thus destroying value for the members, homeowners, homeowners associations, and other creditors, and eliminating the going-concern value that the Property presently enjoys.

**C. The Debtors' Efforts to Obtain Financing**

15. As is detailed in the Declaration of Patricia E. Nolan, attached hereto as Exhibit "C" (the "Nolan Declaration"), and in recognition of the obvious need for additional funds, the Debtors' management has been engaged in soliciting additional financing.

16. The Debtors' efforts have included, but not been limited to:

    a. Approaching the Debtors' principals and other investors regarding the possibility of an equity infusion;

    b. Contacting traditional (including Bank of America and Northern Trust Bank) and non-traditional lenders (including EFO Financial Group, LLC,

Pacific Capital Group, L.L.C. and Green Street Capital Group, LLC) regarding the possibility of unsecured debtor-in-possession financing;

    c.    Contacting traditional and non-traditional lenders regarding the possibility of unsecured debtor-in-possession financing allowable with a priority superior to all administrative expenses; and

    d.    Contacting traditional and non-traditional lenders regarding the possibility of debtor-in-possession financing secured by a junior lien on the Property.

17.    Other than Lender, none of the sources of financing with whom the Debtors inquired were willing to extend credit to the Debtors on any of these terms.

18.    Three of the non-traditional lenders contacted by Debtors indicated that they might be willing to make a short-term loan to Debtors but only upon payment of a significant fee at the outset of the loan (as detailed in the Nolan Declaration, one non-traditional lender suggested a fee of between $10,000 and $20,000, another suggested a fee between $40,000 and $50,000, and the third suggested a fee of between $40,000 and $60,000 and that lender would require an additional payment, in advance, of approximately $20,000 as an application fee and for lender's attorneys fees).  All three of these non-traditional lenders would also require that any such advance be secured by a first lien on the Property and each indicated they would have to evaluate the Debtors and the Property further before committing to any advance.

19.    Johnson has advised Debtors that it, too, is unwilling to provide additional credit to Debtors.

20.    The Debtors do not have unencumbered property of any significant value that could serve as collateral for the Post-Petition Advance.

21.    Given the current credit climate, it is unlikely that continued efforts would result in any additional sources of financing.

**D.    The Post-Petition Advance**

22.    Lender is an Arizona limited liability company, and the majority member of Lone Tree.

23.     Lender is the only entity that has agreed to advance any funds to the Debtors on an immediate basis, without further evaluation and without requiring the payment of any fee at the outset of the loan, and will do so only in the event that such advance is secured by a first-position lien on the Property.

24.     Lender has agreed to advance up to $1,000,000 to the Debtors, on a short-term revolving basis, with interest accruing at the rate of 15% per annum and without the need for payment of any fees (points) at the initiation of the credit facility.

25.     The interest rate and other obligations associated with the Post-Petition Advance are reasonable and customary for debtor-in-possession loans.

26.     The absence of a requirement for any loan origination fee is more favorable than most debtor-in-possession loans.

27.     As explained in the Nolan Declaration, all of the real property included in the Property that has never yet been sold by Debtors is, according to Debtors' agreement with the City of Flagstaff, supposed to be titled in a subdivision trust.

28.     Most but not all of the Property is indeed so titled in Fidelity National Title Insurance Company Trust B-178, the trustee of which is Fidelity National Title Insurance Agency of Coconino, Inc.

29.     Title to the Property that is in the subdivision trust will have to be transferred to Debtors for Lender's deed of trust to be recorded against the Property.

30.     After recordation of Lender's deed of trust against the Property (and recordation of the Order sought hereby granting Lender's deed of trust priority over the lien held by Johnson), all of the Property that has never yet been sold by Debtors will have to be transferred back into the subdivision trust.

31.     Attached hereto as Exhibits "D" and "E," respectively, are copies of the Revolving Line of Credit Multiple Advance Promissory Note and the Deed of Trust and Assignment of Rents that, upon the Court's approval, would be executed to effectuate and document the Post Petition Advance (collectively, the "Post-Petition Loan Documents").

2733764.4

32.     Attached hereto as Exhibits "F" through "Q," respectively, are copies of the deed that the trustee of the subdivision trust and Debtor Lone Tree would be directed to execute temporarily transferring title to the various Debtors and the deeds that the Debtors would sign returning title to the subdivision trust.

33.     These documents would be recorded with the Coconino County Recorder in the following order, without any other documents being recorded in between them:  (a) Order of this Court directing the recordations; (b) deed from subdivision trust and Lone Tree to Debtors; (c) Lender's deed of trust; and (d) deed from Debtors back into the subdivision trust.

34.     The Debtors' management, in exercise of its sound business judgment, believes that additional financing is not only advisable, but necessary, to continue operations and that the Post-Petition Advance is in the best interests of the Debtors, their creditors, and their estates.

35.     It is absolutely essential that Debtors have cash this time of year, which is one of the busiest parts of the season for this type of facility.

36.     This short-term financing will allow Debtors to seek and negotiate more permanent debtor-in-possession financing while they prepare and submit their plan of reorganization.

### E.     Adequacy of Protection of Johnson's Interests

37.     According to the Debtors' records, no creditors hold a security interest in the Property other than Johnson.

38.     As noted above, according to the Debtors records, the Loan's current balance is approximately $24,275,826.

39.     According to an appraisal conducted by Appraisal Technology, Inc. at Johnson's request, as of May 6, 2010 (the "Johnson Appraisal"), the Property was worth approximately $60,120,000.  A copy of the summary pages of the Johnson Appraisal is attached hereto as Exhibit "R," and a disc of the entire Appraisal will be provided to the Court and counsel for Johnson Bank.

40.     Based upon the Johnson Appraisal, therefore, Johnson presently enjoys an equity cushion in excess of $35,000,000.

2733764.4

41.     As indicated above, the Johnson Appraisal established a value of $60,120,000 for the Johnson Loan collateral.  However, the Johnson Appraisal failed to include several elements of the Johnson Loan collateral and, as such, Johnson has an even greater equity cushion than $35,000,000.   The parcels of the Johnson Loan collateral that were not appraised include the following:

| |
|---|
| Tracts A, B, T, 13, 15A, 15B, 17A, 17B, 18A, 19A, 19B, 20A, 20B, 20C, 20D, 20E, 20F, 20G and 25, according to the plat of record in Case 8, Map 92, records of Coconino County, Arizona |
| Tracts 16A, according to the plat of record in Case 8, Map 92, records of Coconino County, Arizona, excepting therefrom any portion that has be re-subdivided into the AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON |
| Tracts 8A, 8B, 8C, 10A, 11A and 12A, THE ESTATES AT PINE CANYON UNIT TWO according to the plat recorded in Case 9, Map 28, records of Coconino County, Arizona |
| Tracts 4B and 4C, THE ESTATES AT PINE CANYON UNIT THREE, according to the plat recorded in Case 9, Map 59, records of Coconino County, Arizona |
| Tracts 4E, 4F, 5A, 5B, 5C and 5D, THE ESTATES AT PINE CANYON UNIT FOUR, according to the plat recorded in instrument no. 3393728, records of Coconino County, Arizona |
| Tracts 24B, 24D and 24E, MOUNTAIN ESTATES UNIT ONE AT PINE CANYON, according to the plat recorded in Case 9, Map 22, records of Coconino County, Arizona |
| Tracts 14A, 14B, 14C, 14D, 14E, 14F, 14G, 14H, 14J and 14K, MOUNTAIN ESTATES UNIT TWO AT PINE CANYON, according to the plat recorded in Case 9, Map 71, records of Coconino County, Arizona |
| Tracts 21A and 21B, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in instrument no. 3416358, records of Coconino County, Arizona |
| Tracts 24F and 24G, FINAL PLAT OF MOUNTAIN VISTA CONDOMINIUM AT PINE CANYON, according to the plat recorded in instrument no. 3430465, records of Coconino County, Arizona |
| Tracts 3A, 3B, 3C, 3D and  3E, FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON according to the plat recorded in instrument no. 3450516, records of Coconino County, Arizona |
| Lot 275, THE ESTATES AT PINE CANYON UNIT FOUR, according to the plat recorded in instrument no. 3393728, records of Coconino County, Arizona |

Many of these tracts constitute the private roads within the Pine Canyon development.  Others are various parcels set aside for drainage and other engineering needs and yet others are currently designated as open areas (including the common areas surrounding condominium parcels).  While such parcels may be difficult to value separate from the individual residential lots, it certainly cannot be suggested that they have no value at all.

More importantly, however, the Johnson Appraisal completely ignored (a) the entry house at the main entrance to the community and the parcel on which it is constructed; (b) the sales office

and the property on which it constructed; and (c) estate lot 275. The latter is currently listed for sale at $1,200,000.

42. Pursuant to the Post-Petition Loan Documents, at least 25% of the net proceeds generated through the sale of any of the Property shall be remitted to Johnson for application to the indebtedness existing under the Johnson Loan.

### III. LEGAL ARGUMENT

"It is given that most successful reorganizations require the debtor-in-possession to obtain new financing simultaneously with or soon after the commencement of the Chapter 11 case." *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 36-37 (Bankr. S.D.N.Y. 1990). Pursuant to 11 U.S.C. § 364(d), the Court may authorize the incurring of credit secured by a senior lien on property of the estate if the debtor is unable to obtain such credit otherwise, and the interests of junior lienholders are adequately protected.

Aside from Lender, and even after many inquiries, the Debtors' management was unable to locate a source of financing that would agree to be unsecured or to be junior to Johnson's interest in the Property. Lender has required, as a condition of its willingness to advance funds, that it be granted a first-position lien on the Property. The provision of such a priming lien will not harm the interests of Johnson in the slightest because, according to the Johnson Appraisal, the Property is worth approximately $35,000,000 more than Johnson's claim. Moreover, as provided in the Post-Petition Loan Documents, at least 25% of all net proceeds generated through the sale of parcels located within the Property and upon which Johnson has a lien will be remitted to Johnson for application to the indebtedness existing under the Johnson Loan. The Post-Petition Advance is essential to the continuation of operations and necessary to preserve the value of the estates' assets. Without operations, there is no revenue and, without cash to pay for maintenance, the value of the Property and related facilities plummets. The financing necessary to maintain the Property and failure to pay the necessary expenses of operations would be harmful to the bankruptcy estates, the members and homeowners, not to mention the other creditors of the estate.

2733764.4

### A. The Debtors are unable to obtain credit from any source other than Lender.

Only reasonable efforts need be taken to locate unsecured post-petition financing to satisfy the requirements of 11 U.S.C. § 364. *See In re Sky Valley, Inc.*, 100 B.R. 107 (Bankr. N.D. Ga. 1988) (due to unique location and nature of the Debtor's business, approaching only four lenders was adequate to show an inability to obtain credit otherwise). "[Section 364] imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Snowshoe Co., Inc.* 789 F.2d 1085, 1088 (4th Cir. 1986).

It should not take much consideration or evidence for the Court to assure itself, in this case, at this time, that the availability of unsecured financing is nonexistent. As set forth in the Nolan Declaration, representatives of the Debtors contacted several potential sources of financing, ranging from traditional banks to private hard money lending institutions. None of these financiers indicated a willingness to advance funds to the Debtors, even on the same terms and with the same collateral as being offered to Lender in connection with the Post-Petition Advance. The possibility of the Debtors obtaining unsecured financing, even with a super administrative priority, is nil.

The Debtors are operating in a time of severe restrictions on, and general reluctance by, both traditional and non-traditional lenders. Lender is the only lender that has agreed to advance funds immediately, and those funds must be obtained to orderly administer the Debtors' estates and preserve the going-concern value of the Property. The terms offered to Lender in order to obtain the Post-Petition Advance are reasonable given the current credit climate and the Debtors' financial situation and, in fact, were rejected by various other lending sources. As such, and in consideration of the absence of harm to Johnson, as detailed below, the Post-Petition Advance should be approved in full.

### B. The interests of Johnson are adequately protected.

An equity cushion is the quintessential mechanism for ensuring that the interests of existing secured creditors are adequately protected. *See In re Mellor,* 734 F.2d 1396, 1400 (9th Cir. 1984); *In re Patrician St. Joseph Ltd. P'ship,* 169 B.R. 669, 676 (D. Ariz. 1994) (quoting *Mellor* and recognizing "[A] classic method of finding adequate protection is the existence of an equity

10

cushion"); *Anchor Sav. Bank FSB v. Sky Valley, Inc.* 99 B.R. 117, 119 (N. D. Ga. 1989); *In re Dunes Casino Hotel*, 69 B.R. 784, 796 (Bankr. D.N.J. 1986). Another universally accepted method of protecting a secured creditor's interests is through the provision of cash payments. 11 U.S.C. § 361(1). In this instance, both the existence of a significant equity cushion and payment to Johnson upon the sale of parcels serving as its collateral prevent any claim that Johnson is not adequately protected.

