John J. Hebert (#010633)
Mark W. Roth (#010708)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART PC**
One E. Washington, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-mail:  PhoenixBankruptcyECF@polsinelli.com
E-Mail: jhebert@polsinelli.com
E-Mail: mroth@polsinelli.com
E-Mail: wray@polsinelli.com

*Attorneys for Debtors*

# IN THE UNITED STATES BANKRUPTCY COURT

# THE DISTRICT OF ARIZONA

| In re: | Chapter 11 Proceedings |
|---|---|
| LONE TREE INVESTMENTS, LLC<br>PINE CANYON GOLF, L.L.C.<br>MOUNTAIN VISTA AT PINE CANYON, L.L.C.<br>ELK PASS, L.L.C.<br>DEER CREEK CROSSING, L.L.C.<br>CREEKSIDE VILLAGE HOMES, LLC | Case No. 2:10-bk-26776-RTBP<br>Case No. 2:10-bk-26779-RTBP<br>Case No. 2:10-bk-26785-RTBP<br>Case No. 2:10-bk-26790-RTBP<br>Case No. 2:10-bk-26792-RTBP<br>Case No. 2:10-bk-26794-RTBP |
| Debtors. | Joint Administration under<br>Case No. 2:10-bk-26776-RTBP |
| This filing applies to:<br>☒ ALL DEBTORS<br>☐ SPECIFIED DEBTORS. | **MOTION TO REINSTATE THE PREVIOUSLY-APPROVED DEBTOR-IN-POSSESSION CREDIT FACILITY** |

Lone Tree Investments, LLC ("Lone Tree"), Creekside Village Homes, LLC ("Creekside"), Elk Pass, L.L.C. ("Elk Pass"), Mountain Vista at Pine Canyon, L.L.C. ("Mountain Vista"), Deer Creek Crossing, L.L.C. ("Deer Creek") and Pine Canyon Golf, L.L.C. ("Pine Canyon Golf") (collectively, the "Debtors") hereby move this Court for an order reinstating the debtor-in-possession line of credit (the "DIP Facility") previously approved by the Court in its Final Order Granting Debtors' Motion to Approve Debtor-in-Possession Financing (the "DIP Financing Order") entered September 28, 2010.  The Debtors' effective use of post-petition financing and operation within the payment regime and reporting requirements of the DIP Financing Order resulted in the continued viability of each of the Debtors and payment of no less than $412,251.08

1

2779585.1

to Johnson Bank, the creditor whose lien was primed as a result of the DIP Facility. The Debtors, by this Motion, seek only the ability to continue to draw funds under the DIP Facility for an additional 120 days, on the same terms and with the same conditions as set forth in the DIP Financing Order, so as to allow the Debtors to continue operations while seeking confirmation of their plan of reorganization. The Debtors are not seeking to increase the balance available under the DIP Facility, to authorize any increase in interest rate or loan charges, or to pledge additional property of the estate; all that is being sought is, essentially, an extension of the DIP Facility's maturity. A summary of the terms of the DIP Facility, as sought to be approved herein, follows.

## I. DIP FACILITY TERMS

1. <u>Principal Amount</u>: $1,000,000
2. <u>Structure:</u> Revolving line of credit
3. <u>Interest Rate:</u> 15% per annum
4. <u>Maturity Date:</u> April 30, 2011
5. <u>Payments:</u> 75% of the net proceeds generated through the sale of any of the Property shall be remitted to Lender (to a maximum of the amount then due to Lender) and applied to the outstanding balance, the remaining 25% (or higher amount) shall be remitted to Johnson, presuming that the sale is of property that is part of Johnson's collateral.
6. <u>Collateral:</u> A first-position lien on the Property. This lien would continue to prime an existing lien in favor of Johnson on portions of the Property.
7. <u>Lender:</u> Flagstaff Acquisitions, L.L.C.; a member holding a 99% interest in Debtor Lone Tree Investments, LLC.
8. <u>Limitations and Restrictions:</u> The real property described in Exhibit "A" hereto, with respect to which the Debtors have a dispute with Wespac Communities, Inc., shall not serve as collateral for the DIP Facility.

