Randall D. Crocker, Esq. (pro hac vice application pending Wisconsin Bar No. 1000251)
Mark F. Foley, Esq. (pro vive hac application pending Wisconsin Bar No. 1005627)
VON BRIESEN & ROPER, S.C.
411 East Wisconsin Avenue, Suite 700
Milwaukee, WI 53202
Telephone: (414) 276-1122
Facsimile: (414) 238-6532
Email: rcrocker@vonbriesen.com and mfoley@vonbriesen.com

Joseph E. Cotterman (Bar No. 013800)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
Email: jec@gknet.com
Co-Counsel for Johnson Bank

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>LONE TREE INVESTMENTS, LLC.<br>PINE CANYON GOLF, L.L.C<br>MOUNTAIN VISTA AT PINE CANYON, L.L.C.<br>ELK PASS, L.L.C.<br>DEER CREEK CROSSING, L.L.C.<br>CREEKSIDE VILLAGE HOMES, LLC<br><br>Debtors.<br><br>This filing applies to:<br><br>☒ All Debtors<br><br>☐ Specified Debtors | Chapter 11<br><br>Case No. 2:10-bk-26776-RTBP<br>Case No. 2:10-bk-26779-RTBP<br>Case No. 2:10-bk-26785-RTBP<br>Case No. 2:10-bk-26790-RTBP<br>Case No. 2:10-bk-26792-RTBP<br>Case No. 2:10-bk-26794-RTBP<br><br>Joint administration under<br>Case No. 2:10-bk-26776-RTBP<br><br>**OBJECTION TO DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION DATED JANUARY 24, 2011** |

Johnson Bank by its attorneys, von Briesen & Roper, s.c. and Gallagher & Kennedy, P.A., hereby respectfully submits its Objection to "*Debtors' First Amended Joint Plan of Reorganization Dated January 24, 2011*" (the "Plan") filed on January 24, 2011 at ECF Docket No. 198, by Lone Tree Investments, LLC,

Pine Canyon Golf, L.L.C., Mountain Vista at Pine Canyon, L.L.C., Elk Pass, L.L.C., Deer Creek Crossing, L.L.C. and Creekside Village Homes, LLC (collectively, the "Debtors"). In support of its "*Objection to the Debtors' First Amended Joint Plan of Reorganization Dated January 24, 2011*" (the "Objection"), Johnson Bank states as follows:

## Procedural Posture

1. On August 24, 2010 (the "Petition Date") the Debtors each filed a voluntary Chapter 11 Petition under Title 11 of the United States Code.

2. Johnson Bank is a banking corporation organized under the laws of the State of Wisconsin, with its principal place of business located at 555 Main Street, Janesville, WI 53403.

3. On June 26, 2008, Lone Tree Investments, LLC, Mountain Vista at Pine Canyon, L.L.C., Elk Pass, L.L.C., Deer Creek Crossing, L.L.C. and Creekside Village Homes, LLC (the "Borrowers")[1], for good and valuable consideration, executed in favor of Johnson Bank a Floating Rate Note in the original amount of $25 million (the "Note").

4. The Note was extended and modified by a Loan Extension Agreement dated as of June 24, 2009 and a Second Extension Agreement date as of August 25, 2009. The Note fully matured on June 26, 2010.

5. The Note is secured by (among other things) a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 26, 2008 (the "Deed of Trust"). The Deed of Trust relates to certain real property owned by the Borrowers located in Coconino County, Arizona, specifically described therein. The Deed of Trust was recorded with the Coconino County, Arizona, Recorder's Office on July 3, 2008, at Document Number 3492122.

---

[1] All of the Debtors are Borrowers under the Note, except Pine Canyon Golf, L.L.C.

6. Johnson Bank is a secured creditor in that it is the current owner and holder of the Note and Deed of Trust.

7. The Borrowers have defaulted under the terms of the Note as a result of their failure to pay the amounts due thereunder. As of December 30, 2010, the amount of Johnson Bank's claim was approximately $24,500,000.00, with interest accruing thereafter at the rate and in the manner set forth in the Note and other loan documents.