As noted above, according to the Johnson Appraisal, which was commissioned, reviewed and approved by Johnson, the Property is worth approximately $35,000,000 more than the amount of Johnson's claim. Moreover, pursuant to the Post-Petition Loan Documents, the Debtors will remit at least 25% of all net proceeds generated through the sale of parcels of the Property to Johnson.

Lastly, it must be remembered that the Post-Petition Advance will be used to continue operations and maintain the Property. These expenditures made in preservation of not only Johnson's interests, but those of all members, homeowners and other creditors, in and of themselves, constitute adequate protection. *See In re 499 W. Warren Street Associates*, 142 B.R. at 53, 56-57 (Bankr. N.D.N.Y. 1992) ("Under appropriate circumstances, use of a portion of the rental income to pay the reasonable and necessary operating expenses of the property satisfies [the adequate protection requirement]."); *see In re Princeton Square Associates, L.P.*, 201 B.R. 90, 96 (Bank S.D.N.Y. 1996) ("The use of rents by a debtor in possession to maintain the property to the same extent that a receiver of rents would use the rents does no economic harm to the lender.").

In sum, it is beyond reasonable dispute that the interests of Johnson are adequately protected. The substantial equity cushion existing above Johnson's interest in the Property, combined with the cash payments to be received pursuant to the Post-Petition Loan Documents and the Debtors' commitment to maintain the Property to the extent possible, ensure that Johnson will not suffer any harm as a result of the Post-Petition Advance.

////

////

2733764.4

## IV. REQUEST FOR EXPEDITED RELIEF

Due to the Debtors' immediate need for cash, a motion will be filed herewith seeking an expedited hearing of this matter. For purposes of Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure and Local Rule 4001-4, the Debtors submit that the Post-Petition Advance sought to be approved herein is necessary to avoid immediate and irreparable harm to their estates and, because of this extraordinary circumstance, seek its approval immediately. As such, the Court should grant this motion in full, and authorize the relief requested herein without delay or further hearing.

## V. CONCLUSION

The Debtors must obtain funding to remain in business. No source of immediate cash, other than Lender, exists. The funds to be advanced by Lender as the Post-Petition Advance will be used to maintain the Debtors' operations and to preserve the Property. The $35,000,000 in equity that exists in the Property, above the full amount of Johnson's claim, and the cash payments to be made to Johnson in accordance with the Post-Petition Loan Documents, absolutely ensure that Johnson is adequately protected. The Post-Petition Advance is necessary, beneficial to all parties-in-interest, and offered with attractive terms. There is no reason it should not be approved in full.

WHEREFORE, the Debtors respectfully request that the Court enter an Order approving the Post-Petition Advance, and ordering that no further action be necessary to perfect Lenders' resultant first-position lien on the Property.

DATED: August 24, 2010.

POLSINELLI SHUGHART PC

By: _____
    John J. Hebert
    Mark W. Roth
    Wesley D. Ray
    Security Title Plaza
    3636 N. Central Ave., Suite 1200
    Phoenix, AZ 85012

*Attorneys for Debtors*

2733764.4

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") on August 25, 2010, to:

U.S. TRUSTEE'S OFFICE
230 N. 1ˢᵗ Avenue, Suite 204
Phoenix, AZ 85003

Joseph E. Cotterman * jec@gknet.com
GALLAGHER & KENNEDY P.A.
2575 E. Camelback Road, Suite 1100
Phoenix, AZ 85016-9225
    *Attorneys for Johnson Bank*

List of Top 20 Creditors

By: _____ */s/ Mary Shultz* _____

# EXHIBIT A

## Summary of Entities and their Properties

### Lone Tree Investments, LLC

This entity is the primary developer of Pine Canyon and owns the entry house, sales office, Clubhouse, golf course and all other member-affiliated amenities (the swimming pools, tennis courts, park area, lakes, etc), as well as many of the private streets and other areas set aside in the development for engineering matters (retention areas, etc.) on which construction is not planned. To date, it has sold 273, and still owns 38, fully developed "estate lots" of a half-acre or larger which are entitled for single-family residences. It also owns all of the undeveloped parcels in the subdivision that are intended for future residential housing. These parcels are in varying stages of entitlement, platting, etc. The legal descriptions of the properties owned by this company (or held in a subdivision trust the beneficiary of which is this company) are shown on the accompanying Schedule #1.

### Creekside Village Homes, LLC

This entity (a wholly-owned subsidiary of Lone Tree Investments, LLC) constructed and has now sold all 92 single-family homes constructed in the Creekside neighborhood of Pine Canyon. These lots and the homes on them were sold as "turnkey" residences. Currently, the company (or a subdivision trust the beneficiary of which is this company) owns only the private streets and a few parcels in the neighborhood on which construction is not anticipated. The legal descriptions are on the accompanying Schedule #2.

### Elk Pass, L.L.C.

This entity (a wholly-owned subsidiary of Lone Tree Investments, LLC) is developing the initial townhome neighborhood of Pine Canyon. There are 23 planned buildings, with two duplex attached residences in each. Thirteen buildings (26 residences) have been constructed and 23 of those have been sold. As such, this entity (or a subdivision trust the beneficiary of which is this company) currently owns three finished residences that are available for sale and 20 parcels on which residences can be constructed. In addition, the company owns the private roads in the neighborhood as well as a few parcels on which construction is not planned. The legal descriptions are on the accompanying Schedule #3.

### Mountain Vista at Pine Canyon, L.L.C.

This entity (a wholly-owned subsidiary of Lone Tree Investments, LLC) is developing 60 condominiums at Pine Canyon. Three of the planned 15 four-unit buildings (12 units total) have been completed and seven of those 12 units have been sold. This entity (or a subdivision trust the beneficiary of which is this company) owns the five unsold units, the parcels on which the remaining 48 units will be constructed, all of the common areas that surround the condominium buildings, the private roads in the neighborhood and a few parcels on which no construction is planned. The legal descriptions are on the accompanying Schedule #4.

# *EXHIBIT A*

**Deer Creek Crossing, L.L.C.**

This entity (a wholly-owned subsidiary of Lone Tree Investments, LLC) is the developer of the newest neighborhood in Pine Canyon. It was originally platted for 38 single-family residential lots and marketed as another "turnkey" area where a buyer would select a lot (smaller in size than the estate lots) and select one of a variety of floor plans and then the developer (or a related entity) would construct the selected home on the selected lot. No such sales have been made and, recently, seven of the 38 parcels were re-platted to 11 "cabin" lots on which even smaller single family residences could be built. None of the cabin lots have yet been sold, so all of the parcels in this neighborhood as well as its private streets and land where no construction is planned are owned by the company (or a subdivision trust the beneficiary of which is this company). The legal descriptions are on the accompanying Schedule #5.

**Pine Canyon Golf, L.L.C.**

This entity (a wholly-owned subsidiary of Lone Tree Investments, LLC) operates The Pine Canyon Golf Club and owns no real property in its own name. It manages the Clubhouse, golf course, fitness center and spa, pro shop, tennis courts, swimming pools, children's activities, and other club amenities.

# EXHIBIT A

**Schedule #1 – real property legally or beneficially owned by Lone Tree Investments, LLC**

Parcel A:  Unit 61 and Tracts 1, A, B, E, F, G, H, J, K, L, M, N, Q, T, 6, 7, 13, 15A, 15B, 17A, 17B, 18A, 19A, 19B, 20A, 20B, 20C, 20D, 20E, 20F, 20G, 22, 23 & 25, THE ESTATES AT PINE CANYON UNIT ONE, according to the plat of record in Case 8, Map 92, records of Coconino County, Arizona.

Parcel B:  Tracts C, D, & 16A, THE ESTATES AT PINE CANYON UNIT ONE, according to the plat of record in Case 8, Map 92, records of Coconino County, Arizona. EXCEPTING THEREFROM any portion that has been re-subdivided into the AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON.

Parcel C: Tract 9, THE ESTATES AT PINE CANYON UNIT ONE, according to the plat of record in Case 8, Map 92, records of Coconino County, Arizona. EXCEPTING THEREFROM any portion that has been re-subdivided into THE ESTATES AT PINE CANYON UNIT 2.

Parcel D: Tracts 8A, 8B, 8C, 10A, 11A, & 12A, THE ESTATES AT PINE CANYON UNIT TWO, according to the plat recorded in Case 9, Map 28, records of Coconino County, Arizona.

Parcel E:  Tracts 4A, 4B & 4C, THE ESTATES AT PINE CANYON UNIT THREE, according to the plat recorded in Case 9, Map 59, records of Coconino County, Arizona.

Parcel F:  Lots 257, 258, 260, 261, 262, 265, 266, 270, 272, 273, 274, 275, 278 through 291, inclusive, 293, 295, 297, 298, 300 through 306, inclusive, 309, 311 & 312, THE ESTATES AT PINE CANYON UNIT FOUR, according to the plat recorded in Instrument No. 3393728, records of Coconino County, Arizona.

Parcel G:  Tracts 4D, 4E, 4F, 5A, 5B, 5C & 5D, THE ESTATES AT PINE CANYON UNIT FOUR, according to the plat recorded in Instrument No. 3393728, records of Coconino County, Arizona.

**Schedule #2 – real property legally or beneficially owned by Creekside Village Homes, LLC**

Parcel A:  Tracts 24B, 24C, 24D, & 24E, MOUNTAIN ESTATES UNIT ONE AT PINE CANYON, according to the plat recorded in Case 9, Map 22, records of Coconino County, Arizona.

Parcel B:  Tracts 14A, 14B, 14C, 14D, 14E, 14F, 14G, 14H, 14J, 14K, 14L & 14M, MOUNTAIN ESTATES UNIT TWO AT PINE CANYON, according to the plat recorded in Case 9, Map 71, records of Coconino County, Arizona.

**Schedule #3 – real property legally or beneficially owned by Elk Pass, L.L.C.**

Parcel A:  Lots 1-6, inclusive, Lots 11, 15, & 16, and Lots 31-42, inclusive, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, record of Coconino County, Arizona.

Parcel B:  Lots 18, 29 & 46, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, records of Coconino County, Arizona.

# EXHIBIT A

Parcel C:  Tracts 21A & 21B, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, record of Coconino County, Arizona.


## Schedule #4 – real property legally or beneficially owned by Mountain Vista at Pine Canyon, L.L.C.

Parcel A:  Units 1, 2, 7, 9 through 54, inclusive, and 57 through 60, inclusive, FINAL PLAT OF MOUNTAIN VISTA CONDOMINIUM AT PINE CANYON, according to the plat recorded in Instrument No. 3430465, records of Coconino County, Arizona.

Parcel B:  Tracts 24G & 24F, FINAL PLAT OF MOUNTAIN VISTA CONDOMINIUM AT PINE CANYON, according to the plat recorded in Instrument No. 3430465, records of Coconino County, Arizona.


## Schedule #5 – real property legally or beneficially owned by Deer Creek Crossing, L.L.C.

Parcel A:  Tracts 3A, 3B, 3C, 3D, 3E & 3F, FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona.

Parcel B:  Lots 1-26, inclusive, and Lots 34-38, inclusive, FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona.