   No real or personal property that was unencumbered as of the date the Debtors' petitions were filed shall serve as collateral for the DIP Facility.

   Lender may not declare a default, and consequently shall not be entitled to receive interest at the default rate, without prior order of the Court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

1. On August 24, 2010 (the "Petition Date"), Debtors filed their voluntary petitions for

1. relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

2. Debtors are authorized to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

4. The subject matter of this motion is a core proceeding under 28 U.S.C. §157(b)(2)(A), (D), and (M).

5. The Debtors, collectively, own and operate the residential community, golf course, and related facilities commonly known as Pine Canyon in Flagstaff, Arizona (the "Property").

6. Pine Canyon Golf operates the golf course, and attendant facilities, while the other Debtors own various parcels of real property at varying stages of development within the Property.

7. To refinance former acquisition and development loans relating to the Property, Debtors entered into that certain Construction Loan Agreement, dated June 26, 2008, whereby Johnson Bank agreed to advance to the Debtors as much as $25,000,000 (the "Johnson Loan").

8. The Johnson Loan is secured by a deed of trust that purports to establish a first-position lien on certain parcels located within Property.[1]

9. According to the Debtors' records, the Johnson Loan's balance as of the date of filing was approximately $24,275,826; as of the filing hereof, the principal balance for the Johnson Loan is approximately $23,863,574.51.

10. According to an appraisal conducted by Appraisal Technology, Inc. at Johnson's request (the "Johnson Appraisal"), as of May 6, 2010, the Property was worth approximately $60,120,000.

11. Based upon the Johnson Appraisal, which failed to include several additional elements of the collateral upon which Johnson Bank claims a lien, Johnson Bank presently enjoys an equity cushion in excess of $35,000,000.

---

[1] Nothing herein shall be construed as an admission as to the validity or extent of Johnson Bank's claim against the Debtors or its interest in the Property.

3

2779585.1

12. The Debtors' current operating revenue is insufficient to pay their operational expenses.

13. Furthermore, the Debtors are engaged in the construction of a model cabin that will allow for superior marketing, and consequently greater sales, of certain of the Debtors' holdings within the Property.

14. As a result of their cash-flow deficit, the Debtors remain in need of financing to maintain operations and preserve the value of their estates while formulating and implementing strategies to improve cash flow.

15. On August 24, 2010, the Debtors filed their *Motion to Approve Debtor-in-Possession Financing* (the "DIP Financing Motion"), which was accompanied by the *Declaration of Patricia E. Nolan in Support of the Debtors' Motion to Approve Debtor-in-Possession Financing and Motion to Sell Residential Homes and Residential Lots in the Ordinary Course of Business* (the "Nolan Declaration").

16. On August 27, 2010, the Court entered its *Interim Order Granting Debtors' Motion to Approve Debtor-in-Possession Financing*, and on September 28, 2010, its *Final Order Granting Debtors' Motion to Approve Debtor-in-Possession Financing* (the "DIP Financing Order").

17. The DIP Financing Order approved a revolving credit facility extended to the Debtors by Flagstaff Acquisitions, L.L.C. ("Lender"), in the principal amount of $1,000,000, secured by a priming first-position lien on the majority of the Debtors' real property (the "DIP Facility").

18. The DIP Financing Order found that post-petition financing was necessary to the Debtors' operations, and was sought by the Debtors in the exercise of sound business judgment.

19. The DIP Financing Order further found that the terms of the DIP Facility were reasonable and appropriate, that the Debtors were unable to find alternative financing on preferable terms, and that the interests of all junior lienholders affected by the DIP Facility were adequately protected.

2779585.1

20. As proposed by the Debtors in their motion, the DIP Financing Order further provided that Johnson Bank would receive 25% of the proceeds generated through the sale of real property subject to its lien, now securing the DIP Facility, after payment of reasonable commissions, closing costs, and other expenses commonly incurred in the sale of real property.

21. As a result of this payment regime, since the Petition Date, Johnson Bank has received approximately $412,251.08.

22. The DIP Financing Order included additional restrictions preventing a certain portion of the Property, title to which is presently in dispute, and all property that was unencumbered as of the Petition Date, from being pledged to secure the DIP Facility, and requiring Lender to seek the Court's permission prior to declaring a default.