8. On or about November 30, 2010, the Debtors filed their Joint Disclosure Statement Relating to Joint Plan of Reorganization Dated November 30, 2010 and their Joint Plan of Reorganization Dated November 30, 2010.

9. Johnson Bank filed their Objection to the Debtors' Joint Disclosure Statement Relating to Joint Plan of Reorganization Dated November 30, 2010. After hearing Johnson Bank's Objections, the Debtors filed the Debtors' First Amended Joint Disclosure Statement Relating to First Amended Joint Plan of Reorganization Dated January 24, 2011 (the "First Amended Disclosure Statement"), which was subsequently approved by the Court.

## **ARGUMENT**

10. In advancing the Plan for confirmation, the Debtors bear the burden of proving that all the requirements of 11 U.S.C. § 1129(a)[2], with the exception of § 1129(a)(8), are met by a preponderance of the evidence. *In re Fairvue Club Properties, LLC*, 2010 WL 4501959 (Bankr. M.D. Tenn. 2010). *In re Linda Vista Cinemas, L.L.C.*, 2010 WL 4882773 (Bankr. D. Ariz. November 24, 2010) ("The court is charged with the responsibility of determining whether a debtor has proven each of the applicable elements of § 1129. It does this by measuring the

---

[2] Unless otherwise specified, all statutory section references are to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

factual evidence against the appropriate legal standards."). Likewise, the plan proponent bears the burden of proving its proposed plan is feasible. *In re Fairvue Club Properties, LLC*, 2010 WL 4501959 (Bankr. M.D. Tenn. 2010), *In re Hurricane Memphis, LLC*, 405 B.R. 616 (Bankr.W.D.Tenn. 2009), *In re Heritage Organization, L.L.C.*, 375 B.R. 230 (Bankr. N.D. Tex. 2007); *In re Danny Thomas Properties III, Ltd. Partnership*, 231 B.R. 298 (Bankr. E.D. Ark. 1999).

11. In order to meet their burden of establishing that the Plan satisfies all of the requirements of § 1129(a), the Debtors will be required to prove the value of the property that is subject of Johnson Bank's Deed of Trust.

**I. The Proposed Plan Is Not Confirmable Because It Violates 11 U.S.C. § 1129 (A)(1), (A)(7) And (A)(8) Based On The Treatment Of Johnson Bank's Collateral.**

12. Under § 1129(A)(7) a plan cannot be confirmed unless each holder of a claim in an impaired class either accepts the plan or receives or retains under the plan property of a value, as of the effective date, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7.

13. Under § 1129(A)(8) a plan cannot be confirmed unless each class of claims or interests has either accepted the plan or is not impaired under the plan.

14. The Plan places Johnson Bank's secured claim in its own class.

15. Johnson Bank will not accept the Plan as presently constituted.

16. As a result, the Plan is not confirmable unless Johnson Bank is unimpaired and it provides Johnson Bank with property of a value that is less than the amount Johnson Bank would receive if the debtor were liquidated under Chapter 7.

    **A. Johnson Bank Is Impaired Under The Plan Because It Materially Modifies The Terms Of Its Agreement With The Debtors And Because it Does Not Receive Under The Plan**

**Property Or Payments Equal To The Present Value Of Its Claim.**

17. The Debtors have adopted an appraisal conducted by Appraisal Technology, Inc, dated June 1, 2010 and providing a valuation as of May 6, 2010 (the "ATI Appraisal") as its standard for valuing the Debtor's property. Therefore, the Debtors' are estopped from asserting that Johnson Bank is not fully secured. To be confirmable, the Plan must therefore provide Johnson Bank with a stream of payments equal to the present value of its claim.

18. Reserving the question of whether the proposed payments provide sufficient payment if future collateral sale proceeds are subjected to a proper discount rate, the proposed Plan does not provide Johnson Bank with a stream of payments equal to the present value of its claim.