Parcel C:  Lots 1-11, inclusive, THE CABINS UNIT ONE AT DEER CREEK CROSSING, according to the plat recorded in Instrument No. 3546721, records of Coconino County, Arizona (being a resubdivision of Lots 27 through 33 of FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona)

# *EXHIBIT B*

**LONE TREE INVESTMENTS, LLC & SUBSIDIARIES**
**PROJECTED CASH REQUIREMENTS**
**Projected through November 30, 2010**

| | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | TOTAL |
|---|---|---|---|---|---|
| **LONE TREE INVESTMENTS, LLC** | | | | | |
| Estimated Operating Revenues-Net proceeds of prop sales | $0 | ($590,000) | $0 | $0 | |
| **Estimated Operating Expenses** | | | | | |
| Salaries/Benefits | $0 | $110,000 | $110,000 | $110,000 | |
| Office Expenses/Legal/Insurance, etc | $1,500 | $35,000 | $45,000 | $40,000 | |
| Marketing Expenses | $0 | $8,000 | $7,000 | $7,000 | |
| Lot 286/293 Spec Homes Insurance/Util/Maint | $1,500 | $3,000 | $3,000 | $3,000 | |
| Property Taxes | $0 | $0 | $150,000 | $0 | |
| **Total Estimated Operating Expenses** | $3,000 | $156,000 | $315,000 | $160,000 | |
| **Estimated HOA Subsidy (payroll, etc.)** | | | | | |
| Safety Salaries/Benefits | $0 | $50,000 | $50,000 | $50,000 | |
| Entry Expenses/R&M/Utilities, etc | $1,000 | $11,000 | $11,000 | $11,000 | |
| Utilities - Water, Pump Station Electr | $0 | $12,000 | $12,000 | $12,000 | |
| Road Maintenance/Landscape Expenses | $1,000 | $17,000 | $20,000 | $15,000 | |
| HOA Dues / Fees | $0 | ($90,000) | ($10,000) | ($93,000) | |
| **Total Estimated HOA Subsidy (payroll, etc.)** | $2,000 | $0 | $83,000 | ($5,000) | |
| Misc.Capital Equipment / A&E / Development Costs | $2,000 | $3,000 | $3,000 | $3,000 | |
| **LONE TREE INVESTMENTS CASH REQUIREMENT** | $7,000 | ($431,000) | $401,000 | $158,000 | $135,000 * |
| | | | | | |
| **PINE CANYON GOLF, LLC** | | | | | |
| **Estimated Operating Revenues Inflow** | ($9,000) | ($180,000) | ($145,000) | ($65,000) | |
| **Estimated Membership Dues inflow** | ($9,000) | ($100,000) | ($100,000) | ($100,000) | |
| **Estimated Operating Expenses outflow** | | | | | |
| Salaries/Benefits | $0 | $250,000 | $225,000 | $175,000 | |
| Uniforms and Employee Meals | $1,000 | $10,000 | $7,000 | $5,000 | |
| Clubhouse & Camp Utilities/Golf Course Water | $0 | $31,000 | $30,000 | $28,000 | |
| Equipment Leases-Carts, Mowers, Office | $0 | $26,000 | $26,000 | $20,000 | |
| Golf Course Maint Supplies, R&M | $1,000 | $25,000 | $25,000 | $25,000 | |
| Clubhouse & Camp R&M, Supplies, Svcs | $1,000 | $35,000 | $32,000 | $30,000 | |
| Office Supplies/Comp Svc/Insurance, etc | $1,000 | $25,000 | $25,000 | $25,000 | |
| Member Events / Public Relations | $1,000 | $15,000 | $10,000 | $5,000 | |
| Food & Bev & Other Dept Cost of Sales | $10,000 | $70,000 | $50,000 | $24,000 | |
| Kitchen Supplies / Flowers / Utensils, etc. | $1,000 | $8,000 | $6,000 | $5,000 | |
| Property Taxes | $0 | $0 | $15,000 | $0 | |
| **Total Estimated Operating Expenses outflow** | $16,000 | $495,000 | $451,000 | $342,000 | |
| Misc.Capital Equip / Golf Course Improvement Costs | $2,000 | $5,000 | $5,000 | $5,000 | |
| **PINE CANYON GOLF CASH REQUIREMENT** | $0 | $220,000 | $211,000 | $182,000 | $613,000 |
| | | | | | |
| **CREEKSIDE VILLAGE HOMES, LLC** | | | | | |
| Estimated Warranty Expenses | $1,000 | $2,000 | $1,500 | $1,500 | |
| **CREEKSIDE VILLAGE CASH REQUIREMENT** | $1,000 | $2,000 | $1,500 | $1,500 | $6,000 |

# *EXHIBIT B*

**LONE TREE INVESTMENTS, LLC & SUBSIDIARIES**
**PROJECTED CASH REQUIREMENTS**
**Projected through November 30, 2010**

| | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | TOTAL |
|---|---|---|---|---|---|
| **ELK PASS, LLC** | | | | | |
| Estimated Operating Revenues-Post sale change orders | | ($8,000) | | | |
| Estimated Model Rent and Utilities | $0 | $7,000 | $1,000 | $0 | |
| Estimated Spec Utilities and Repairs/Maint | $2,000 | $5,000 | $5,000 | $5,000 | |
| Estimated Legal Expenses | $0 | $10,000 | $30,000 | $30,000 | |
| Estimated Property Taxes | $0 | $0 | $25,000 | $0 | |
| **ELK PASS CASH REQUIREMENT** | $2,000 | $14,000 | $61,000 | $35,000 | $112,000 |
| | | | | | |
| **MOUNTAIN VISTA AT PINE CANYON, LLC** | | | | | |
| Estimated Operating Rev-Net proceeds of prop sales | ($1,000) ** | ($1,000) ** | $0 | $0 | |
| Estimated Model Rent and Utilities | $0 | $6,500 | $6,000 | $6,000 | |
| Estimated Spec Utilities and Repairs/Maint | $1,000 | $3,500 | $2,000 | $2,000 | |
| Estimated Property Taxes | $0 | $0 | $18,000 | $0 | |
| **MOUNTAIN VISTA CASH REQUIREMENT** | $0 | $9,000 | $26,000 | $8,000 | $43,000 |
| | | | | | |
| **DEER CREEK CROSSING, LLC** | | | | | |
| Estimated Model Utilities and Repairs/Maint | $1,000 | $2,000 | $1,500 | $1,500 | |
| Estimated Property Taxes | $0 | $0 | $30,000 | $0 | |
| **DEER CREEK CROSSING CASH REQUIREMENT** | $1,000 | $2,000 | $31,500 | $1,500 | $36,000 |
| | | | | | |
| **PROJECTED TOTAL CASH REQUIREMENTS** | $11,000 | ($184,000) | $732,000 | $386,000 | $945,000 |

**ASSUMPTIONS**

- Assumed no payment of $398k Elk Pass retentions from Wespac pending arbitration & settlement of many issues
- Assumed no Developer Lot or Developer Spec sales except EP26 in escrow
- Assumed no additional sales of Elk Pass or Mountain Vista specs except MV53 and MV 54 in escrow
- Assumed no resale homes or resale homesite (no new member deposits)
* Includes approximately $85,000 PCMB expenses and $90,000 PCR expenses for this time period
** Mtn Vista sales subject to Johnson Bank Deed of Trust, net proceeds unknown at this time

# EXHIBIT C

John J. Hebert (#010633)
Mark W. Roth (#010708)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART PC**
3636 North Central Avenue, Suite 1200
Phoenix, AZ 85012
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-mail: PhoenixBankruptcyECF@polsinelli.com
E-Mail: jhebert@polsinelli.com
E-Mail: mroth@polsinelli.com
E-Mail: wray@polsinelli.com

*Attorneys for Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT

## THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| LONE TREE INVESTMENTS, LLC | Case No. 2:10-bk-26776-RTBP |
| PINE CANYON GOLF, L.L.C. | Case No. 2:10-bk-26779-RTBP |
| MOUNTAIN VISTA AT PINE CANYON, L.L.C. | Case No. 2:10-bk-26785-RTBP |
| ELK PASS, L.L.C. | Case No. 2:10-bk-26790-RTBP |
| DEER CREEK CROSSING, L.L.C. | Case No. 2:10-bk-26792-RTBP |
| CREEKSIDE VILLAGE HOMES, LLC | Case No. 2:10-bk-26794-RTBP |
| Debtors. | Joint Administration under Case No. 2:10-bk-26776-RTBP |

This filing applies to:

☒ ALL DEBTORS

☐ SPECIFIED DEBTORS

**DECLARATION OF PATRICIA E. NOLAN IN SUPPORT OF THE DEBTORS' MOTION TO APPROVE DEBTOR-IN-POSSESSION FINANCING AND MOTION TO SELL RESIDENTIAL HOMES AND RESIDENTIAL LOTS IN THE ORDINARY COURSE OF BUSINESS**

I, Patricia E. Nolan, under penalty of perjury, hereby declare as follows:

1.      I am an adult resident of Maricopa County, Arizona.

2.      I am of sound mind, and make this declaration of my own free will and in support of the *Motion to Approve Debtor-in-Possession Financing* (the "DIP Financing Motion") and the

1

2730781.3

# EXHIBIT C

*Motion to Sell Homes and Residential Lots in the Ordinary Course of Business* filed by the Debtors in the above-captioned bankruptcy.

3. I am the president of Central and Osborn Properties, Inc., the manager of Debtor Lone Tree Investments, LLC (which is the sole member of each of the other Debtors), and a practicing member of the State Bar of Arizona.

4. I am familiar with the Debtors' operations and financial situation.

5. The Debtors, collectively, own and operate the residential community, golf course, and related facilities commonly known as Pine Canyon in Flagstaff, Arizona (the "Property").

6. Debtor Pine Canyon Golf, L.L.C. operates the golf course, and attendant facilities, while the other Debtors own various parcels of real property at varying stages of development within the Property.

7. Attached as Exhibit "A" to the DIP Financing Motion is a summary generally describing each of the Debtors and the property they each own.

8. I prepared that summary, and it is accurate to the best of my knowledge.

9. The Debtors currently three single family residences, five condominiums and five townhomes, as well as 20 lots on which additional townhomes can be constructed, pads on which an additional 48 condominiums can be constructed, and 80 residential lots located with the Property.

10. The Debtors intend to continue to develop and sell these homes and residential lots in order to fund their reorganization.

11. Such sale of the Debtors' homes and residential lots are in the ordinary course of the Debtors' business.

12. Despite such sales, the Debtors' current operating revenue is insufficient to pay their operational expenses. These expenses include, but are not limited to, payroll, golf-course maintenance, operation of golf club amenities, and other ordinary and necessary expenses.

2730781.3

# EXHIBIT C

13.     Attached as Exhibit "B" to the DIP Financing Motion is a schedule of Projected Cash Requirements that shows a cumulative cash flow deficit of $945,000 arising from operations in August through November of 2010.

14.     I am familiar with that schedule of Projected Cash Requirements, and believe that it accurately reflects the likely revenues and expenses expected by the Debtors in the coming months.

15.     As a result of this cash-flow deficit, the Debtors are in dire need of additional financing to maintain operations and preserve the value of their estates while they formulate and implement strategies to improve cash flow.

16.     Without additional financing, the Debtors project that they will run out of operating capital within ten days.

17.     The Debtors' management has been engaged in soliciting additional financing.

18.     These efforts have included, but not been limited to:

        a.      Approaching the Debtors' principals and other investors regarding the possibility of an equity infusion;

        b.      Contacting traditional (including Bank of America and Northern Trust Bank) and non-traditional lenders (including EFO Financial Group, LLC, Pacific Capital Group, L.L.C. and Green Street Capital Group, LLC) regarding the possibility of unsecured debtor-in-possession financing;

        c.      Contacting traditional and non-traditional lenders regarding the possibility of unsecured debtor-in-possession financing allowable with a priority superior to all administrative expenses; and

        d.      Contacting traditional and non-traditional lenders regarding the possibility of debtor-in-possession financing secured by a junior lien on the Property (as defined in the DIP Financing Motion).

19.     Other than Flagstaff Acquisitions, L.L.C. ("Lender"), none of the sources of financing with whom the Debtors inquired were willing to extend credit to the Debtors on any of these terms.

3

# EXHIBIT C

20.     Debtors' current primary lender, Johnson Bank ("Johnson") has advised Debtors that it, too, is unwilling to provide additional credit to Debtors.

21.     The Debtors do not have unencumbered property of any significant value that could serve as collateral for the Post-Petition Advance.

22.     Given the current credit climate, it is unlikely that continued efforts would result in any additional sources of financing.

23.     Real estate financing is extremely scarce.

24.     Lenders are generally reluctant to advance funds to even the most qualified borrowers when the available collateral is Arizona real property.

25.     Three of the non-traditional lenders contacted by Debtors indicated that they might be willing to make a short-term loan to Debtors but only on the following terms:

  a.     EFO Financial Group, LLC would evaluate making a loan to Debtors only if (i) it was secured by a first-position lien on the Property; (ii) it had a minimum of a 50% loan to value ratio; (iii) Debtors paid a loan origination fee of between $40,000 and $60,000; (iv) Debtors paid approximately $20,000 in addition as an application fee and for attorneys' fees in advance; and (v) Debtors paid interest at between twelve and fifteen percent (12 – 15%).

  b.     Pacific Capital Group, L.L.C. would evaluate making a loan to Debtors only if (i) it was secured by a first-position lien on the Property; (ii) Debtors paid a loan origination fee of between $10,000 and $20,000; and (iii) Debtors paid fourteen percent (14%) interest.

  c.     Green Street Capital Group, LLC would evaluate making a loan to Debtors only if (i) it was secured by a first-position lien on the Property; (ii) Debtors paid a loan origination fee of between $40,000 and $50,000; and (iii) Debtors paid thirteen percent (13%) interest.