23. The DIP Facility matured on November 30, 2010 and has been paid in full.

24. Lender has agreed to reinstate the DIP Facility, on the same terms and conditions as set forth in the DIP Financing Order, without any additional concession on the Debtors' part, with an extended maturity date of April 30, 2011.

25. As described in the *Declaration of Patricia E. Nolan in Support of the Debtors' Motion to Reinstate the Previously-Approved Debtor-in-Possession Credit Facility* and evidenced in the projections, attached hereto as Exhibits "B" and "C" respectively, without the use of cash made available under the DIP Facility, the Debtors project that they would run out of operating capital within 30 days.

26. A lack of cash with which to pay operating expenses could result in foreclosure upon the Property by Johnson Bank and other creditors, which would cause significant harm to the members, homeowners, and creditors by elimination of the going-concern value that the Property presently enjoys.

27. The Debtors' management, in exercise of its sound business judgment, believes that reinstatement of the DIP Facility, as sought herein, is not only advisable, but necessary, to continue the Debtors' operations and preserve the value of these bankruptcy estates.

28. On November 30, 2010, the Debtors filed their *Joint Plan of Reorganization Dated*

2779585.1

*November 30, 2010* (the "Plan") and the attendant disclosure statement (the "Disclosure Statement").

29. The Plan provides for payment to all creditors in full.

30. A hearing to assess the adequacy of the Disclosure Statement is presently set to occur on January 13, 2011 at 10:00 a.m.

31. The Debtors intend to dutifully proceed to confirmation of the Plan, and by this motion, ask the Court to approve the financing necessary to do so.

**III. LEGAL ARGUMENT**

For all the reasons set forth in the DIP Financing Motion and Nolan Declaration, the factual recitations and argument contained in which are incorporated fully herein by reference, the continued availability of the DIP Facility is necessary to the Debtors' reorganization, in the best interests of these bankruptcy estates, and in full compliance with the requirements of 11 U.S.C. § 364. It is for those same reasons, which were adopted by the Court in its entry of the DIP Financing Order, that reinstatement of the DIP Facility and an extension of its maturity through April 30, 2011 should now be approved by the Court. A revival of the DIP Facility will not harm the interests of any creditor any more than the DIP Facility's initial approval. With respect to Johnson Bank, the creditor most impacted by the relief sought herein, it will not suffer the slightest harm to its interests because, as set forth in the Johnson Appraisal, it enjoys an equity cushion of approximately $35,000,000. Reinstatement of the DIP Facility, along with the requirement that Johnson Bank receive at least 25% of all net proceeds generated through the sale of its collateral, cannot begin to undermine such a significant equity cushion and, in fact, might provide Johnson Bank more payment during the course of these jointly-administered bankruptcies than it might otherwise be entitled to.

Just as the DIP Facility was essential to the continuation of the Debtors' operations and necessary to preserve the value of the estates' assets, its reinstatement and extension to April 30, 2011 is now so. Without operations, there is no revenue. Without revenue, it is impossible for the Debtors to pay the costs of maintenance, and the value of the Property and related facilities

2779585.1

plummets. An inability to pay the necessary expenses of operations would be harmful not only to the creditors of these bankruptcy estates, but to the Club members and homeowners associated with the Property. Furthermore, the Debtors are presently constructing a model cabin for use as a sales tool. As such, the unavailability of the DIP Facility would not only harm the Debtors' current operations, but would prevent the realization of additional future revenues available through increased marketing. Given that the Court has already found that post-petition financing is necessary, and has been extended by Lender on reasonable terms, and, as set forth above, the continuation of the financing in place will not impair the protection of any party's interest, the Debtors submit that there could be no harm in granting the relief sought herein, but a great deal to lose in denying it.

**IV.     REQUEST FOR EXPEDITED RELIEF**

Due to the Debtors' immediate and ongoing need for cash, a motion will be filed herewith seeking an expedited hearing of this matter. For purposes of Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure, to the extent applicable, the Debtors submit that the reinstatement of the DIP Facility sought to be approved herein is necessary to avoid immediate and irreparable harm to their estates and, because of this extraordinary circumstance, seek its approval immediately. As such, the Court should grant this motion in full, and authorize the relief requested herein without delay or further hearing.