19. The principal feature of the Debtors' Plan is a proposed bulk sale of several parcels of unimproved and undeveloped real estate pursuant to § 363 (the "363 Sale"). The Plan requires Johnson Bank to credit bid no less than $17 million for the properties to be sold, which are described at Exhibit "F" to the Debtors' First Amended Joint Disclosure Statement Relating to First Amended Joint Plan of Reorganization Dated January 24, 2011 (the "Sale Properties"). The Plan then limits Johnson Bank's remaining secured claim to the lesser of $8 million or the actual difference between the sale price at the 363 Sale and Johnson Bank's Allowed Secured Claim.

20. Johnson Bank expects to proffer testimony at the confirmation hearing that the Sale Properties are worth many millions of dollars less than the required $17 million credit bid, probably about $6-$8 million. Thus, instead of the roughly $25 million in value that the Debtors must provide to Johnson Bank on account of its claims, the Plan proposes to provide Johnson Bank with property worth $6 million to $8 million and a stream payments worth, at best, another $8

million total (even before a present value discount analysis) for a total of $14-$18 million, far less than the amount of its allowed claim.

21. The Debtors rely on the ATI Appraisal that values the Sale Properties at over $18,000,000.[3] Plan at p. 10.

22. The Plan clearly overstates the value of the Sale Properties. The Sale Properties consist of certain lots and tracts owned by Mountain Vista at Pine Canyon, LLC, Deer Creek Crossing, L.L.C. and Lone Tree Investments, LLC. Debtors' First Amended Joint Disclosure Statement Relating to First Amended Joint Plan of Reorganization Dated January 24, 2011 (the "First Amended Disclosure Statement") at pp. 3-5, 8, Exhibits "A", "C", "E" and "F". Among the property that constitutes the Sale Properties are condominium pads owned by Mountain Vista at Pine Canyon, LLC (the "Mountain Vista Property").[4]

23. The ATI Appraisal contains a number of express or implicit assumptions which are no longer applicable, which cause the valuations contained therein to be too high. The ATI Appraisal also relies upon sales comparisons dating back to 2006, which are too old for use in determining the present value of the property referenced in the ATI Appraisal. Circumstances have dramatically changed since the ATI Appraisal was conducted. For example, the real estate market has continued to generally decline, there are a number of other golf communities in financial distress, including those in Arizona, and the entities who own the property that is the subject of the ATI Appraisal have filed for bankruptcy protection. All of the foregoing have negatively affected the value of the

---

[3] By referencing the ATI Appraisal in this Objection, Johnson Bank is not acknowledging that the valuations contained therein are accurate, and expressly reserves its right to question the ATI Appraisal, and has petitioned this Court for a valuation of the Debtors' real estate and personal property.
[4] The Mountain Vista Property is described on Exhibit "F" to the First Amended Disclosure Statement as "Lots 9-52 and 57-60, Final Plat of Mountain Vista Condominium at Pine Canyon, according to the plat recorded in instrument no. 3430465, records of Coconino County, Arizona."

properties since the preparation of the ATI Appraisal.

24. Among the reasons why the ATI Appraisal cannot serve to determine the value of the Sale Properties or any of the real estate that is subject to Johnson Bank's lien are the following:

    a. The ATI Appraisal provides a value as of May 6, 2010, over three (3) months prior to the Debtors filing their Bankruptcy Petitions. The bankruptcy filings themselves have an impact on the resale value of the Debtors' property. Because the ATI Appraisal was prepared prior to the Debtors' bankruptcy filings, it fails to take into account the impact of the Debtors' bankruptcy proceedings on the value of the real estate;

    b. The ATI Appraisal does not provide a liquidation value for the property at issue. However, the Debtors seek to sell the Sale Properties at a liquidation sale while utilizing a market value to determine the minimum bid permitted at the 363 Sale. The ATI Appraisal specifically states that it is providing a market value for the property, not a liquidation or forced sale value. The 363 Sale contemplated by the Plan is a liquidation sale of the Sale Properties and the ATI Appraisal value of those properties does not take into account the effect on the value of the property as a result of such a sale. *See*, *In re Wilkinson Distributing Co., Inc.*, 106 B.R. 658, 662 (Bankr.D.Hawaii 1989) ("The Court takes judicial notice of the fact that sales at forced liquidations or foreclosures typically bring in substantially less than sales of the whole as a going-concern."); *In re Neff*, 60 B.R. 448 (Bankr. N.D. Tex. 1985) (finding that liquidation sale would likely result in lower value than sales over time). The ATI Appraisal assumes a far longer time frame to allow for the sale of the Sale Properties than the 363 Sale proposed by the Debtors. The ATI Appraisal allows for time frames for the Sale Properties to be absorbed, or "sell out", ranging from 25 to 31 quarters, where such information is provided.[5] The proposed 363 Sale calls for all of the Sale Property to be sold on the effective date of the Plan, which is the 30th day after entry of an order confirming the Plan, a far shorter time frame than that contemplated in the ATI Appraisal.