4

# *EXHIBIT C*

     d.     All three of these non-traditional lenders would also require that any such advance be secured by a first lien on the Property and each indicated that they would have to evaluate the Debtors and the Property further before committing to any advance.

26.     Lender is the only entity that has agreed to advance any funds to the Debtors on an immediate basis, without further evaluation and without requiring the payment of any fee at the outset of the loan, and will do so only in the event that such advance is secured by a first-position lien on the Property.

27.     Lender is an Arizona limited liability company, and the majority member of Lone Tree.

28.     Lender has agreed to advance up to $1,000,000 on a short-term revolving basis to the Debtors with interest accruing at the rate of 15% per annum and without the need for payment of any fees (points) at the initiation of the credit facility.

29.     The interest rate and other obligations associated with Lender's proposed Post-Petition Advance are reasonable and customary of debtor-in-possession loans.

30.     The absence of a requirement for any loan origination fee is more favorable than most debtor-in-possession loans.

31.     The Debtors' management, in exercise of its sound business judgment, believes that additional financing is not only advisable, but necessary and critical to continue operations and that the Post-Petition Advance is in the best interests of the Debtors, their creditors, and their estates.

32.     According to the Debtors' records, no creditors hold a security interest in the Property other than Johnson.

33.     According to the Debtors' records, Johnson's loan's current principal balance is approximately $24,275,826.

34.     On or about May 6, 2010 an appraisal of the Property was conducted at the behest of Johnson (the "Johnson Appraisal").

35.     The Johnson Appraisal estimated the Property's worth to be approximately $60,120,000.

2730781.3

# EXHIBIT C

36.     I am familiar with the Johnson Appraisal and believe that it accurately, and likely conservatively, reflects the Property's value.

37.     As set forth in the DIP Financing Motion, the Johnson Appraisal did not account for (a) the entry house at the main entrance to the community and the parcel on which it is constructed; (b) the sales office and the property on which it constructed; (c) estate lot 275; and (d) various parcels set aside for drainage and other engineering needs or designated as open areas.

38.     These parcels omitted from the Johnson Appraisal are believed to be the collateral of Johnson, and only further protect its interests.

39.     All of the Property that has never yet been sold by Debtors is, according to Debtors' agreement with the City of Flagstaff, supposed to be titled in a subdivision trust.

40.     Most but not all of the Property is indeed so titled in Fidelity National Title Insurance Company Trust B-178, the Trustee of which is Fidelity National Title Insurance Agency of Coconino, Inc.

41.     Title to the Property that is in the subdivision trust will have to be transferred to Debtors for Lender's deed of trust to be recorded against the Property.

42.     After recordation of Lender's deed of trust against the Property (and recordation of any Order granting Lender's deed of trust priority over the lien held by Johnson), all of the Property that has never yet been sold by Debtors will have to be transferred back into the subdivision trust.

_____
Patricia E. Nolan

SUBSCRIBED AND SWORN to before me on this 24 day of August, 2010, by Patricia E. Nolan.

_____
Notary Public

My Commission Expires:

12-7-12

PATRICIA MELOSERODOFF
Notary Public - Arizona
Maricopa County
Expires 12/07/2012

6

2730781.3

# EXHIBIT D

## REVOLVING LINE OF CREDIT
## MULTIPLE ADVANCE PROMISSORY NOTE
### (Debtor-In-Possession Financing)

$1,000,000.00                                                                          August _____, 2010

FOR VALUE RECEIVED, the undersigned (collectively, *"Maker"*) promise to pay to FLAGSTAFF ACQUISITIONS, L.L.C., an Arizona limited liability company (*"Holder"*), at Two North Central Avenue, 15th Floor, Phoenix, Arizona 85004-4470, or such other address as Holder hereof may specify, the principal sum of One Million Dollars ($1,000,000.00) or such lesser amount as may be advanced hereunder, together with interest on the unpaid principal balance at the rate of fifteen percent (15%) per annum. Payments shall be made as set forth in the paragraph immediately below and, if not paid prior thereto, all then-outstanding principal and all then accrued interest shall be paid on or before November 30, 2010 (the "Due Date').

Upon the sale of any real property given to secure this note, Holder shall receive 75% of net proceeds (after the costs of sale, real estate commissions, taxes and the like) so as to repay all principal advances hereunder then outstanding together with any interest accrued thereon (the "then balance hereof"). Should less than 75% of the net proceeds be required to bring the then balance hereof to zero, only the amount of the net proceeds required to bring the then balance hereof to zero shall be paid to Holder.

Prior to the Due Date, and provided Maker is not in default under this Note, the principal of this Note shall represent a revolving credit against which Maker may, subject to the terms and conditions hereof, draw funds not to exceed the face amount hereof at any given time. Maker may repay all or any part of the amounts advanced hereunder prior to the Due Date, and may thereafter draw additional credits not to exceed the face amount hereof at any given time, and shall repay the principal outstanding hereunder on or before the Due Date. Advances hereunder shall be made by Holder at the oral or written request of John Schraan, Chief Financial Officer of Maker or such other individuals as he might specify to act in such capacity. Any such advance shall be conclusively presumed to have been made to or for the benefit of the undersigned when made in accordance with such request.

This Note may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall be applied first to accrued interest and then to the unpaid balance due hereunder.

An *"Event of Default"* under this Note shall exist in the event Maker shall fail to pay any payments on this Note within ten (10) days after written notice of any failure to make timely payment. Should an Event of Default occur, (a) the entire unpaid amount of this Note, including accrued interest, shall become immediately due and payable; (b) at Holder's option, interest shall, commencing as of the date of such Event of Default, accrue on the then unpaid principal at the rate of twenty percent (20%) per annum until such time as such Event of Default may be cured; and (c) Holder may, at its option, exercise from time to time any other rights and remedies available to it under any law of the State of Arizona. Any failure or delay of Holder to exercise

# *EXHIBIT D*

any right available hereunder shall not be construed as a waiver of the right to exercise the same or as a waiver of any other right at any other time.

Maker hereby agrees to pay all costs of collection including, but not limited to, reasonable attorneys' fees and costs incurred by Holder, whether or not suit is filed hereon.

Time is of the essence of this Note and each and every term and condition hereof.

This Note is secured by certain real property of Maker, such security being evidenced by a first position deed of trust on such real property recorded with the Coconino County Recorder.

**LONE TREE INVESTMENTS, LLC**, an Arizona limited liability company

By Central and Osborn Properties, Inc., its Manager

    By:_____
    Patricia E. Nolan, President

**CREEKSIDE VILLAGE HOMES, LLC**, an Arizona limited liability company

By Lone Tree Investments, LLC, an Arizona limited liability company its sole member

    By Central and Osborn Properties, Inc., its Manager

        By:_____
        Patricia E. Nolan, President

**ELK PASS, L.L.C.**, an Arizona limited liability company

By Lone Tree Investments, LLC, an Arizona limited liability company its sole member

    By Central and Osborn Properties, Inc., its Manager

        By:_____
        Patricia E. Nolan, President

**DEER CREEK CROSSING, L.L.C.**, an Arizona limited liability company

By Lone Tree Investments, LLC, an Arizona limited liability company its sole member

    By Central and Osborn Properties, Inc., its Manager

        By:_____
        Patricia E. Nolan, President

**MOUNTAIN VISTA AT PINE CANYON, L.L.C.**, an Arizona limited liability company

By Lone Tree Investments, LLC, an Arizona limited liability company its sole member

    By Central and Osborn Properties, Inc., its Manager

        By:_____
        Patricia E. Nolan, President

**PINE CANYON GOLF, L.L.C.**, an Arizona limited liability company

By Lone Tree Investments, LLC, an Arizona limited liability company its sole member

    By Central and Osborn Properties, Inc., its Manager

        By:_____
        Patricia E. Nolan, President

# EXHIBIT E

WHEN RECORDED, RETURN to:
GAMMAGE & BURNHAM, PLC
Two North Central Avenue
15th Floor (PEN)
Phoenix, Arizona 85004
*File No. 6413-38*

## DEED OF TRUST AND ASSIGNMENT OF RENTS

TRUSTOR:  LONE TREE INVESTMENTS, LLC
CREEKSIDE VILLAGE HOMES, LLC
ELK PASS, L.L.C.
MOUNTAIN VISTA AT PINE CANYON, L.L.C.
DEER CREEK CROSSING, L.L.C.

TRUSTOR'S MAILING  1201 E. John Wesley Powell Blvd.
ADDRESS:  Flagstaff, AZ 86001

BENEFICIARY:  FLAGSTAFF ACQUISITIONS, L.L.C.

BENEFICIARY'S MAILING Two North Central Avenue, 15th Floor
ADDRESS:  Phoenix, AZ 85004-4470

TRUSTEE:  Stewart Title & Trust of Phoenix, Inc.
244 W. Osborn Road
Phoenix, AZ 85013

PROPERTY in Coconino County, State of Arizona, described as:

*See attached Exhibit A*

THIS DEED OF TRUST is made between the Trustor, Trustee and Beneficiary named above. Trustor irrevocably grants and conveys to Trustee in trust, with power of sale, the above-described Property and all buildings, improvements and fixtures located thereon or hereinafter erected thereon, together with the leases, rents, issues, profits, or income thereof (collectively, the "Property Income"); subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such Property Income; and subject to all covenants, conditions, restrictions, rights-of-way, and easements of record.

THIS DEED OF TRUST IS MADE FOR THE PURPOSE OF SECURING: (a) performance of each agreement of Trustor herein contained; (b) payment of the indebtedness evidenced by a Revolving Line of Credit Promissory Note dated August ___, 2010, and any extension or renewal thereof,

# EXHIBIT E

requiring the payment by Trustor and others to Beneficiary of $1,000,000 and (c) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note(s) reciting that they are secured by this Deed of Trust.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

     1.     To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; and do all other acts which from the character or use of the Property may be reasonably necessary.

     2.     To provide, maintain and deliver to Beneficiary fire insurance policies satisfactory to and with loss payable to Beneficiary.  The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine or, at the option of Beneficiary, the entire amount so collected or any part thereof may be released to Trustor.  Such application or release shall not cure or waive any default or notice of Trustee's sale hereunder or invalidate any act done pursuant to such notice.

     3.     To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee and to pay all costs and expenses of Beneficiary and Trustee, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear or be named and in any suit brought by Beneficiary to foreclose this Deed of Trust.

     4.     To pay, before delinquent, all taxes and assessments affecting the Property, and to pay, when due, all encumbrances, charges and liens, with interest, on said Property or any part thereof which appear to be prior or superior hereto; all costs, fees and expenses of this Trust including, without limiting the generality of the foregoing, the fees of Trustee for issuance of any Deed of Partial Release and Partial Reconveyance or Deed of Release and Full Reconveyance and all lawful charges, costs and expenses in the event of reinstatement of, following default in, this Deed of Trust or the obligations secured hereby.

     Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes:  appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of

# EXHIBIT E

either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel, and pay counsel's reasonable fees.

5.      To pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to the provisions hereof, together with interest from the date of expenditure at the highest rate as is provided for in any note secured by this Deed of Trust.  Any amounts so paid by Beneficiary or Trustee shall become part of the debt secured by this Deed of Trust and a lien on the Property or shall become immediately due and payable at option of Beneficiary or Trustee.

6.      To maintain, during the term of this Deed of Trust, in full force, at their own expense, a policy or policies of comprehensive liability insurance, including property damage, written by one or more insurance companies licensed to do business in Arizona, which shall insure both Trustor and Beneficiary against liability for injury to persons or property and for the death of any person occurring in or about the Property.

7.      To not enter into any lease for any portion of the Property, to not grant any mining rights with regard to any portion of the Property, to not establish any wells on the Property, and to not construct any improvements on the Property without, in each such instance, the prior written consent of Beneficiary, which consent shall not be unreasonably withheld.

IT IS MUTUALLY AGREED:

8.      That any award of damages in connection with any condemnation, or any such taking, or for injury to the Property by reason of public use or for damages for private trespass or injury thereto, is assigned and shall be paid to Beneficiary as further security for all obligations secured hereby (reserving unto the Trustor, however, the right to sue therefor and for the ownership thereof subject to this Deed of Trust) and, upon receipt of such moneys, Beneficiary may hold the same as such further security or apply or release the same in the same manner and with the same effect as above-provided for disposition of proceeds of fire or other insurance.