**V.     CONCLUSION**

The Debtors must have access to operating capital to remain in business. No source of immediate cash, other than Lender, exists. The funds previously advanced by Lender in connection with the DIP Facility have been used to maintain the Debtors' operations and to preserve the value of the Debtors' estates, and, by this motion, the Debtors only seek the ability to continue to use the DIP Facility in aid of those efforts until such time as their Plan may be confirmed. Reinstatement of the DIP Facility, with an extended maturity of April 30, 2011, is essential to the Debtors' reorganization and would not harm the interests of any of the Debtors' creditors.

2779585.1

WHEREFORE, the Debtors respectfully request that the Court enter an Order reinstating the DIP Facility and extending its maturity to April 30, 2011, with all of the other terms and conditions of the DIP Facility and DIP Financing Order to remain the same.

DATED: January 11, 2011.

POLSINELLI SHUGHART PC

By: /s/ Wesley D. Ray
John J. Hebert
Mark W. Roth
Wesley D. Ray
One E. Washington
Suite 1200
Phoenix, AZ 85004

*Attorneys for Debtors*

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") on January 11, 2011, to:

| | |
|---|---|
| U.S. TRUSTEE'S OFFICE<br>230 N. 1st Avenue, Suite 204<br>Phoenix, AZ 85003 | Joseph E. Cotterman * jec@gknet.com<br>James B. Connor jbc@gknet.com<br>GALLAGHER & KENNEDY P.A.<br>2575 E. Camelback Road, Suite 1100<br>Phoenix, AZ 85016-9225<br>   *Attorneys for Johnson Bank* |
| Scott K. Brown * sbrown@LRLaw.com<br>J. Henk Taylor * htaylor@lrlaw.com<br>Robert R. Roos * rroos@LRLaw.com<br>LEWIS AND ROCA LLP<br>40 N. Central Ave., Suite 1900<br>Phoenix, AZ 85004-4429<br>   *Attorneys for Wespac Communities, Inc.* | Michael D. Curran * mcurran@mmcec.com<br>Daniel D. Maynard * dmaynard@mmcec.com<br>MAYNARD CRONIN ERICKSON CURRAN<br>  & REITER, P.L.C.<br>3200 N. Central Ave., Suite 1800<br>Phoenix, AZ 85012<br>   *Attorneys for Sysco Arizona, Inc.* |
| GE Money Bank claims@recoverycorp.com<br>c/o RECOVERY MANAGEMENT SYSTEMS CORP.<br>25 SE 2nd Avenue, Suite 1120<br>Miami, FL 33131-1605<br>Attn: Ramesh Singh | Each of the Debtors' Twenty Largest Unsecured Creditors |

By: /s/ Diane Ashworth

2779585.1

# EXHIBIT A

Lot 46 of Tract 21, Amended Final Plat of Mountain Villas at Pine Canyon, according to the plat of record in Instrument No. 3416358 and Certificate of Correction recorded in Instrument No. 3427335, in the Official Records of Coconino County, Arizona.

John J. Hebert (#010633)
Mark W. Roth (#010708)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART PC**
CityScape Plaza
One E. Washington, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-mail: PhoenixBankruptcyECF@polsinelli.com
E-Mail: jhebert@polsinelli.com
E-Mail: mroth@polsinelli.com
E-Mail: wray@polsinelli.com

*Attorneys for Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT

## THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| LONE TREE INVESTMENTS, LLC<br>PINE CANYON GOLF, L.L.C.<br>MOUNTAIN VISTA AT PINE CANYON, L.L.C.<br>ELK PASS, L.L.C.<br>DEER CREEK CROSSING, L.L.C.<br>CREEKSIDE VILLAGE HOMES, LLC | Case No. 2:10-bk-26776-RTBP<br>Case No. 2:10-bk-26779-RTBP<br>Case No. 2:10-bk-26785-RTBP<br>Case No. 2:10-bk-26790-RTBP<br>Case No. 2:10-bk-26792-RTBP<br>Case No. 2:10-bk-26794-RTBP |
| Debtors. | Joint Administration under<br>Case No. 2:10-bk-26776-RTBP |
| This filing applies to:<br>☒ ALL DEBTORS<br>☐ SPECIFIED DEBTORS | **DECLARATION OF PATRICIA E. NOLAN IN SUPPORT OF THE DEBTORS' MOTION TO REINSTATE THE PREVIOUSLY-APPROVED DEBTOR-IN-POSSESSION CREDIT FACILITY** |