    c. The values for the properties stated in the ATI Appraisal are separate, "stand alone" values for the various parcels of property identified therein. The 363 Sale proposes the sale of the Sale Properties as a single, bulk sale of the disparate properties that constitute the Sale Properties. Courts have recognized that a bulk sale will usually lead to a lower price

---

[5] The ATI Appraisal provides absorption rates for Tracts 6, 7 and 9 of the Estates at Pine Canon Unit One, but not the remainder of the Sale Properties.

than the sale of individual properties. *See In re TOUSA, Inc.*, 393 B.R. 920, 923 (Bankr. S.D. Fla. 2008) ("It is necessarily the case that bulk sales result in a discount of the per unit price"); The ATI Appraisal does not take into account the bulk sale proposed by the Debtors and the effect of such a sale on the value of the Sale Properties and cannot form the basis of the real estate values for purposes of the Plan;

    d.    The effect on the ownership and development of the Sale Properties by a party or parties unrelated to the Pine Canyon Golf facilities is not reflected in the ATI Appraisal. If the Sale Properties are disposed of by the 363 Sale, they will necessarily be developed by an entity that is not a part of, or related to, the Pine Canyon Golf facilities. As a result of non-Pine Canyon related entities developing the Sale Properties, the Sale Properties will now be placed in direct completion with the real estate to be retained by the Debtors under the Plan. The competition that will result from the properties being owned by parties unrelated to Pine Canyon Golf, will result in potential bidders reducing their bid prices, as a result of direct competition with the Debtors will cause a reduction in the eventual sale prices for the property retained by the Debtors and the Sale Properties. The ATI Appraisal makes no reference to or opine as to the effect on the values provided if the Sale Properties were not owned or developed by a Pine Canyon Golf affiliate and what effect on value the added competition will have. Given the nature of golf communities, Johnson Bank asserts that there will necessarily be an effect on the value of the Sale Properties by reason of ownership and development of these parcels by unrelated entities;

    e.    The ATI Appraisal does not discount for future development, as some tracts which make up the Sale Properties will not be developed before others. Specifically, in order for development of certain portions of the Sale Properties to occur, existing inventory must be sold prior to the development of these parcels. Other properties in the Pine Canyon development (which will be retained by the Debtors) are further along in the development stage and place any party who takes ownership of the Sale Properties at a distinct disadvantage. Certain portions of the Sale Properties are not in a state to allow them to be resold to consumers in the near term. It could take two (2) to three (3) years before the properties could be ready for resale, which would require a purchaser to carry these properties for a substantial time before being able to realize any return. The time that a purchaser would be required to carry the property requires adjustments not presented in the ATI Appraisal.

    f.    The ATI Appraisal underestimates the yield rate required to attract purchasers for Tracts 6, 7 and 9 in The Estates at Pine Canyon Unit One. By utilizing a low yield rate, the ATI Appraisal has resulted in overstated value for the Sale Properties; and

g. The ATI Appraisal does not adjust for the cost expenditures that will be required in order to permit much of the Sale Properties to be developed. Several parcels which make up the Sale Properties consist of raw land, and will require significant capital improvement in order for lots to be sold. Additionally, requiring an adjustment to the values stated in the ATI Appraisal.