9.      That time is of the essence of this Deed of Trust and that, by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

10.     That, at any time or from time to time, and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the note secured hereby for endorsement, without liability therefor, without affecting the personal liability of any person for payment of the indebtedness secured hereby, without affecting the security hereof for the full amount secured hereby on all property remaining subject hereto and without the necessity that any sum representing the value or any portion thereof of the property affected by the Trustee's action be credited on the indebtedness, the Trustee may:  (a) release and reconvey all or any part of the Property; (b) consent to the making and recording, or either, of any map or plat of the Property or any part thereof; (c) join

# EXHIBIT E

in granting any easement thereon, and (d) join in or consent to any extension agreement or any agreement subordinating the lien, encumbrance or charge hereof.

11.     That, upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and the note secured hereby to Trustee for cancellation, and upon payment of its fees, Trustee shall release and reconvey, without covenant or warranty, express or implied, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

12.     That, as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of this Trust, to collect the Property Income, reserving to Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such Property Income as it becomes due and payable. Upon any such default, Beneficiary may at any time, without notice, either in person, by agent or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the Property or any part thereof, sue for or otherwise collect the Property Income in his own name, including that past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby and in such order as Beneficiary may determine. The entering upon and taking possession of the Property, the collection of the Property Income and the application thereof as aforesaid, shall not cure or waive any default or notice of Trustee's sale hereunder or invalidate any act done pursuant to such notice.

13.     That, upon default by Trustor in the payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written notice thereof, setting forth the nature thereof, and of election to cause the Property to be sold under this Deed of Trust. Beneficiary also shall deposit with Trustee this Deed of Trust, the note secured hereby and all documents evidencing expenditures secured hereby.

Trustee shall record and give notice of Trustee's sale and shall sell the Property at public auction, all in the manner required by law. Any persons, including Trustee or Beneficiary, may purchase at such sale. Trustee shall deliver to such purchaser its Deed conveying the Property so sold, but without any covenant or warranty, express or implied. Trustor requests that a copy of any notice of Trustee's sale hereunder be mailed to Trustor at his address set forth above.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale and reasonable attorneys fees, Trustee shall apply the proceeds of sale in the manner provided by law. To the extent permitted by law, an action may be maintained by Beneficiary to recover a deficiency judgment for any balance due hereunder.

In lieu of sale, pursuant to the power of sale conferred hereby, this Deed of Trust may be foreclosed in the same manner provided by law for the foreclosure of mortgages on real property.

# *EXHIBIT E*

Beneficiary shall also have all other rights and remedies available to it hereunder and at law or in equity. All rights and remedies shall be cumulative.

14.     That Trustee may resign by mailing or delivering notice thereof to Beneficiary and Trustor. Beneficiary may appoint a successor Trustee in the manner prescribed by law. A successor Trustee herein shall, without conveyance from the predecessor Trustee, succeed to all the predecessor's title, estate, rights, powers and duties.

15.     The term *Beneficiary* shall mean the owner and holder of the note secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

16.     That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of a pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

17.     That the trust relationship created by this Deed of Trust is limited solely to the creation and enforcement of a security interest in real property. All of Trustee's duties, whether fiduciary or otherwise, are strictly limited to those duties imposed by this instrument and A.R.S.§ 33-801 *et seq.* and no additional duties, burdens or responsibilities are or shall be placed on Trustee.

18.     That this Deed of Trust applies to, inures to the benefit of and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.

19.     That, upon the sale of any real property given to secure this note, Beneficiary shall receive 75% of net proceeds (after the costs of sale, real estate commissions, taxes and the like) so as to repay all principal advances made under the loan secured hereby then outstanding together with any interest accrued thereon (the "then balance hereof"). Should less than 75% of the net proceeds be required to bring the then balance hereof to zero, only the amount of the net proceeds required to bring the then balance hereof to zero shall be paid to Beneficiary.

DATED: August \_\_\_, 2010

> LONE TREE INVESTMENTS, LLC, an Arizona limited liability company
>
> By Central and Osborn Properties, Inc., its manager
>
>
> By _____
>       Patricia E. Nolan, President

# *EXHIBIT E*

<<signatures continue on following page>>

# *EXHIBIT E*

**CREEKSIDE VILLAGE HOMES, LLC**, an
Arizona limited liability company

By Lone Tree Investments, LLC, an Arizona
limited liability company its sole member

  By Central and Osborn Properties, Inc.,
  its  Manager

   By:_____
   Patricia E. Nolan, President


**ELK PASS, L.L.C.**, an Arizona limited
liability company

By Lone Tree Investments, LLC, an Arizona
limited liability company its sole member

  By Central and Osborn Properties, Inc.,
  its  Manager

   By:_____
   Patricia E. Nolan, President


**MOUNTAIN VISTA AT PINE CANYON,
L.L.C.**, an Arizona limited liability company

By Lone Tree Investments, LLC, an Arizona
limited liability company its sole member

  By Central and Osborn Properties, Inc.,
  its  Manager

   By:_____
   Patricia E. Nolan, President


**DEER CREEK CROSSING, L.L.C.**, an
Arizona limited liability company

By Lone Tree Investments, LLC, an Arizona
limited liability company its sole member

  By Central and Osborn Properties, Inc.,
  its  Manager

   By:_____
   Patricia E. Nolan, President


STATE OF ARIZONA  )
        ) ss.
County of Maricopa  )

The foregoing instrument was acknowledged before me, the undersigned Notary Public, this _____
day of August, 2010 by Patricia E. Nolan, president of Central and Osborn Properties, Inc., manager
of LONE TREE INVESTMENTS, LLC, on the company's own behalf and as the sole member of
CREEKSIDE VILLAGE HOMES, LLC, ELK PASS, L.L.C., MOUNTAIN VISTA AT PINE
CANYON, L.L.C. and DEER CREEK CROSSING, L.L.C. on behalf of those entities.


     _____
     Notary Public

Notary
Seal

# EXHIBIT E

## EXHIBIT A

## LEGAL DESCRIPTIONS

**Property owned by Lone Tree Investments, LLC**

Parcel A:  Unit 61 and Tracts 1, A, B, E, F, G, H, J, K, L, M, N, Q, T, 6, 7, 13, 15A, 15B, 17A, 17B, 18A, 19A, 19B, 20A, 20B, 20C, 20D, 20E, 20F, 20G, 22, 23 and 25, THE ESTATES AT PINE CANYON UNIT ONE, according to the plat of record in Case 8, Map 92, records of Coconino County, Arizona.

Parcel B:  Tracts C, D, and 16A, THE ESTATES AT PINE CANYON UNIT ONE, according to the plat of record in Case 8, Map 92, records of Coconino County, Arizona. EXCEPTING THEREFROM any portion that has been re-subdivided into the AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON.

Parcel C: Tract 9, THE ESTATES AT PINE CANYON UNIT ONE, according to the plat of record in Case 8, Map 92, records of Coconino County, Arizona. EXCEPTING THEREFROM any portion that has been re-subdivided into THE ESTATES AT PINE CANYON UNIT 2.

Parcel D: Tracts 8A, 8B, 8C, 10A, 11A and 12A, THE ESTATES AT PINE CANYON UNIT TWO, according to the plat recorded in Case 9, Map 28, records of Coconino County, Arizona.

Parcel E:  Tracts 4A, 4B and 4C, THE ESTATES AT PINE CANYON UNIT THREE, according to the plat recorded in Case 9, Map 59, records of Coconino County, Arizona.

Parcel F:  Lots 257, 258, 260, 261, 262, 265, 266, 270, 272, 273, 274, 275, 278 through 291, inclusive, 293, 295, 297, 298, 300 through 306, inclusive, 309, 311 and 312, THE ESTATES AT PINE CANYON UNIT FOUR, according to the plat recorded in Instrument No. 3393728, records of Coconino County, Arizona.

Parcel G:  Tracts 4D, 4E, 4F, 5A, 5B, 5C and 5D, THE ESTATES AT PINE CANYON UNIT FOUR, according to the plat recorded in Instrument No. 3393728, records of Coconino County, Arizona.

**Property owned by Creekside Village Homes, LLC**

Parcel A:  Tracts 24B, 24C, 24D and 24E, MOUNTAIN ESTATES UNIT ONE AT PINE CANYON, according to the plat recorded in Case 9, Map 22, records of Coconino County, Arizona.

Parcel B:  Tracts 14A, 14B, 14C, 14D, 14E, 14F, 14G, 14H, 14J, 14K, 14L and 14M, MOUNTAIN ESTATES UNIT TWO AT PINE CANYON, according to the plat recorded in Case 9, Map 71, records of Coconino County, Arizona.

# *EXHIBIT E*

Legal description continues…..

## Property owned by Elk Pass, L.L.C.

Parcel A: Lots 1-6, inclusive, Lots 11, 15, 16, and Lots 31-42, inclusive, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, record of Coconino County, Arizona.

Parcel B: Lots 18, 29 and 46, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, records of Coconino County, Arizona.

Parcel C: Tracts 21A and 21B, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, record of Coconino County, Arizona.

## Property owned by Mountain Vista at Pine Canyon, L.L.C.

Parcel A: Units 1, 2, 7, 9 through 54, inclusive, and 57 through 60, inclusive, FINAL PLAT OF MOUNTAIN VISTA CONDOMINIUM AT PINE CANYON, according to the plat recorded in Instrument No. 3430465, records of Coconino County, Arizona.

Parcel B: Tracts 24G and 24F, FINAL PLAT OF MOUNTAIN VISTA CONDOMINIUM AT PINE CANYON, according to the plat recorded in Instrument No. 3430465, records of Coconino County, Arizona.

## Property owned by Deer Creek Crossing, L.L.C.

Parcel A: Tracts 3A, 3B, 3C, 3D, 3E and 3F, FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona.

Parcel B: Lots 1-26, inclusive, and Lots 34-38, inclusive, FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona.

Parcel C: Lots 1-11, inclusive, THE CABINS UNIT ONE AT DEER CREEK CROSSING, according to the plat recorded in Instrument No. 3546721, records of Coconino County, Arizona (being a resubdivision of Lots 27 through 33 of FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona)

# EXHIBIT F

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ 85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Fidelity National Title Insurance Agency of Coconino, Inc.**, an Arizona corporation, as substitute Trustee under Trust No. B-178 which, pursuant to A.R.S. 33-404 is disclosed by Special Warranty Deed recorded October 7, 2003 in Instrument No. 3229023 (the "Grantor") does hereby convey to **Deer Creek Crossing, L.L.C.,** an Arizona limited liability company, the following described real property situated in the County of Coconino, State of Arizona:

See attached Exhibit A

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

**Fidelity National Title Insurance Agency of Coconino, Inc., an Arizona corporation, as substitute Trustee under Trust No. B-178**

By: _____
Its: Trust Officer

State of Arizona               )
                           )ss.
County of _____ )

On the _____ day of _____, 2010, personally appeared _____ who acknowledged her/himself to be the Trust Officer of Fidelity National Title Insurance Agency of Coconino, Inc., an Arizona corporation, and that, being authorized so to do, s/he executed the foregoing instrument for the purposes therein contained on behalf of the corporation.

Signature _____
                                Notary Public

My Commission Expires:

# *EXHIBIT F*

Exhibit A

Parcel 1:  Lots 1-26, inclusive, and Lots 34-38, inclusive, FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona.

Parcel 2: Lots 1-11, inclusive, THE CABINS UNIT ONE AT DEER CREEK CROSSING, according to the plat recorded in Instrument No. 3546721, records of Coconino County, Arizona (being a resubdivision of Lots 27 through 33 of FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona)

# *EXHIBIT G*

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ  85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Lone Tree Investments, LLC**, an Arizona limited liability company (the "Grantor"), does hereby convey to **Deer Creek Crossing, L.L.C.,** an Arizona limited liability company, the following described real property situated in the County of Coconino, State of Arizona:

See attached Exhibit A

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

<div style="margin-left: 40%;">

**Lone Tree Investments, LLC**, an Arizona limited liability company

By:    Central and Osborn Properties, Inc., its Manager

By: _____
Its:  President

</div>

State of Arizona                         )
                                         )ss.
County of Maricopa                       )

On the _____ day of August, 2010, personally appeared Patricia E. Nolan, who acknowledged herself to be the President of Central and Osborn Properties, Inc., an Arizona corporation and the manager of Lone Tree Investments, LLC, an Arizona limited liability company, and that, being authorized so to do, she executed the foregoing instrument for the purposes therein contained on behalf of the company.