I, Patricia E. Nolan, under penalty of perjury, hereby declare as follows:

1. I am an adult resident of Maricopa County, Arizona.

2. I am the president of Central and Osborn Properties, Inc., the manager of Debtor Lone Tree Investments, LLC (which is the sole member of each of the other Debtors), and a practicing member of the State Bar of Arizona.

1

2779586.1

1.     3.     I am of sound mind, and make this declaration of my own free will and in support of the *Motion to Reinstate the Previously-Approved Debtor-in-Possession Credit Facility* (the "Motion") filed by the Debtors in the above-captioned bankruptcy.

2.     4.     I am familiar with the Debtors' operations and financial situation.

3.     5.     I have reviewed the Motion, and concur with all of the facts recited therein.

4.     6.     The Debtors, collectively, own and operate the residential community, golf course, and related facilities commonly known as Pine Canyon in Flagstaff, Arizona (the "Property").

5.     7.     Prior to November 30, 2010, the Debtors made use of a revolving credit facility extended to the Debtors by Flagstaff Acquisitions, L.L.C. ("Lender"), in the principal amount of $1,000,000, secured by a priming first-position lien on the majority of the Debtors' real property (the "DIP Facility").

6.     8.     The DIP Facility was approved by the Court on September 28, 2010, by entry of its *Final Order Granting Debtors' Motion to Approve Debtor-in-Possession Financing* (the "DIP Financing Order").

7.     9.     According to its terms, the DIP Facility matured on November 30, 2010, and has been paid in full.

8.     10.     Lender has agreed to reinstate the DIP Facility and extend its maturity to April 30, 2011 without any concession being necessary on the Debtors' part.

9.     11.     The Debtors' operating revenue is currently insufficient to pay their operational expenses, including, but not limited to, payroll, golf-course maintenance, and operation of the golf club's amenities.

10.     12.     As a result of this cash-flow deficit, the Debtors require the continued use of the DIP Facility in order to maintain their operations.

11.     13.     Attached to the Motion as Exhibit "C" are projections showing the Debtors' anticipated operating deficit for the months of January, February, March, and April of 2011.

12.     14.     I have reviewed these projections, and believe that they are a reasonable estimate of the Debtors' cash needs in the coming months.

15. Without the use of the DIP Facility, the Debtors project that they would run out of operating capital within 30 days.

16. The efforts taken by the Debtors to obtain debtor-in-possession financing were fully and accurately described in the *Declaration of Patricia E. Nolan in Support of the Debtors' Motion to Approve Debtor-in-Possession Financing and Motion to Sell Residential Homes and Residential Lots in the Ordinary Course of Business* filed with the Court as Exhibit "C" to the *Motion to Approve Debtor-in Possession Financing* (Dkt. # 12), which is incorporated herein, and affirmed in full, by this reference.

17. Given the current credit climate, it is unlikely that additional efforts would result in any additional sources of financing or the offering of more favorable terms.

18. It is my opinion that the Debtors could not obtain debtor-in-possession financing from any source other than Lender, and that Lender would not agree to any more favorable terms than those offered in connection with the DIP Facility.

19. The Debtors' management, in exercise of its sound business judgment, believes that the extension of the DIP Facility sought in the Motion is not only advisable, but necessary and critical to the continuation of the Debtors' operations, and that such an extension is in the best interests of the Debtors, their creditors, and their estates.

20. According to the Debtors' records, Johnson Bank ("Johnson") is the only creditor that holds a security interest in the property pledged as collateral for the DIP Facility.

21. According to the Debtors' records, the principal balance owed to Johnson was, at the time of the filing of the petitions, approximately $24,275,826 and is now $23,863,574.51.

22. On or about May 6, 2010, an appraisal of the Property was conducted at the behest of Johnson (the "Johnson Appraisal").