25. The Plan is not confirmable because it does not satisfy the requirements of § 1129(A)(8).

**B. The Debtors Cannot Establish That The Plan Will Provide Johnson Bank With Property Of A Value That Is Not Less Than The Amount Johnson Bank Would Receive If The Debtor Were Liquidated Under Chapter 7.**

26. According to the Debtors, Johnson Bank's collateral is worth more than the $25 million face amount of Johnson Bank's claim, even at liquidation. However, as shown above, the payments Johnson Bank will receive under the plan (even before a present value discount) are at best $14-$16 million.

27. The Plan is not confirmable because it does not satisfy the requirements of § 1129(A)(7).

**C. The Plan Is Not Confirmable Because It Impermissibly Modifies The Terms Of The Debtors' Agreements With Johnson Bank In Violation Of § 1129(A)(1).**

28. The contract between Johnson Bank and the Debtors is not an executory contract, as only performance by the Debtors is due. Therefore, the terms of the agreement cannot be modified in the manner in which the Debtors' propose without the claimant's consent, unless the Debtors are able to "cram down" Johnson Bank's interest, pursuant to § 1129(b). *See In re Crane Automotive*, 88 B.R. 81 (Bankr.W.D.Pa. 1988).

29. The parties' contractual agreement was that all of the collateral would secure all of the debt owed to Johnson Bank and that amounts realized from sale of its collateral would be applied to the outstanding debt. In contrast, under the Plan, Flagstaff Acquisitions gets 30% of the proceeds of any sale future of collateral before any amount is applied to Johnson Bank's debt. (see Plan sec. V(A)) and $17 million of the debt is treated as if it were collateralized only by the Sale Properties.

30. The Plan is therefore not confirmable because it violates the requirements of § 1129(a)(1).

## II. The Plan Is Not Confirmable Under § 1129(a)(11) Because it Is Not Feasible.

31. A proposed plan will meet the feasibility requirement of the Bankruptcy Code if it "offers a reasonable prospect of success and is workable." *In re Linda Vista Cinemas, L.L.C.*, 2010 WL 4882773, *9 (Bankr.D.Ariz. November 24, 2010) *quoting In re Patrician St. Joseph Partners Ltd. P'Ship*, 169 B.R. 669, 674 (Bankr.D.Ariz. 1994). The Debtor is required to establish that the proposed plan is feasible, as the *Linda Vista Cinemas* court recently pointed out:

> Every debtor is required to present "ample evidence to demonstrate that the Plan has a reasonable probability of success." *In re Acequia, Inc.,* 787 F.2d 1352, 1364 (9th Cir.1986); *see also* 7 Collier on Bankruptcy ¶ 1129.02[11], at 1129-52, (16th ed.2010). Section 1129(a)(11) "requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan." *Id* . at 1129-53 (citation omitted). In order to determine whether § 1129(a)(11) is satisfied, a court must "scrutinize the plan to determine whether it offers a reasonable prospect of success and is workable." *In re Sagewood Manor Assocs. Ltd. P'ship,* 223 B.R. 756,

|   |   |
|---|---|
| 1 | 762 (Bankr.D.Nev.1998). Plans which are based on speculation are not proper candidates for reorganization. *Pizza of Haw, Inc*, 761 F.2d 1374, 1382 (9th Cir. 1985). |
| 2 | |
| 3 | |

*Linda Vista Cinemas*, at * 9.

32. The Ninth Circuit Court of Appeals has set forth several factors which courts should consider in determining feasibility, including: i) whether the debtor's capital structure is adequate; ii) the debtor's earning power; iii) economic conditions; iv) the ability of management; and v) any other related matters which determine the prospects of a sufficiently successful operation to enable performance of the plan. *In re Wiersma*, 324 B.R. 92, 113 (9th Cir.BAP 2005), *aff'd in part and rev'd in part on other grounds*, 483 F.3d 933 (9th Cir. 2007).

33. The Debtors in the present case cannot meet their burden of establishing by a preponderance of the evidence that their Plan is feasible.

34. The Plan assumes and requires two sources of income to meet the Debtors' cash requirements: 1) the Pine Canyon Golf Club and Pine Canyon recreational facilities must generate cash at the right times and in the right amounts to meet projected cash flows; and 2) retained parcels of land, condominiums, and finished properties must be sold at prices and at times sufficient to make up cash shortfalls from operations.