Signature _____
                    Notary Public

My Commission Expires:

# *EXHIBIT G*

Exhibit A

Tracts 3A, 3B, 3C, 3D, 3E and 3F, FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona.

# *EXHIBIT H*

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ  85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Deer Creek Crossing, L.L.C.,** an Arizona limited liability company (the "Grantor"), does hereby convey to **Fidelity National Title Insurance Agency of Coconino, Inc.,** an Arizona corporation, as substitute Trustee under Trust No. B-178 which, pursuant to A.R.S. 33-404 is disclosed by Special Warranty Deed recorded October 7, 2003 in Instrument No. 3229023, the following described real property situated in the County of Coconino, State of Arizona:

<p style="text-align:center;">See attached Exhibit A</p>

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

     **DEER CREEK CROSSING, L.L.C.,** an Arizona limited liability company

     By    Lone Tree Investments, LLC, an Arizona limited liability company, its sole member

          By    Central and Osborn Properties, Inc.,
          its    Manager

          By:_____
          Patricia E. Nolan, President

State of Arizona       )
                   )ss.
County of Maricopa   )

On the _____ day of August, 2010, personally appeared Patricia E. Nolan, who acknowledged her/himself to be the president of Central and Osborn Properties, Inc., the manager of Lone Tree Investments, LLC, the sole member of DEER CREEK CROSSING, L.L.C., an Arizona limited liability company, and that, being authorized so to do, she executed the foregoing instrument for the purposes therein contained on behalf of the company.

                   Signature _____
                                     Notary Public

My Commission Expires:

# *EXHIBIT H*

Exhibit A

Parcel 1:  Tracts 3A, 3B, 3C, 3D, 3E & 3F, FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona.

Parcel 2:   Lots 1-26, inclusive, and Lots 34-38, inclusive, FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona.

Parcel 3:   Lots 1-11, inclusive, THE CABINS UNIT ONE AT DEER CREEK CROSSING, according to the plat recorded in Instrument No. 3546721, records of Coconino County, Arizona. (being a resubdivision of Lots 27 through 33 of FINAL PLAT OF DEER CREEK CROSSING UNIT ONE AT PINE CANYON, according to the plat recorded in Instrument No. 3450516, records of Coconino County, Arizona).

# EXHIBIT I

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ 85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Fidelity National Title Insurance Agency of Coconino, Inc.**, an Arizona corporation, as substitute Trustee under Trust No. B-178 which, pursuant to A.R.S. 33-404 is disclosed by Special Warranty Deed recorded October 7, 2003 in Instrument No. 3229023 (the "Grantor") does hereby convey to **Elk Pass, L.L.C.**, an Arizona limited liability company, the following described real property situated in the County of Coconino, State of Arizona:

See attached Exhibit A

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

**Fidelity National Title Insurance Agency of Coconino, Inc., an Arizona corporation, as substitute Trustee under Trust No. B-178**

By: _____
Its:  Trust Officer

State of Arizona               )
                                  )ss.
County of _____    )

On the _____ day of _____, 2010, personally appeared _____ who acknowledged her/himself to be the Trust Officer of Fidelity National Title Insurance Agency of Coconino, Inc., an Arizona corporation, and that, being authorized so to do, s/he executed the foregoing instrument for the purposes therein contained on behalf of the corporation.

Signature _____
Notary Public

My Commission Expires:

# *EXHIBIT I*

Exhibit A

Parcel 1:  Lots 1-6, inclusive, Lots 11, 15 and 16, and Lots 31-42, inclusive, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, record of Coconino County, Arizona.

Parcel 2:  Lots 18, 29 and 46, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, records of Coconino County, Arizona.

# *EXHIBIT J*

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ  85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Lone Tree Investments, LLC**, an Arizona limited liability company (the "Grantor"), does hereby convey to **Elk Pass, L.L.C.,** an Arizona limited liability company, the following described real property situated in the County of Coconino, State of Arizona:

See attached Exhibit A

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

**Lone Tree Investments, LLC**, an Arizona limited liability company

By:     Central and Osborn Properties, Inc., its Manager

By: _____
Its:  President

State of Arizona                    )
                                                )ss.
County of Maricopa            )

On the _____ day of August, 2010, personally appeared Patricia E. Nolan, who acknowledged herself to be the President of Central and Osborn Properties, Inc., an Arizona corporation and the manager of Lone Tree Investments, LLC, an Arizona limited liability company, and that, being authorized so to do, she executed the foregoing instrument for the purposes therein contained on behalf of the company.

Signature _____
Notary Public

My Commission Expires:

# *EXHIBIT J*

Exhibit A

Tracts 21A and 21B, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, record of Coconino County, Arizona.

# EXHIBIT K

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ  85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Elk Pass, L.L.C.,** an Arizona limited liability company (the "Grantor"), does hereby convey to **Fidelity National Title Insurance Agency of Coconino, Inc.**, an Arizona corporation, as substitute Trustee under Trust No. B-178 which, pursuant to A.R.S. 33-404 is disclosed by Special Warranty Deed recorded October 7, 2003 in Instrument No. 3229023, the following described real property situated in the County of Coconino, State of Arizona:

See attached Exhibit A

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

> **ELK PASS, L.L.C.**, an Arizona limited liability company
>
> By  Lone Tree Investments, LLC, an Arizona limited liability company, its sole member
>
> > By  Central and Osborn Properties, Inc.,
> > Its  Manager
> >
> > By:_____
> > Patricia E. Nolan, President

State of Arizona          )
                          )ss.
County of Maricopa        )

On the _____ day of August, 2010, personally appeared Patricia E. Nolan, who acknowledged her/himself to be the president of Central and Osborn Properties, Inc., the manager of Lone Tree Investments, LLC, the sole member of ELK PASS, L.L.C., an Arizona limited liability company, and that, being authorized so to do, she executed the foregoing instrument for the purposes therein contained on behalf of the company.

Signature _____
Notary Public

My Commission Expires:

# *EXHIBIT K*

Exhibit A

Parcel 1:  Lots 1-6, inclusive, Lots 11, 15 and 16, and Lots 31-42, inclusive, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, record of Coconino County, Arizona.

Parcel 2:  Lots 18, 29 and 46, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, records of Coconino County, Arizona.

Parcel 3:  Tracts 21A and 21B, AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON, according to the plat recorded in Instrument No. 3416358, record of Coconino County, Arizona.

# EXHIBIT L

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ 85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Fidelity National Title Insurance Agency of Coconino, Inc.**, an Arizona corporation, as substitute Trustee under Trust No. B-178 which, pursuant to A.R.S. 33-404 is disclosed by Special Warranty Deed recorded October 7, 2003 in Instrument No. 3229023 (the "Grantor") does hereby convey to **Mountain Vista at Pine Canyon, L.L.C.,** an Arizona limited liability company, the following described real property situated in the County of Coconino, State of Arizona:

See attached Exhibit A

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

> **Fidelity National Title Insurance Agency of Coconino, Inc., an Arizona corporation, as substitute Trustee under Trust No. B-178**
>
>
> By: _____
> Its: Trust Officer

State of Arizona )
)ss.
County of _____ )

On the _____ day of _____, 2010, personally appeared _____ who acknowledged her/himself to be the Trust Officer of Fidelity National Title Insurance Agency of Coconino, Inc., an Arizona corporation, and that, being authorized so to do, s/he executed the foregoing instrument for the purposes therein contained on behalf of the corporation.

Signature _____
Notary Public

My Commission Expires:

# *EXHIBIT L*

Exhibit A

Units 1, 2, 7, 9 - 54, inclusive, and 57 - 60, inclusive, FINAL PLAT OF MOUNTAIN VISTA CONDOMINIUM AT PINE CANYON, according to the plat recorded in Instrument No. 3430465, records of Coconino County, Arizona.

# *EXHIBIT M*

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ 85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Lone Tree Investments, LLC**, an Arizona limited liability company (the "Grantor"), does hereby convey to **Mountain Vista at Pine Canyon, L.L.C.,** an Arizona limited liability company, the following described real property situated in the County of Coconino, State of Arizona:

See attached Exhibit A

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

> **Lone Tree Investments, LLC**, an Arizona limited liability company
>
> By:    Central and Osborn Properties, Inc., its Manager
>
> By: _____
> Its:  President

State of Arizona       )
                         )ss.
County of Maricopa   )

On the _____ day of August, 2010, personally appeared Patricia E. Nolan, who acknowledged herself to be the President of Central and Osborn Properties, Inc., an Arizona corporation and the manager of Lone Tree Investments, LLC, an Arizona limited liability company, and that, being authorized so to do, she executed the foregoing instrument for the purposes therein contained on behalf of the company.

Signature _____
                                Notary Public

My Commission Expires:

# *EXHIBIT M*

Exhibit A

Tracts 24G & 24F, FINAL PLAT OF MOUNTAIN VISTA CONDOMINIUM AT PINE CANYON, according to the plat recorded in Instrument No. 3430465, records of Coconino County, Arizona.

# EXHIBIT N

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ 85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Mountain Vista at Pine Canyon, L.L.C.,** an Arizona limited liability company (the "Grantor"), does hereby convey to **Fidelity National Title Insurance Agency of Coconino, Inc.**, an Arizona corporation, as substitute Trustee under Trust No. B-178 which, pursuant to A.R.S. 33-404 is disclosed by Special Warranty Deed recorded October 7, 2003 in Instrument No. 3229023, the following described real property situated in the County of Coconino, State of Arizona:

See attached Exhibit A

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

> **MOUNTAIN VISTA AT PINE CANYON, L.L.C.**, an Arizona limited liability company
>
> By     Lone Tree Investments, LLC, an Arizona limited liability company, its sole member
>
> > By     Central and Osborn Properties, Inc.,
> > Its     Manager
> >
> > By:_____
> > Patricia E. Nolan, President

State of Arizona       )
                             )ss.
County of Maricopa    )

On the _____ day of August, 2010, personally appeared Patricia E. Nolan, who acknowledged her/himself to be the president of Central and Osborn Properties, Inc., the manager of Lone Tree Investments, LLC, the sole member of MOUNTAIN VISTA AT PINE CANYON, L.L.C., an Arizona limited liability company, and that, being authorized so to do, she executed the foregoing instrument for the purposes therein contained on behalf of the company.

Signature _____
                                   Notary Public

My Commission Expires:

# *EXHIBIT N*

Exhibit A

Parcel 1:  Units 1, 2, 7, 9 - 54, inclusive, and 57 - 60, inclusive, FINAL PLAT OF MOUNTAIN VISTA CONDOMINIUM AT PINE CANYON, according to the plat recorded in Instrument No. 3430465, records of Coconino County, Arizona.

Parcel 2:  Tracts 24G & 24F, FINAL PLAT OF MOUNTAIN VISTA CONDOMINIUM AT PINE CANYON, according to the plat recorded in Instrument No. 3430465, records of Coconino County, Arizona.

# *EXHIBIT O*

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ  85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Lone Tree Investments, LLC**, an Arizona limited liability company (the "Grantor"), does hereby convey to **Creekside Village Homes, LLC,** an Arizona limited liability company, the following described real property situated in the County of Coconino, State of Arizona:

See attached Exhibit A

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

**Lone Tree Investments, LLC**, an Arizona limited liability company

By:    Central and Osborn Properties, Inc., its Manager

By: _____
Its:  President

State of Arizona            )
                        )ss.
County of Maricopa     )

On the _____ day of August, 2010, personally appeared Patricia E. Nolan, who acknowledged herself to be the President of Central and Osborn Properties, Inc., an Arizona corporation and the manager of Lone Tree Investments, LLC, an Arizona limited liability company, and that, being authorized so to do, she executed the foregoing instrument for the purposes therein contained on behalf of the company.

Signature _____
Notary Public

My Commission Expires:

# *EXHIBIT O*

Exhibit A

Tracts 24B, 24C, 24D and 24E, MOUNTAIN ESTATES UNIT ONE AT PINE CANYON, according to the plat recorded in Case 9, Map 22, records of Coconino County, Arizona.