23. The Johnson Appraisal estimated the Property's worth to be approximately $60,120,000.

24. I am familiar with the Johnson Appraisal and believe that it accurately, and likely conservatively, reflects the Property's value.

# EXHIBIT B

25. Moreover, the Johnson Appraisal did not account for (a) the entry house at the main entrance to the community and the parcel on which it is constructed; (b) the sales office and the property on which it is constructed; (c) estate lot 275; and (d) various parcels set aside for drainage and other engineering needs or designated as open areas.

26. These parcels omitted from the Johnson Appraisal are believed to be the collateral of Johnson, and only further protect its interests.

27. As a result of, among other things, the significant amount of equity existing in the property encumbered by the DIP Facility, I believe that Johnson's interests are adequately protected, and that an extension of the DIP Facility, as sought in the Motion, would not serve to harm those interests.

_____
Patricia E. Nolan

SUBSCRIBED AND SWORN to before me on this 7 day of January, 2011, by Patricia E. Nolan.

_____
Notary Public

My Commission Expires:

PATRICIA MELOSERDOFF
Notary Public - Arizona
Maricopa County
Expires 12/07/2012

2779586.1

# EXHIBIT C

**LONE TREE INVESTMENTS, LLC & SUBSIDIARIES**
**PROJECTED CASH REQUIREMENTS**
**Projected through April 30, 2011**

| | JANUARY | FEBRUARY | MARCH | APRIL | TOTAL |
|---|---|---|---|---|---|
| **LONE TREE INVESTMENTS, LLC** | | | | | |
| Estimated Operating Revenues-Net proceeds of prop sales | $0 | $0 | $0 | $0 | |
| **Estimated Operating Expenses** | | | | | |
| Salaries/Benefits | $80,000 | $80,000 | $79,000 | $78,000 | |
| Office Expenses/Legal/Insurance, etc | $25,000 | $23,000 | $25,000 | $25,000 | |
| Marketing Expenses | $3,000 | $3,000 | $3,000 | $7,000 | |
| Lot 286/293 Spec Homes Insurance/Util/Maint | $3,000 | $3,000 | $3,000 | $3,000 | |
| Property Taxes | $0 | $0 | $0 | $150,000 | |
| Total Estimated Operating Expenses | $111,000 | $109,000 | $110,000 | $263,000 | |
| **Estimated HOA Subsidy (payroll, etc.)** | | | | | |
| Safety Salaries/Benefits | $42,000 | $42,000 | $41,000 | $42,000 | |
| Entry Expenses/R&M/Utilities, etc | $11,000 | $11,000 | $11,000 | $11,000 | |
| Utilities - Water, Pump Station Electr | $12,000 | $12,000 | $12,000 | $12,000 | |
| Road Maintenance/Landscape Expenses | $20,000 | $20,000 | $20,000 | $15,000 | |
| HOA Dues / Fees | ($80,000) | ($80,000) | ($80,000) | ($80,000) | |
| Total Estimated HOA Subsidy (payroll, etc.) | $5,000 | $5,000 | $4,000 | $0 | |
| Misc.Capital Equipment / A&E / Development Costs | $2,000 | $3,000 | $3,000 | $3,000 | |
| City of Flagstaff Reclaimed Water Payment | $0 | ($107,000) | $0 | $0 | |
| **LONE TREE INVESTMENTS CASH REQUIREMENT** | $118,000 | $10,000 | $117,000 | $266,000 | $511,000 * |
| | | | | | |
| **PINE CANYON GOLF, LLC** | | | | | |
| Estimated Operating Revenues Inflow | ($8,000) | ($5,000) | ($5,000) | ($5,000) | |
| Estimated Membership Dues inflow-Prepaid & Lockers in Jan | ($365,000) | ($130,000) | ($130,000) | ($130,000) | |
| **Estimated Operating Expenses outflow** | | | | | |
| Salaries/Benefits | $100,000 | $100,000 | $100,000 | $140,000 | |
| Uniforms and Employee Meals | $2,000 | $2,000 | $2,000 | $5,000 | |
| Clubhouse & Camp Utilities/Golf Course Water | $30,000 | $30,000 | $28,000 | $28,000 | |
| Equipment Leases-Carts, Mowers, Office | $4,000 | $4,000 | $4,000 | $25,000 | |
| Golf Course Maint Supplies, R&M | $5,000 | $5,000 | $5,000 | $25,000 | |
| Clubhouse & Camp R&M, Supplies, Svcs | $25,000 | $25,000 | $25,000 | $30,000 | |
| Office Supplies/Comp Svc/Insurance, etc | $12,000 | $12,000 | $10,000 | $15,000 | |
| Member Events / Public Relations | $1,000 | $2,000 | $2,000 | $2,000 | |
| Food & Bev & Other Dept Cost of Sales | $5,000 | $3,000 | $3,000 | $3,000 | |
| Kitchen Supplies / Flowers / Utensils, etc. | $2,000 | $5,000 | $4,000 | $7,000 | |
| Property Taxes | $0 | $0 | $0 | $11,000 | |
| Total Estimated Operating Expenses outflow | $186,000 | $188,000 | $183,000 | $291,000 | |
| Misc.Capital Equip / Golf Course Improvement Costs | $2,000 | $3,000 | $3,000 | $5,000 | |
| **PINE CANYON GOLF CASH REQUIREMENT** | ($185,000) | $56,000 | $51,000 | $161,000 | $83,000 |