35. The engine that drives the Plan is the post-confirmation sale of real estate retained by the Debtors. The Debtors Plan depends on the fulfillment of the Debtors' hope that "Real Estate Sales will continue in spite of the [bankruptcy] filing and economy." *See* Exhibit "G" to the Disclosure Statement.

36. To that end, the Debtors' Plan relies on greatly exaggerated cash flow projections compiled by the Debtors themselves. The Pine Canyon Golf Club has posted historical losses of approximately $2 million annually. ATI Appraisal, p. 129. The Plan projects similar cash flow deficiencies every year for as far as many years as the Debtors' care to project. The Plan is feasible only if

these deficiencies do not worsen AND retained properties are sold at the right times and for the right prices to make up the continuous cash shortfalls.

37. If the Debtors' cash flow projections are even slightly overstated, the Plan is doomed to fail. If the actual cash flow does not meet the Debtors' projections, there is simply no possibility that the balloon payments required by the Plan at the 5th and 10th anniversary of the Plan can be made.

38. The Plan is not feasible because the real estate sales projections and prices relied upon by the Debtors are overly optimistic.

39. Examining the Plan in light of the five (5) factors set forth by the Ninth Circuit Court of Appeals, it is clear that the Plan is not feasible. The Debtors' are not adequately capitalized. The Debtors rely almost exclusively on real estate sales to fund the Plan, without any back up in the event of slower than anticipated sales or worsening of the projected negative cash flow from operations. In the event sales or operating revenues do not meet the Debtors' expectations, they have no ability to fund the Plan. Evidence to be proffered at the confirmation hearing is expected to show that the cash flow projections, though negative throughout the plan period, are overly optimistic. The general economic climate, including a sluggish real estate market, weigh heavily against the likelihood of sales at the prices and time periods required by the Plan There is no indication that management will be able to react in the event that the Debtors' cash flow projections are not met. By the Debtors' own admission, this bankruptcy proceeding was the result of the Debtors' inability to "more effectively respond to and thrive in the present economic downturn." Disclosure Statement, at p. 7. Indeed, the same management and business plan that led to the bankruptcy remain in place, unaltered. Reviewing the entirety of the circumstances surrounding the Plan, it simply is not feasible.

40. Given that the Debtors' proposed funding of its Plan is extremely speculative and the fact that the Debtors' projections that the Pine Canyon golf

operations will run a deficit for the life of the Plan, the Debtors' are simply postponing a liquidation. As a result, the Plan does not satisfy § 1129(a)(11), which requires that a proposed plan, if confirmed, is unlikely to be followed by a liquidation or the need for further reorganization by the debtor or a successor to the debtor under the plan.

### III. The Plan Is Not Confirmable Because It Ignores The Terms Of A Binding Subordination and Intercreditor Agreement, In Violation Of 11 U.S.C. § 1129(A)(1) and 11 U.S.C. § 510.

41. On or about June 26, 2008, O'Connor Investment Partnership ("O'Connor") and Flagstaff Acquisitions executed in favor of Johnson Bank a Subordination and Intercreditor Agreement (the "Subordination Agreement"). Under the terms of the Subordination Agreement, O'Connor and Flagstaff Acquisitions agreed to subordinate all debt due and owing from the Borrowers "to the full and absolute payment of all of the" debt due to Johnson Bank from the Borrowers. Pursuant to the terms of the Subordination Agreement, unless and until O'Connor and Flagstaff Acquisitions are provided with written notice of default by the Borrowers from Johnson Bank, they are only entitled to receive payment on their subordinated debt "from available net sales proceeds after payment of the applicable release payment required for the [Johnson Bank debt] from the sale of all or portions of the" property subject to Johnson Bank's lien.

42. The Plan proposes to allow Flagstaff Acquisitions to receive payment prior to Johnson Bank with respect to the Post-Confirmation Credit Facility provided for in the Plan. However, this provision in the Plan flies in the face of the Bankruptcy Code. 11 U.S.C. § 510 provides that "[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." *See*, *In re Buttermilk Towne Center, LLC*, 2010 WL 5559411 (Bankr.E.D.Ky. December 30,

2010). Arizona law recognizes subordination agreements as enforceable contracts. A.R.S. § 47-1310.