# *EXHIBIT P*

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ  85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Creekside Village Homes, LLC,** an Arizona limited liability company (the "Grantor"), does hereby convey to **Fidelity National Title Insurance Agency of Coconino, Inc.**, an Arizona corporation, as substitute Trustee under Trust No. B-178 which, pursuant to A.R.S. 33-404 is disclosed by Special Warranty Deed recorded October 7, 2003 in Instrument No. 3229023, the following described real property situated in the County of Coconino, State of Arizona:

See attached Exhibit A

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

> **CREEKSIDE VILLAGE HOMES, LLC**, an Arizona limited liability company
>
> By      Lone Tree Investments, LLC, an Arizona limited liability company, its sole member
>
>> By      Central and Osborn Properties, Inc.,
>> its      Manager
>>
>> By:_____
>> Patricia E. Nolan, President

State of Arizona            )
                           )ss.
County of Maricopa         )

On the _____ day of August, 2010, personally appeared Patricia E. Nolan, who acknowledged her/himself to be the president of Central and Osborn Properties, Inc., the manager of Lone Tree Investments, LLC, the sole member of CREEKSIDE VILLAGE HOMES, LLC, an Arizona limited liability company, and that, being authorized so to do, she executed the foregoing instrument for the purposes therein contained on behalf of the company.

Signature _____
                         Notary Public

My Commission Expires:

# *EXHIBIT P*

Exhibit A

Parcel 1:  Tracts 24B, 24C, 24D and 24E, MOUNTAIN ESTATES UNIT ONE AT PINE CANYON, according to the plat recorded in Case 9, Map 22, records of Coconino County, Arizona

Parcel 2:  Tracts 14A, 14B, 14C, 14D, 14E, 14F, 14G, 14H, 14J, 14K, 14L and 14M, MOUNTAIN ESTATES UNIT TWO AT PINE CANYON, according to the plat recorded in Case 9, Map 71, records of Coconino County, Arizona.

# *EXHIBIT Q*

When recorded mail to:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, AZ 85004-4470

## SPECIAL WARRANTY DEED
### *(Affidavit exempt per A.R.S. §11-1134, B-8)*

For the consideration of Ten and 00/100 Dollars, and other valuable consideration, **Lone Tree Investments, LLC,** an Arizona limited liability company (the "Grantor"), does hereby convey to **Fidelity National Title Insurance Agency of Coconino, Inc.,** an Arizona corporation, as substitute Trustee under Trust No. B-178 which, pursuant to A.R.S. 33-404 is disclosed by Special Warranty Deed recorded October 7, 2003 in Instrument No. 3229023, the following described real property situated in the County of Coconino, State of Arizona:

<div align="center">See attached Exhibit A</div>

SUBJECT TO current taxes, assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, as against all its acts and none other, subject to the matters above set forth.

Dated this _____ day of August, 2010.

LONE TREE INVESTMENTS, LLC, an Arizona limited liability company

By      Central and Osborn Properties, Inc.,
Its      Manager

By:_____
Patricia E. Nolan, President

State of Arizona           )
                           )ss.
County of Maricopa         )

On the _____ day of August, 2010, personally appeared Patricia E. Nolan, who acknowledged her/himself to be the president of Central and Osborn Properties, Inc., the manager of LONE TREE INVESTMENTS, LLC, an Arizona limited liability company, and that, being authorized so to do, she executed the foregoing instrument for the purposes therein contained on behalf of the company.

Signature _____
                    Notary Public

My Commission Expires:

# *EXHIBIT Q*

Exhibit A

Parcel 1:  Tracts 1, A, B, E, F, G, H, J, K, L, M, N, Q, T, 6, 7, 13, 15A, 15B, 17A, 17B, 18A, 19A, 19B, 20A, 20B, 20C, 20D, 20E, 20F, 20G, 22, 23 and 25, THE ESTATES AT PINE CANYON UNIT ONE, according to the plat of record in Case 8, Map 92, records of Coconino County, Arizona.

Parcel 2:  Tracts C, D and 16A, THE ESTATES AT PINE CANYON UNIT ONE, according to the plat of record in Case 8, Map 92, records of Coconino County, Arizona, EXCEPTING THEREFROM any portion that has been re-subdivided into the AMENDED FINAL PLAT OF MOUNTAIN VILLAS AT PINE CANYON.

Parcel 3:  Tract 9, THE ESTATES AT PINE CANYON UNIT ONE, according to the plat of record in Case 8, Map 92, records of Coconino County, Arizona, EXCEPTING THEREFROM any portion that has been re-subdivided into THE ESTATES AT PINE CANYON UNIT 2.

Parcel 4:  Tracts 8A, 8B, 8C, 10A, 11A, and 12A, THE ESTATES AT PINE CANYON UNIT TWO, according to the plat recorded in Case 9, Map 28, records of Coconino County, Arizona.

Parcel 5:  Tracts 4A, 4B and 4C, THE ESTATES AT PINE CANYON UNIT THREE, according to the plat recorded in Case 9, Map 59, records of Coconino County, Arizona.

Parcel 6:  Lots 257, 258, 260, 261, 262, 265, 266, 270, 272, 273, 274, 278 - 291, inclusive, 293, 295, 297, 298, 300 - 306, inclusive, 309, 311 and 312, THE ESTATES AT PINE CANYON UNIT FOUR, according to the plat recorded in Instrument No. 3393728, records of Coconino County, Arizona.

Parcel 7:  Tracts 4D, 4E, 4F, 5A, 5B, 5C and 5D, THE ESTATES AT PINE CANYON UNIT FOUR, according to the plat recorded in Instrument No. 3393728, records of Coconino County, Arizona.

# EXHIBIT R


**ATI**
Real Estate Consulting

# APPRAISAL TECHNOLOGY, INC.

A SUMMARY APPRAISAL REPORT OF THE CURRENT MARKET VALUES OF THE
*PINE CANYON GOLF CLUB* (18/19-HOLE REGULATION COURSE) AND THE
SURROUNDING COMPONENTS OF REAL ESTATE LOCATED IN FLAGSTAFF,
COCONINO COUNTY, ARIZONA.

## PREPARED FOR

JOHNSON BANK, ARIZONA, N.A.
8700 NORTH GAINEY RANCH CENTER DRIVE, SUITE 100
SCOTTSDALE, ARIZONA 85258

## ATTENTION

MS. HOPE DOUKAS

## ATI FILE NO: XZZ9290R

## DATE OF VALUE

MAY 6, 2010

## DATE OF REPORT

JUNE 1, 2010

## PREPARED BY

JEFF W. WINDLE, GAA
CERTIFIED GENERAL REAL ESTATE APPRAISER CERTIFICATE NO. 30808

KYLE WOOD, INDEPENDENT FEE APPRAISER
CERTIFIED GENERAL REAL ESTATE APPRAISER CERTIFICATE NO. 31662

MICHAEL PETRUS, INDEPENDENT FEE APPRAISER
CERTIFIED GENERAL REAL ESTATE APPRAISER CERTIFICATE NO. 30453

# *EXHIBIT R*



# APPRAISAL TECHNOLOGY, INC.

June 1, 2010

ATI File No: **XZZ92900R**

**TO:**   **Johnson Bank, Arizona, N.A.**
8700 North Gainey Ranch Center Drive, Suite 100
Scottsdale, Arizona 85258

**ATTN:**   Ms. Hope Doukas

**RE:**   A Summary Appraisal Report of the current market values of the **PINE CANYON GOLF CLUB** (18/19-hole regulation course) and the surrounding components of real estate located in Flagstaff, Coconino County, Arizona.

Dear Ms. Doukas:

Pursuant to your request and authorization, the appraisers present to you the current market values of the Pine Canyon properties (as described in detail within this report). Attached to this opinion of values is a narrative report plus exhibits, which describes and identifies methods of approach and valuation.

**It should be noted that the property, including all components of real estate, was previously appraised on April 16, 2009, A.T.I. file number XZZ84689O.**

The purpose of this appraisal is to estimate the "as is" market values of the 18-hole golf course community known as Pine Canyon in Flagstaff, Arizona; which includes all its different facets of real estate, as requested by our client. The market value estimates reflect the subject property's physical and economic conditions as of, the date of inspection, May 6, 2010.

It should be noted, a title search was not furnished and that all historical information on the subject property was provided by the developer/owner, including all financial information and membership information. The appraisers have made an Extraordinary Assumption that all of this information is correct and accurate as provided and further, that there are no adverse restrictions or easements which would affect the utility or marketability of the property.

Each real estate asset was appraised as separate "stand alone" properties to be marketed as such. However, the appraisers have provided a value for some of the appraised real estate assets as though being purchased by a single buyer in a single purchase, where the market deems this appropriate, such as with bulk lot purchases. This is also known as a Bulk Purchase and a Bulk Value is given.

**It should also be noted, each value is considered a stand alone value; no discounting for a bulk sales value has been indicated.**

# *EXHIBIT R*

Again, this appraisal will include separate values for the different real estate components appraised together or separately by the three appraisers listed on this report, as follows:

- Sections One (1) through Six (6) were appraised by Jeff W. Windle, GAA and Kyle R. Wood, Independent Fee Appraiser, <u>only</u>.

- Sections Seven (7) through Nine (9) were appraised by Jeff W. Windle, GAA and Michael Petrus, Independent Fee Appraiser, <u>only</u>.

Each component is described below:

## <u>SECTION ONE:</u>

Section One **(1-A)** includes the current market value of the Pine Canyon Golf course and the associated property, as a "going concern."

**Going Concern** is defined as, "an operating business enterprise that is expected to continue." (USPAP, 2010/11 ed.)

Section One **(1-B)** includes the current "bulk" market value of the 36 finished custom home lots within the portion of Pine Canyon commonly denoted as *The Estates*.

## <u>SECTION TWO:</u>

Section Two (2) includes the current "bulk" market value of the 31 finished semi-custom home lots with an additional 11 semi-custom cabin home lots within the portion of Pine Canyon commonly denoted as *Deer Creek Crossing*.

## <u>SECTION THREE:</u>

Section Three (3) includes the current "bulk" market value of the 22 finished town-home lots within the portion of Pine Canyon commonly denoted as the *Mountain Villas at Elk Pass*.

## <u>SECTION FOUR:</u>

Section Four (4) includes the current market value of the remaining land (10.91 ± acres or 475,540 ± square feet) allocated to the 12 undeveloped condominium pads (48 units) within the Mt. Vista Condominiums at Pine Canyon.

## <u>SECTION FIVE:</u>

Section Five (5) includes the separate current market values (listed as A thru D) of each of the parcels planned for future phased development. These include:

- (A) 27.45 ± acres denoted as Tracts "6 & 7" or Unit "5" and platted and engineered for 47 custom home lots within *The Estates*.
- (B) 17.50 ± Acres denoted as Tract "9" platted and engineered for 38 custom home lots within *The Estates*.

- (C)  21.10 ± Acres denoted as Tract "3-F" preliminarily platted for 70 lots/units within Deer Creek Crossing - to be comprised of 22 duplex/triplex units in the "North" and 48 cottage lots in the "South."
- (D)  7.87 ± Acres denoted as Tract "23" preliminarily platted for 20 duplex units - 10 buildings.

## SECTION SIX:

Section Six (6) includes the separate current market values of each of the "out parcels" still under common ownership by Pine Canyon.  These include:

- (A)  15.64 ± Acres of vacant un-entitled multi-family zoned land denoted as Tract "22".
- (B)  2.68 ± Acres of land to be appraised "as vacant" denoted as Tract "1".

## SECTION SEVEN:

Section Seven (7) includes the separate current market values of each of the improved custom homes (3 total) located within *The Estates* which are still under common ownership by Pine Canyon.  **This Section will be included as part of the Addenda to this report and was appraised by Jeff W. Windle and Michael Petrus Only.**  These include (in brief):

- (A)  Custom Single Family Home on Lot 302
- (B)  Custom Single Family Home on Lot 286
- (C)  Custom Single Family Home on Lot 293

## SECTION EIGHT:

Section Eight (8) includes the separate current market values of each of the improved town-homes (7 total) located within the *Mountain Villas at Elk Pass* still under common ownership by Pine Canyon.  **This Section will be included as part of the Addenda to this report and was appraised by Jeff W. Windle and Michael Petrus Only.**  These include (in brief):

- (A)  Townhome on Lot 11
- (B)  Townhome on Lot 18
- (C)  Townhome on Lot 24
- (D)  Townhome on Lot 27
- (E)  Townhome on Lot 29
- (F)  Townhome on Lot 43
- (G)  Townhome on Lot 46

# EXHIBIT R

Section Nine (9) includes the separate current market values of each of the condominium units located within the *Mountain Vista Condominiums* still under common ownership by Pine Canyon. **This Section will be included as part of the Addenda to this report and was appraised by Jeff W. Windle and Michael Petrus Only.** These include (in brief):

- (A) Building 1 Unit 1 Lower Left {B1U1 (LL)}
- (B) Building 1 Unit 2 Lower Right {B1U2 (LR)}
- (C) Building 2 Unit 7 Upper Left {B2U7 (UL)}
- (D) Building 14 Unit 53 Lower Left {B14U53 (LL)}
- (E) Building 14 Unit 54 Lower Right {B14U54 (LR)}

Sections One (1) through Six (6) were personally inspected on May 6, 2010 by Jeff W. Windle only and previously by Kyle R. Wood and Jeff W. Windle (April 16, 2009). Furthermore, Sections Seven (7) through Ten (10) were personally inspected by both Jeff W. Windle and Michael Petrus, also on May 6, 2010. It should also be noted when each section was personally inspected the condition of each of the improvements (if improved) was also investigated.