# EXHIBIT C

**LONE TREE INVESTMENTS, LLC & SUBSIDIARIES**
**PROJECTED CASH REQUIREMENTS**
Projected through April 30, 2011

| | JANUARY | FEBRUARY | MARCH | APRIL | TOTAL |
|---|---|---|---|---|---|
| **CREEKSIDE VILLAGE HOMES, LLC** | | | | | |
| Estimated Warranty Expenses | $1,000 | $0 | $1,000 | $0 | |
| **CREEKSIDE VILLAGE CASH REQUIREMENT** | $1,000 | $0 | $1,000 | $0 | $2,000 |
| | | | | | |
| **ELK PASS, LLC** | | | | | |
| Estimated Operating Revenues-Post sale change orders | | $0 | ($8,000) | $0 | |
| Estimated Spec Utilities and Repairs/Maint | $3,000 | $3,000 | $3,000 | $3,000 | |
| Estimated Legal Expenses | $25,000 | $25,000 | $10,000 | $0 | |
| Estimated Property Taxes | $0 | $0 | $0 | $25,000 | |
| **ELK PASS CASH REQUIREMENT** | $28,000 | $28,000 | $5,000 | $28,000 | $89,000 |
| | | | | | |
| **MOUNTAIN VISTA AT PINE CANYON, LLC** | | | | | |
| Estimated Operating Rev-Net proceeds of prop sales | $0 | $0 | $0 | $0 | |
| Estimated Note Receivable Payments | ($2,000) | ($2,000) | ($2,000) | ($2,000) | |
| Estimated Spec Utilities and Repairs/Maint | $2,000 | $2,000 | $2,000 | $2,000 | |
| Estimated Property Taxes | $0 | $0 | $0 | $18,000 | |
| **MOUNTAIN VISTA CASH REQUIREMENT** | $0 | $0 | $0 | $18,000 | $18,000 |
| | | | | | |
| **DEER CREEK CROSSING, LLC** | | | | | |
| Estimated Model Utilities and Repairs/Maint | $2,000 | $2,000 | $1,000 | $1,000 | |
| Estimated Property Taxes | $0 | $0 | $0 | $30,000 | |
| Model Cabin Construction | $65,000 | $65,000 | $65,000 | $65,000 | |
| **DEER CREEK CROSSING CASH REQUIREMENT** | $67,000 | $67,000 | $66,000 | $96,000 | $296,000 |
| | | | | | |
| **PROJECTED TOTAL CASH REQUIREMENTS** | $29,000 | $161,000 | $240,000 | $569,000 | $999,000 |

**ASSUMPTIONS**

- Assumed no payment of $398k Elk Pass retentions from Wespac pending arbitration & settlement of many issues
- Assumed no Developer Lot or Developer Spec sales
- Assumed no additional sales of Elk Pass or Mountain Vista specs
- Assumed no resale homes or resale homesite (no new member deposits)
* Includes approximately $90,000 Pine Canyon Realty expenses for this time period