43. Enforcement of the Subordination Agreement would not impair the rights of the Debtors' other creditors and there exists no valid reason to ignore the terms of a freely negotiated, arms-length agreement. The Plan seeks to enrich the Debtors' insider, Flagstaff Acquisitions, at the expense of Johnson Bank, despite the fact that Johnson Bank and Flagstaff Acquisitions have agreed as to the priority of payment between them.

44. The Plan simply ignores the express and unambiguous terms of the Subordination Agreement in an important way: Flagstaff Acquisitions would receive 30% of the Net Sales Proceeds (as defined in the Plan) of retained real property that is subject to Johnson Bank's lien (Plan at p.16). This directly contradicts the terms of the valid, binding Subordination Agreement and should not permit the Plan to be confirmed.

**IV. The Plan is Not Confirmable Because It Has Not Been Proposed In Good Faith, As Required by 11 U.S.C. §1129 (a)(3).**

45. In determining whether or not a proposed plan of reorganization comports the Bankruptcy Code's "good faith" requirement, "a court must inquire into the totality of circumstances surrounding the plan, the application of the principles of fundamental fairness in dealing with creditors, and then decide whether the plan will fairly achieve a result consistent with the objectives and purposes of the Code." *In re Linda Vista Cinemas, L.L.C.*, 2010 WL 4882773, *6 (Bankr. D. Ariz. November 24, 2010) (citations omitted).

46. The deficiencies cited above suggest that the Plan was not proposed in good faith. It relies on a forced, artificially inflated, and fixed valuation of collateral based on the obviously incorrect and inadequate assumptions, an obviously irrelevant appraisal, and a complete lack of legal authority; it ignores

the existence of a subordination agreement entered into by the same people who are the actual proponents of the Plan; and it ignores the primary secured lender's right to receive a stream of payments equal to the present value of its claims.

47. As recently as June, 2010, the Debtors had determined that they lacked equity and the Debtors' prospects were so dim that they authorized Johnson Bank to prepare a deed-in-lieu of foreclosure. The Debtors have devised the Plan to benefit the Debtors' insiders at the expense of Johnson Bank. In fact, the entire Plan has been designed to impair and be unfair to Johnson Bank via the failure to provide a present value stream of payments to Johnson Bank. The forced credit bid mechanism of the 363 Sale, of the properties that constitute the Sale Properties are the "dregs" of the Pine Canyon Golf facility that the Debtors' seek to dump on Johnson Bank at an exorbitant credit bid price of no less than $17,000,000.00, and that the Debtors' seek to ignore the Subordination Agreement to the benefit of insiders.

48. In light of the above, the Plan disregards the core rules and principles of the Code and has not been presented in good faith, as required by the Bankruptcy Code.

49. Johnson Bank reserves the right to brief the legal issues identified herein related to confirmation of the Debtors' Plan which do not involve the resolution of factual issues.

…
…
…
…
…
…
…
…

WHEREFORE, Johnson Bank respectfully requests that this Court refuse to confirm the Debtors' Plan and grant to Johnson Bank such other and further relief as it deems just and equitable.

DATED: February 25, 2011.

von BRIESEN & ROPER, s.c.

By: */s/ Mark F. Foley*
　　Randall D. Crocker
　　Mark F. Foley

GALLAGHER & KENNEDY, P.A.

By: */s/ Joseph E. Cotterman*
　　Joseph E. Cotterman
　　*Attorneys for Johnson Bank*

COPY of the foregoing was electronically transmitted via ECF filing system and copies were e-mailed February 25, 2011 to:

United States Trustee
Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003

John J. Hebert, Esq.
Mark W. Roth, Esq.
Wesley D. Ray, Esq.
Polsinelli Shughart, P.C.
3636 N. Central Avenue, Suite 1200
Phoenix, AZ 85012
Email: jhebert@polsinelli.com
Email: mroth@polsinelli.com
Email: wray@polsinelli.com
*Attorneys for Debtor*

　*/s/ Maricella Nunez*