The intended users of this report are Johnson Bank, Arizona, N.A., its affiliates, successors, assigns, and/or its clients. The intended use of the appraisal report is for mortgage/lending decisions. This appraisal was written for the stated intended users and for the stated intended uses only.

The Golf Course is an owner-occupied property and the associated surrounding real estate (to be appraised as part of this report) have no leases encumbering their bundle of rights, and thus, the fee simple estate is considered in this report for all valuations.

The market value estimates reported in this appraisal assignment embodies all ownership rights included in the fee simple estate. The value estimate(s) are based upon the assumption the subject properties are unencumbered by any other interest/estate and are "free and clear" of all liens, subject to only the limitations of the four powers of government.

The valuation figures rendered are also based upon cash or its equivalent. This appraisal assignment was drafted to adhere to the Ethics, Bylaws, Regulations and Standards of Professional Appraisal Practice of the Appraisal Institute, Uniform Standards of Professional Appraisal Practice promulgated by the Appraisal Standards Board of the Appraisal Foundation and in conformity with the Uniform Appraisal Instructions to Appraisers and Johnson Bank, Arizona, N.A.

# *EXHIBIT R*

### SECTION ONE (1-A)

Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Golf Course/clubhouse and associated property) as a "going concern," as of May 6, 2010, was:

> **ELEVEN MILLION THREE HUNDRED FIVE THOUSAND DOLLARS**
> **($11,305,000.00)**

The above value is inclusive of all Furniture Fixtures and Equipment (FF&E) estimated at $1,803,500.

### SECTION ONE (1-B)

Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current "bulk" market value of subject property (36 finished custom home lots within *The Estates),* as of May 6, 2010, was:

> **SEVEN MILLION SIX HUNDRED TWENTY THOUSAND DOLLARS**
> **($7,620,000.00)**

### SECTION TWO (2)

Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current "bulk" market value of subject property (31 finished semi-custom home lots with an additional 11 semi-custom cabin home lots within *Deer Creek Crossing),* as of May 6, 2010, was:

> **FOUR MILLION FIVE HUNDRED FIFTY THOUSAND DOLLARS**
> **($4,550,000.00)**

### SECTION THREE (3)

Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current "bulk" market value of subject property (22 finished town-home lots within the *Mountain Villas at Elk Pass),* as of May 6, 2010, was:

> **TWO MILLION FOUR HUNDRED SIXTY THOUSAND DOLLARS**
> **($2,460,000.00)**

# EXHIBIT R

Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the remaining land (10.91 ± acres or 475,540 ± square feet) allocated to the 12 undeveloped condominium pads (48 units) within the Mt. Vista Condominiums at Pine Canyon, was:

> ## THREE MILLION NINETY THOUSAND DOLLARS
> ## ($3,090,000.00)

## SECTION FIVE (5)

**(5-A)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of subject property (27.45 ± acres denoted as Tracts "6 & 7" and platted and engineered for 47 custom home lots within *The Estates Unit "5"),* as of May 6, 2010, was:

> ## FIVE MILLION ONE HUNDRED THOUSAND DOLLARS
> ## ($5,100,000.00)

**(5-B)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of subject property (17.50 ± acres denoted as Tract "9" and platted and engineered for 38 custom home lots within *The Estates),* as of May 6, 2010, was:

> ## TWO MILLION FIVE HUNDRED THIRTY THOUSAND DOLLARS
> ## ($2,530,000.00)

**(5-C)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of subject property (21.10 ± acres denoted as Tract "3-F" and preliminarily platted for 70 lots/units within *Deer Creek Crossing* - to be comprised of 22 duplex/triplex units in the "North" and 48 cottage lots in the "South"),* as of May 6, 2010, was:

> ## THREE MILLION NINE HUNDRED FIVE THOUSAND DOLLARS
> ## ($3,905,000.00)

# *EXHIBIT R*

**(5-D)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of subject property (7.87 ± acres denoted as Tract "23" and preliminarily platted for 20 duplex units - 10 buildings), as of May 6, 2010, was:

<div style="border:2px solid black; padding:10px; text-align:center;">

**ONE MILLION THREE HUNDRED SEVENTY THOUSAND DOLLARS**
**($1,370,000.00)**

</div>

## SECTION SIX (6)

**(6-A)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of subject property (15.64 ± acres of un-entitled multi-family zoned land denoted as Tract "22" within Pine Canyon), as of May 6, 2010, was:

<div style="border:2px solid black; padding:10px; text-align:center;">

**TWO MILLION ONE HUNDRED TEN THOUSAND DOLLARS**
**($2,110,000.00)**

</div>

**(6-B)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of subject property (2.68 ± acres of land to be appraised "as vacant" and denoted as "Tract 1", as of May 6, 2010, was:

<div style="border:2px solid black; padding:10px; text-align:center;">

**FIVE HUNDRED TWENTY FIVE THOUSAND DOLLARS**
**($525,000.00)**

</div>

**Again, it should be noted, each value is considered a stand alone value; <u>no</u> discounting for a bulk sales value has been indicated.**

Section One (1) through Section Six (6) were appraised by Jeff W. Windle, GAA and Kyle R. Wood, Independent Fee Appraiser and the values, discussions and conclusions related to these Sections and only these Sections, are our own.

Respectfully submitted,

*[signature]*                                    *[signature]*

Jeff W. Windle, GAA                              Kyle Wood, Independent Fee Appraiser
Certified General Real Estate Appraiser No. 30808    Certified General Real Estate Appraiser No. 31662

# *EXHIBIT R*

**(7-A)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Custom Single Family Home on Lot 302 within *The Estates*), as of May 6, 2010, was:

> ### ONE MILLION FIVE HUNDRED FIFTY THOUSAND DOLLARS
> ### ($1,550,000.00)

**(7-B)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Custom Single Family Home on Lot 286 within *The Estates*), as of May 6, 2010, was:

> ### TWO MILLION EIGHT HUNDRED THOUSAND DOLLARS
> ### ($2,800,000.00)

**(7-C)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Custom Single Family Home on Lot 293 within *The Estates*), as of May 6, 2010, was:

> ### THREE MILLION FIVE HUNDRED THOUSAND DOLLARS
> ### ($3,500,000.00)

## SECTION EIGHT (8)

**(8-A)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Townhome on Lot 11 within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ### ONE MILLION SEVENTY FIVE THOUSAND DOLLARS
> ### ($1,075,000.00)

# *EXHIBIT R*

**(8-B)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Townhome on Lot 18 within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ## FIVE HUNDRED EIGHTY FIVE THOUSAND DOLLARS
> ### ($585,000.00)

**(8-C)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Townhome on Lot 24 within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ## SEVEN HUNDRED TEN THOUSAND DOLLARS
> ### ($710,000.00)

**(8-D)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Townhome on Lot 27 within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ## SIX HUNDRED SIXTY FIVE THOUSAND DOLLARS
> ### ($665,000.00)

**(8-E)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Townhome on Lot 29 within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ## NINE HUNDRED THOUSAND DOLLARS
> ### ($900,000.00)

**(8-F)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Townhome on Lot 43 within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ## FOUR HUNDRED NINETY FIVE THOUSAND DOLLARS
> ### ($495,000.00)

# *EXHIBIT R*

**(8-G)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Townhome on Lot 46 within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ### FIVE HUNDRED SEVENTY FIVE THOUSAND DOLLARS
> ### ($575,000.00)

## SECTION NINE (9)

**(9-A)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Condominium - Building 1 Unit 1 Lower Left - B1 U1 LL) within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ### FIVE HUNDRED TWENTY FIVE THOUSAND DOLLARS
> ### ($525,000.00)

**(9-B)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Condominium - Building 1 Unit 2 Lower Right - B1 U2 LR) within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ### FIVE HUNDRED TWENTY FIVE THOUSAND DOLLARS
> ### ($525,000.00)

**(9-C)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Condominium - Building 2 Unit 7 Upper Left – B2 U7 UL) within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ### FIVE HUNDRED THIRTY THOUSAND DOLLARS
> ### ($530,000.00)

# *EXHIBIT R*

**(9-D)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Condominium - Building 14 Unit 53 Lower Left – B14 U53 LL) within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ## FIVE HUNDRED FIFTY FIVE THOUSAND DOLLARS
> ## ($555,000.00)

**(9-E)** Based upon the information found in our investigation, coupled with our analysis and by virtue of our experience, it is our opinion that the current market value of the subject property (Condominium - Building 14 Unit 54 Lower Right – B14 U54 LR) within The *Mountain Villas at Elk Pass*), as of May 6, 2010, was:

> ## FIVE HUNDRED SIXTY FIVE THOUSAND DOLLARS
> ## ($565,000.00)

**Again, it should be noted, each value is considered a stand alone value; <u>no</u> discounting for a bulk sales value has been indicated.**

Section Seven (7) through Section Nine (9) were appraised by Jeff W. Windle, GAA and Michael Petrus, Independent Fee Appraiser and the values, discussions and conclusions related to these Sections and only these Sections, are our own.

Respectfully submitted,


Jeff W. Windle, GAA
Certified General Real Estate Appraiser No. 30808

Michael Petrus, Independent Fee Appraiser
Certified General Real Estate Appraiser No. 30453

# *EXHIBIT R*

| VALUATION SUMMARY | | |
|---|---|---|
| Section 1-A | | $11,305,000.00 |
| Section 1-B | | $7,620,000.00 |
| Section 2 | | $4,550,000.00 |
| Section 3 | | $2,460,000.00 |
| Section 4 | | $3,090,000.00 |
| Section 5 | | |
| | A | $5,100,000.00 |
| | B | $2,530,000.00 |
| | C | $3,905,000.00 |
| | D | $1,370,000.00 |
| Section 6 | | |
| | A | $2,110,000.00 |
| | B | $525,000.00 |
| Section 7 | | |
| | A | $1,550,000.00 |
| | B | $2,800,000.00 |
| | C | $3,500,000.00 |
| Section 8 | | |
| | A | $1,075,000.00 |
| | B | $585,000.00 |
| | C | $710,000.00 |
| | D | $665,000.00 |
| | E | $900,000.00 |
| | F | $495,000.00 |
| | G | $575,000.00 |
| Section 9 | | |
| | A | $525,000.00 |
| | B | $525,000.00 |
| | C | $530,000.00 |
| | D | $555,000.00 |
| | E | $565,000.00 |

It should be noted, the value presented in Section 1-A is inclusive of all Furniture Fixtures and Equipment (FF&E) estimated at $1,803,500.

**Again, it should be noted, each value is considered a stand alone value; <u>no</u> discounting for a bulk sales value has been indicated.**

# EXHIBIT R

## GENERAL FACTS AND CONCLUSIONS

**PROPERTY:** 18-hole Golf Course/Club and the surrounding components of real estate

**LOCATION:** The property is located in Flagstaff, Coconino County, Arizona.

**TAX PARCEL NUMBERS:** Too numerous to list (see section information)

**SITE AREA:** See individual sections within report. However, total area for Pine Canyon is broken down as follows (in acres):

### Total Property

| | |
|---|---:|
| Golf Course | 154.4 |
| Clubhouse, Camp etc Site | 10.9 |
| Maintenance Facility Site | 3.1 |
| Community/HOA Park Site | 9.3 |
| Open/undevelopable spaces | 43.5 |
| Developed/Developable Tracts | 373.1 |
| Infrastructure - approx | 25.0 |
| Subtotal | 619.3 |

**ZONING:** Multiple Zonings (See Section Information)

**IMPROVEMENTS:** Golf Course/Club, typical subdivision improvements along with the surrounding components of real estate (see section information)

**HIGHEST & BEST USE:** As Vacant – Single and multi-family residential or residential support use
Improved - As Improved

**DATE OF VALUATIONS:** May 6, 2010

**DATE OF REPORT:** June 1, 2010