John J. Hebert (#010633)
Mark W. Roth (#010708)
Mary B. Martin (#019196)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART PC**
CityScape Plaza
One E. Washington, Suite 1200
Phoenix, AZ  85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-mail:  PhoenixBankruptcyECF@polsinelli.com
E-Mail: jhebert@polsinelli.com
E-Mail: mroth@polsinelli.com
E-Mail: mmartin@polsinelli.com
E-Mail: wray@polsinelli.com

*Attorneys for Debtors*

# IN THE UNITED STATES BANKRUPTCY COURT

# THE DISTRICT OF ARIZONA

| In re: | Chapter 11 Proceedings |
|---|---|
| LONE TREE INVESTMENTS, LLC<br>PINE CANYON GOLF, L.L.C.<br>MOUNTAIN VISTA AT PINE CANYON, L.L.C.<br>ELK PASS, L.L.C.<br>DEER CREEK CROSSING, L.L.C.<br>CREEKSIDE VILLAGE HOMES, LLC | Case No.  2:10-bk-26776-RTBP<br>Case No.  2:10-bk-26779-RTBP<br>Case No.  2:10-bk-26785-RTBP<br>Case No.  2:10-bk-26790-RTBP<br>Case No.  2:10-bk-26792-RTBP<br>Case No.  2:10-bk-26794-RTBP |
| Debtors. | Joint Administration under<br>Case No. 2:10-bk-26776-RTBP |
| This filing applies to:<br>☒  ALL DEBTORS<br>☐  SPECIFIED DEBTORS. | **MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT PURSUANT TO FED.R.BANKR.P. 9019** |

LONE TREE INVESTMENTS, LLC, PINE CANYON GOLF, L.L.C., MOUNTAIN VISTA AT PINE CANYON, L.L.C., ELK PASS, L.L.C., DEER CREEK CROSSING, L.L.C., and CREEKSIDE VILLAGE HOMES, LLC, (collectively the "Debtors"), debtors and debtors-in-possession in the above-captioned jointly administered case, hereby move this Court to enter its Order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving the Settlement Agreement, between the Debtors and WESPAC COMMUNITIES, INC., an Arizona corporation ("Wespac Communities"), WESPAC RESIDENTIAL, INC., an Arizona corporation

1

2785244.1

("Wespac Residential"), and WESPAC CONSTRUCTION, INC., an Arizona corporation ("Wespac Construction") (collectively "Wespac"), a copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference. The Debtors and Wespac shall collectively be referred to as the "Parties".

This Motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     FACTUAL BACKGROUND**

1. On August 24, 2010 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

2. On August 26, 2010, the cases were ordered jointly administered under the lead case of *In re Lone Tree Investments, LLC*, case no. 2:10-bk-26776-RTBP. The Debtors are authorized to operate their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. Prior to the commencement of the bankruptcy cases, and on or about January 26, 2007, Wespac Communities and Elk Pass, LLC ("Elk Pass") entered into a construction agreement ("Contract"), wherein Wespac Communities agreed to construct 22 townhomes for Elk Pass in the Pine Canyon development located in Flagstaff, Arizona (the "Elk Pass Project").

4. On March 27, 2009, Wespac Communities recorded a notice and claim of lien with respect to Lots 30, 45 and 46 within the Elk Pass Project in the official records of Coconino County, Arizona as Document No. 3518392 (the "Wespac Lien").

5. Various disputes arose between Wespac Communities and Elk Pass relating to the Elk Pass Project.

6. At the time that Wespac Communities and Elk Pass entered into the Contract, Wespac Residential was working as the general contractor for Creekside Village Homes, LLC ("Creekside") on a project in the Pine Canyon development known as Creekside Village (the "Creekside Project"). The Creekside Project involved the construction of 92 single family homes

2

2785244.1

in two phases of 46 each. Various disputes arose between Wespac Residential and Creekside following the completion of the Creekside Project.

7. On or about August 31, 2009, Wespac Communities initiated a Demand for Arbitration, AAA Case No. 76 110 00268 09 MJA (the "Arbitration"), against Elk Pass, seeking its final payment under the Contract in the amount of $397,781.77, plus interest, attorneys and expert fees and arbitration expenses. Elk Pass responded to the Arbitration demand denying liability to Wespac Communities and demanding affirmative relief in the amount of $341,332.67. Various amendments were made to the pleadings in the Arbitration but no hearing has yet been held.

8. The claim of Wespac exceeds $900,000 and the Wespac Lien, as indicated above, is recorded against 3 lots, one of which has a home on it and is owned by a third party. Wespac claims that its recorded lien is first in priority ahead of the Johnson Bank Deed of Trust on the Debtor's property, and ahead of the mortgage on the residence which is occupied by a third party.

9. On or about August 18, 2009, Wespac Communities filed a lawsuit against Elk Pass and others in Coconino County Superior Court, Cause No. CV 2009-0740 (the "Lawsuit"), seeking to foreclose the Wespac Lien. Wespac Communities and all parties defendant agreed to stay the Lawsuit pending the outcome of the Arbitration.

10. On or about November 18, 2009, Creekside and Wespac Residential participated in a mediation to resolve disputes arising out of the Creekside Project (the "Mediation"). As a result of the Mediation, Wespac Residential and Creekside agreed to settle all disputes arising out of the Creekside Project by, among other things, Wespac Residential paying Creekside $78,000. The parties agreed the payment would be postponed until the final outcome of the disputes between Wespac Communities and Elk Pass, but the Parties never fully documented their agreement.

11. In order to avoid time-consuming, expensive and risky litigation the Parties have negotiated and entered into the Settlement Agreement to resolve their disputes.

12. All disputes are settled by the Settlement, and Wespac's recorded liens on lots 30 and 45 will be released, avoiding complex and expensive litigation with other parties.

2785244.1

13. The Settlement sets forth the full agreement of the Parties. For a full understanding of the agreement, interested parties should review the Settlement Agreement attached as an exhibit to this Motion.

## II.  LEGAL ANALYSIS

"On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "The bankruptcy court has great latitude in approving compromise agreements" that are fair and equitable. *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988). "The law favors compromise and not litigation for its own sake[.]" *In re A & C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986). The legal principles that should guide the exercise of the court's discretion in approving an application for settlement are well established and include the following:

(a) The probability of success in the litigation;

(b) The difficulties, if any, to be encountered in the matter of collection;

(c) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d) The paramount interests of the creditors and a proper deference to their reasonable views in the premises.

*See e.g., In re Woodson*, 839 F.2d at 620; *In re A & C Properties*, 784 F.2d at 1381; *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976); *In re MGS Marketing*, 111 B.R. 264, 267 (9th Cir. B.A.P. 1990); *see also In re General Store of Beverly Hills*, 11 B.R. 539, 541 (9th Cir. B.A.P. 1981) (in ruling on a request to compromise a dispute, a court should consider the expense, benefits, hazards, complexity, the time required to litigate, and whether disallowance of the settlement would result in waste of the estate's assets). A settlement does not have to satisfy each of the aforementioned factors in order to be approved, "provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Electric Co.*, 304 B.R. 395, 417 (N.D. Cal. 2004).

In determining whether to approve a proposed settlement, the bankruptcy court does not substitute its judgment for that of the settlement's proponents. *Id*. at 574. The responsibility of the bankruptcy judge is not to decide the numerous questions of law and fact that may be raised

4

2785244.1

regarding the settlement, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness. *In re Energy Coop.*, 886 F.2d 921 (7th Cir. 1989); *In re Teltronics Services, Inc.*, 762 F.2d 185, 189 (2d Cir. 1985); *In re International Distribution Centers, Inc.*, 103 B.R. 420, 423 (S.D.N.Y. 1989); *In re Bell & Beckwith*, 93 B.R. 569, 574-575 (Bankr. N.D. Ohio 1988); *In re Marshall*, 33 B.R. 42, 43 (Bankr. D. Conn. 1983). Thus, a mini-trial on the merits of the claims or a bankruptcy judge's independent investigation into the underlying dispute sought to be compromised is not required. *In re Walsh Constr. Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *Blair*, 538 F.2d at 851; *International Distribution Centers*, 103 B.R. at 423; *In re Carson*, 82 B.R. 847, 853 (Bankr. S.D. Ohio 1987).

In addition, when determining the reasonableness of the settlement, the bankruptcy judge may weigh the opinions of the trustee (or debtor-in-possession), the parties, and their attorneys, and may consider the principals' belief that all of the factors bearing upon the appropriateness of the settlement have been explored and that the compromise is fair, equitable, and the wisest course. *Blair* 538 F.2d at 851. Moreover, the court may consider the competency and experience of counsel who support the compromise. *International Distribution Centers*, 103 BR. at 423; *In re Texaco. Inc.*, 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988); s*ee also, Walsh*, 669 F.2d at 1328.

Finally, in reviewing a proposed settlement, the court must be mindful of the fact that the law favors compromise (*A & C Properties*, 784 F.2d at 1381; *Blair* 538 F.2d at 851) and that the bankruptcy court is uniquely situated to evaluate whether a compromise is in the best interest of the bankruptcy estate. *Walsh*, 669 F.2d at 1328. *See also, In re Lee Way Holding, Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990) (While the Court should consider the reasonable views of creditors, "objections do not rule. It is well established that compromises are favored in bankruptcy.")

Here, upon consideration of the factors described above, and the other facts and circumstances surrounding the Debtors' reorganization, it is clear that the Settlement Agreement is fair and equitable, and is in the best interests of the Debtors, the Debtors' other creditors, and the bankruptcy estates. The Settlement is the result of extensive negotiations between the Parties, and they believe that the agreement they have reached will work to the benefit of both of them, as well as the creditor body at large. The Settlement will allow the Parties to forego the expensive and

2785244.1

uncertain litigation associated with the claims. This will benefit the estate in at least two ways: first, it will greatly reduce administrative costs resulting from the fees of counsel for both of the Parties. Second, it will allow the Debtors to focus on operating their business.

**III.    CONCLUSION**

Based upon the foregoing, the Debtors respectfully request that the Court enter an order approving the Settlement Agreement.

DATED:  April 5, 2011.

                              POLSINELLI SHUGHART PC

By /s/ Mary R. Martin
   John J. Hebert
   Mark W. Roth
   Mary B. Martin
   Wesley D. Ray
   CityScape Plaza
   One E. Washington
   Suite 1200
   Phoenix, AZ  85004

*Attorneys for Debtors*

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") on April 5, 2011, to:

| | |
|---|---|
| U.S. Trustee's Office<br>230 N. 1st Avenue, Suite 204<br>Phoenix, AZ  85003 | Scott K. Brown * sbrown@lrlaw.com<br>J. Henk Taylor * htaylor@lrlaw.com<br>Robert R. Roos * rroos@lrlaw.com<br>LEWIS AND ROCA LLP<br>40 N. Central Ave., Suite 1900<br>Phoenix, AZ 85004-4429<br>  *Attorneys for Wespac Communities, Inc.* |
| Randall D. Crocker * rcrocker@vonbriesen.com<br>Mark F. Foley  * mfoley@vonbriesen.com<br>Bryan M. Becker * bbecker@vonbriesen.com<br>VON BRIESEN & ROPER, S.C.<br>411 E. Wisconsin Avenue, Suite 700<br>Milwaukee, WI 53202<br>  *Attorneys for Johnson Bank* | Joseph E. Cotterman * jec@gknet.com<br>James B. Connor * jbc@gknet.com<br>GALLAGHER & KENNEDY P.A.<br>2575 E. Camelback Road<br>Suite 1100<br>Phoenix, AZ  85016-9225<br>  *Attorneys for Johnson Bank* |

2785244.1

| | |
|---|---|
| Michael D. Curran * mcurran@mmcec.com<br>Daniel D. Maynard * dmaynard@mmcec.com<br>MAYNARD CRONIN ERICKSON CURRAN<br>   & REITER, P.L.C.<br>3200 N. Central Ave., Suite 1800<br>Phoenix, AZ 85012<br>  *Attorneys for Sysco Arizona, Inc.* | Richard R. Thomas * rthomas@thomas-schern.com<br>Stephen C. Biggs * sbiggs@thomas-schern.com<br>THOMAS SCHERN RICHARDSON, PLLC<br>1640 S. Stapley Drive, Suite 132<br>Mesa, AZ 85204<br>  *Attorneys for San Francisco Peaks<br>  Associates, LP* |

GE Money Bank  claims@recoverycorp.com
c/o RECOVERY MANAGEMENT SYSTEMS CORP.
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605
Attn: Ramesh Singh


By:  _____/s/ Mary A. Shultz_____

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

**PARTIES AND DATE:**

This Settlement Agreement ("Agreement") is entered into this 31st day of March, 2011, by and between Wespac Communities, Inc., an Arizona corporation ("Wespac Communities"), Wespac Residential, Inc., an Arizona corporation ("Wespac Residential") and Wespac Construction, Inc., an Arizona corporation ("Wespac Construction") on the one hand, and Elk Pass, L.L.C., an Arizona limited liability company, ("Elk Pass"), Creekside Village Homes, LLC, an Arizona limited liability company ("Creekside"), Lone Tree Investments, LLC, an Arizona limited liability company ("Lone Tree"), Pine Canyon Golf, LLC, an Arizona limited liability company ("Pine Canyon"), Mountain Vista at Pine Canyon, LLC, an Arizona limited liability company ("Mountain Vista"), and Deer Creek Crossing, LLC, an Arizona limited liability company ("Deer Creek"), on the other. Elk Pass, Creekside, Lone Tree, Pine Canyon, Mountain Vista and Deer Creek are affiliated companies, and Wespac Construction, Wespac Communities and Wespac Residential are affiliated companies. The parties to this Agreement may collectively be referred to herein as "the Parties."

**RECITALS:**

A. On or about January 26, 2007, Wespac Communities and Elk Pass entered into a construction agreement ("Contract"), wherein Wespac Communities agreed to construct 22 townhomes for Elk Pass in a development known as Pine Canyon located in Flagstaff, Arizona (the "Elk Pass Project"). Elk Pass was the Owner of the Elk Pass Project, and Lamb Architects & Associates, Inc. was the Architect for the Elk Pass Project.

B. At the time that Wespac Communities and Elk Pass entered into the Contract, Wespac Residential was working as the general contractor for Creekside on a project in Pine Canyon known as Creekside Village (the "Creekside Project"). The Creekside Project involved the construction of 92 single family homes in two phases of 46 each. In addition, Wespac Construction served as general contractor for Lone Tree on the Pine Canyon clubhouse and camp buildings (the "Clubhouse Project").

C. Wespac Residential completed the final residence in the Creekside Community in May 2008. Various disputes arose between Wespac Residential and Creekside following the completion of the Creekside Project.

D. Wespac Communities commenced its work on the Elk Pass Project on or about March 21, 2007.

E. Wespac Communities completed its work on the final townhome in the Elk Pass Project on or about November 20, 2008 and submitted various invoices to Elk Pass thereafter, some but not all of which were paid by Elk Pass.

F. On March 27, 2009, Wespac Communities recorded a notice and claim of lien with respect to Lots 30, 45 and 46 within the Elk Pass Project in the official records of Coconino



County, Arizona as Document No. 3518392 (the "Wespac Lien"). Wespac Communities claimed that it was entitled to payment of $397,781.76 principal, representing the outstanding balance it then claimed due under the Contract, plus interest thereon and costs of perfecting its lien. Wespac Communities allocated the principal amount due among the three lots (collectively, the "Lots") as follows:

    Lot 30 - $81,951.43
    Lot 45 - $106,836.13
    Lot 46 - $208,994.21

    G.    Wespac Communities later submitted a recasted invoice labeled a Final Application for Payment in the amount of $397,781.77.

    H.    Elk Pass refused to pay Wespac Communities the sum demanded and asserted a number of claims and backcharges against Wespac Communities. Elk Pass claimed Wespac Communities owed it $739,144.44 as of April 7, 2009.

    I.    On or about August 31, 2009, Wespac Communities initiated a Demand for Arbitration, AAA Case No. 76 110 00268 09 MJA (the "Arbitration"), against Elk Pass, seeking its final payment under the Contract in the amount of $397,781.77, plus interest, attorneys and expert fees and arbitration expenses. Elk Pass responded to the Arbitration demand denying liability to Wespac Communities and demanding affirmative relief in the amount of $341,332.67. Various amendments were made to the pleadings in the Arbitration but no hearing has yet been held.

    J.    Both Wespac Communities and Elk Pass have made certain payments to and deposits with the American Arbitration Association ("AAA") as and for filing fees and arbitrator compensation. The funds held by the AAA for the Arbitration that are refundable under the Rules of the AAA regardless of which party made such payment or deposit are referred to herein as the "AAA Deposits."

    K.    On August 18, 2009, Wespac Communities filed a lawsuit against Elk Pass and others in Coconino County Superior Court, Cause No. CV 2009-0740 (the "Lawsuit"), seeking to foreclose the Wespac Lien. Wespac Communities and all parties defendant agreed to stay the Lawsuit pending the outcome of the Arbitration.

    L.    On or about November 18, 2009, Creekside and Wespac Residential participated in a mediation to resolve disputes arising out of the Creekside Project (the "Mediation"). As a result of the Mediation, Wespac Residential and Creekside agreed to settle all disputes arising out of the Creekside Project by, among other things, Wespac Residential paying Creekside $78,000. The parties agreed the payment would be postponed until the final outcome of the disputes between Wespac Communities and Elk Pass, but the Parties never fully documented their agreement.

    M.    On or about August 24, 2010 (the "Petition Date"), Lone Tree, Elk Pass, Creekside and certain affiliated entities (collectively, the "Debtors") filed voluntary petitions

2



under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101, *et. seq.*) in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court"). These bankruptcy cases are being jointly administered under the lead case of *In re Lone Tree Investments, LLC*, bankruptcy case no. 2:10-bk-26776-RTBP (the "Joint Cases"). The Elk Pass Bankruptcy case number is 2:10-bk-26790-RTBP (the "Elk Pass Bankruptcy"), and the Creekside Bankruptcy case number is 2:10-bk-26794-RTBP (the "Creekside Bankruptcy").

N. The Debtors continue to manage their property and business as debtors-in-possession under the Bankruptcy Code. No trustee or examiner has been appointed in the Joint Cases.

O. Except as specifically set forth herein, the Parties desire to settle all claims and disputes between Wespac Construction, Wespac Communities and Wespac Residential on the one hand, and Lone Tree, Elk Pass and Creekside on the other relating to, arising out of or in connection with the Contract, the Elk Pass Project, the Creekside Project, the Clubhouse Project, the contract between Wespac Residential and Creekside, the contract between Wespac Construction and Lone Tree, the Mediation, the Arbitration, the Lawsuit, and the Wespac Lien, on the terms and conditions set forth herein.

## COVENANTS:

In consideration of the Recitals and the mutual promises set forth below, and other good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree as follows:

1. **Incorporation of Recitals.** The Recitals set forth above are true, correct and not subject to dispute, and are incorporated herein as Covenants by this reference.

2. **Elk Pass Payment to Wespac Communities.** Within five (5) business days after the last of the following: (a) execution of this Agreement by all parties, (b) entry of the Approval Order (defined below) by the Bankruptcy Court in the Joint Cases, and (c) the Approval Order becoming a Final Order (as defined below), Lone Tree, Creekside and/or Elk Pass, in such proportions as they shall agree among themselves, shall pay Wespac Communities the total sum of Three Hundred Thirty Seven Thousand Five Hundred Dollars ($337,500) in immediately available funds (the "Settlement Payment"). Funds for the Settlement Payment shall come from a source approved by the Bankruptcy Court in its Approval Order.

3. **Release of Creekside Claim.** Effective upon (a) execution of this Agreement by all parties, (b) entry of the Approval Order by the Bankruptcy Court in the Joint Cases, and (c) the Approval Order becoming a Final Order, any obligation of Wespac Residential to Creekside as a result of the Mediation or otherwise will be deemed released, cancelled, satisfied and forgiven.

4. **Wespac Secured Claim.** As further consideration to Wespac Communities, Elk Pass stipulates and agrees that Wespac Communities shall continue to have a valid and enforceable, non-recourse claim under applicable non-bankruptcy law against Elk Pass in the

3



principal amount of $162,500 secured by the Wespac Lien on Elk Pass Lot 46. In addition to the principal amount, Wespac Communities shall be entitled to recover as part of its claim secured by the Wespac Lien on Elk Pass Lot 46 all interest (as allowed under the Contract and applicable non-bankruptcy law), attorney's fees, costs and expenses incurred by Wespac Communities in the connection with the Contract, the Elk Pass Project, the Wespac Lien, the Arbitration, the Lawsuit, and the Joint Cases. The principal amount, plus all interest, attorney's fees, costs and expenses secured by the Wespac Lien on Elk Pass Lot 46 shall be referred to as the "Wespac Secured Claim." Elk Pass further stipulates and agrees that the Wespac Lien is a valid and enforceable mechanic's lien under applicable non-bankruptcy law. Neither Elk Pass nor any of the Debtors makes any representations or warranties with respect to the priority of the Wespac Lien on Elk Pass Lot 46; and Wespac Communities agrees to defend Elk Pass and all of the other Debtors as well as the subdivision trust in which Elk Pass holds title to Elk Pass 46 and any trustee thereof in any litigation or pre-litigation demand or other proceeding of any nature contesting the priority of the Wespac Lien on Elk Pass Lot 46.

5. **Allowed Secured Claim In Joint Cases.**

   a. For all purposes in the Joint Cases, the Wespac Secured, non-recourse Claim shall be deemed, under Bankruptcy Code §§ 502 and 506, to be (i) allowed in the amount of $162,500 in the Elk Pass Bankruptcy, and (ii) secured by a valid, enforceable, unavoidable lien (*i.e.*, the Wespac Lien) against Elk Pass Lot 46.

   b. Solely in the context of a plan of reorganization proposed by the Debtors, and confirmed by the Bankruptcy Court in the Joint Cases, Wespac Communities and the Debtors agree that the Wespac Secured Claim shall be treated as follows:

   i. The principal amount of the Wespac Secured Claim shall be $162,500; interest on this principal amount shall accrue at the rate of five (5) percent per annum from the Effective Date (as defined below) of such plan until paid in full;

   ii. Wespac Communities shall retain the Wespac Lien on Elk Pass Lot 46 to secure the Wespac Secured Claim;

   iii. As to any other valid, enforceable and non-avoidable lien against Elk Pass Lot 46 existing as of the Petition Date, the Wespac Lien on Elk Pass Lot 46 shall have such priority as determined by applicable bankruptcy and non-bankruptcy law;

   iv. Elk Pass Lot 46 shall not be encumbered by any lien that primes the Wespac Lien on Lot 46, either under the plan or any exit financing contemplated in the plan or approved as part of confirmation of the plan;

4



  v. The Wespac Secured, non-recourse Claim shall be due and payable in full on the date that is no later than 24 months after the Effective Date of the Confirmed Plan; *provided, however*, that if payment is not made in 24 months, Wespac Communities sole and exclusive remedy will be to conduct a foreclosure sale against Elk Pass Lot 46; and

  vi. To the extent Wespac Communities recovers any payment on the Wespac Secured Claim through foreclosure of the Wespac Lien in the Lawsuit, such payment shall be credited to payment of the Wespac Secured Claim under the plan.

For the purposes of this paragraph, the term "Effective Date of the Confirmed Plan" means that day when the Debtors' plan of reorganization becomes effective according to the terms of that plan of reorganization and any order entered by the Bankruptcy Court in the Joint Cases confirming the plan of reorganization.

  c. The Debtors shall not enter into any agreement, or seek confirmation of a plan, that seeks to establish the priority of the Wespac Lien on Elk Pass Lot 46 as something other than the priority of the Wespac Lien under applicable bankruptcy and non-bankruptcy law.

  d. In addition, upon entry of the Approval Order and that order becoming a Final Order, the automatic stay of Bankruptcy Code § 362(a), and all other stays or injunctions arising from the Joint Cases, the Lawsuit or otherwise, shall be terminated as to Elk Pass Lot 46 and Wespac Communities shall be entitled to take all actions to enforce, foreclose and collect upon the Wespac Lien against Elk Pass Lot 46 in the Lawsuit and otherwise.

  6. **Partial Release of Wespac Lien.** Within ten (10) business days after Wespac Communities' receipt of the Settlement Payment, Wespac Communities shall release Elk Pass Lots 30 and 45 (the "Released Lots") from the Wespac Lien and dismiss Lewis Lavelle McCoy and Janet Lee McCoy as Trustees of the McCoy Family Trust U/A DTD 8-1-08, Brian J. Igel and Frederick Chen from the Lawsuit with prejudice. The lawsuit will proceed against all other parties and against Lot 46, although Wespac will agree to dismiss National Bank of Arizona if National Bank of Arizona stipulates it has no lien or interest in Lot 46.

  7. **Wespac Support of Debtors' Reorganization Plan.** Provided that (a) all Parties have executed this Agreement, (b) the Bankruptcy Court has entered the Approval Order in the Joint Cases, and (c) the Approval Order has become a Final Order, Wespac Communities agrees to vote to accept any plan of reorganization proposed by the Debtors that incorporates the treatment of the Wespac Secured Claim as provided in paragraph 5(b) above.

  8. **Dismissal of Arbitration.** Within ten (10) business days after Wespac Communities' receipt of the Settlement Payment, Wespac Communities and Elk Pass shall jointly execute and submit to the AAA a joint request to close the Arbitration (and all claims of any type asserted therein) with all parties to pay their own arbitration expenses and attorneys'

5



fees incurred in the Arbitration ("Joint Request"). The Joint Request will direct the AAA to refund the AAA Deposits to Wespac Communities, c/o Robert Roos, Lewis and Roca, 40 N. Central Avenue, Phoenix, Arizona 85004.

9.  **Release of Claims by Wespac Parties.** Except for the obligations, rights and claims expressly provided for in this Agreement, and subject to (a) entry of the Approval Order by the Bankruptcy Court in the Joint Cases, (b) the Approval Order becoming a Final Order, and (c) Wespac Communities' receipt of the Settlement Payment, Wespac Construction, Wespac Communities and Wespac Residential, individually and on behalf of their respective predecessors, successors, assigns, affiliates, officers, directors, members, partners, associates, employees, attorneys, agents, trustees, insurers, shareholders, parents, subsidiaries, partnerships, co-venturers, other affiliated business entities and any other person or entity acting in any manner for or on behalf of them (collectively, the "Wespac Releasing Parties"), release and forever discharge each of the Debtors and their respective predecessors, successors, assigns, affiliates, officers, directors, members, partners, associates, employees, attorneys, agents, licensees, insurers, shareholders, parents, subsidiaries, divisions, partnerships, co-venturers, other affiliated business entities and any other person or entity acting in any manner for or on behalf of any of them (collectively, the "Debtor Released Parties"), from any and all liabilities, claims, demands, debts, obligations, expenses, losses, rights, damages and causes of action, whether known or unknown, fixed or contingent, arising out of or relating to the Contract, the Elk Pass Project, the Creekside Project, the Clubhouse Project, the contract between Wespac Construction and Lone Tree, the contract between Wespac Residential and Creekside, the Mediation, the Arbitration, the Lawsuit and the Wespac Lien (but only to the extent that lien affects Lots 30 and 45 in the Elk Pass Project), and any and all other claims arising out of, or relating to the construction of the Clubhouse Project, the Elk Pass Project and the Creekside Project other than Wespac Communities' right to maintain and prosecute the Wespac Lien on Elk Pass Lot 46. The release provided to the Debtor Released Parties and by the Wespac Releasing Parties in this paragraph is solely for the benefit of the Debtor Released Parties and shall not be construed as providing any release, waivers, rights, remedies or defenses to any other person or entity that is not a party to this Agreement. Without limiting the generality of the foregoing sentence, the release provided in this paragraph shall not preclude Wespac Communities from claiming or recovering (as part of the Wespac Secured Claim or otherwise) against any other person or entity, or from Lot 46, any attorneys' fees, legal expenses or other costs incurred by Wespac Communities in litigating the priority of, or foreclosing upon, the Wespac Lien on Elk Pass Lot 46, as permitted under applicable non-bankruptcy law.

10. **Release of Claims by Debtor Parties.** Except for the obligations and rights expressly provided for in this Agreement, and subject to (a) entry of the Approval Order by the Bankruptcy Court in the Joint Cases, and (b) the Approval Order becoming a Final Order, the Debtors, individually, as debtors-in-possession, and on behalf of their respective bankruptcy estates, predecessors, successors, assigns, affiliates, officers, directors, members, partners, associates, employees, attorneys, agents, trustees, insurers, shareholders, parents, subsidiaries, partnerships, co-venturers, other affiliated business entities and any other person or entity acting in any manner for or on behalf of them (collectively, the "Debtor Releasing Parties"), release and forever discharge each of Wespac Construction, Wespac Communities and Wespac Residential and their respective predecessors, successors, assigns, affiliates, officers, directors, members,

6



partners, associates, employees, attorneys, agents, licensees, insurers, shareholders, parents, subsidiaries, divisions, partnerships, co-venturers, other affiliated business entities and any other person or entity acting in any manner for or on behalf of any of them (collectively, the "Wespac Released Parties"), from any and all liabilities, claims, demands, debts, obligations, expenses, losses, rights, damages and causes of action, whether known or unknown, fixed or contingent, arising out of or relating to the Contract, the Elk Pass Project, the Creekside Project, the Clubhouse Project, the contract between Wespac Construction and Lone Tree, the contract between Wespac Residential and Creekside, the Mediation, the Arbitration, the Lawsuit and the Wespac Lien, and any and all other claims arising out of, or relating to the construction of the Clubhouse Project, Elk Pass Project and the Creekside Project. The release provided to the Wespac Released Parties and by the Debtor Releasing Parties in this paragraph includes all claims and causes of action arising under Bankruptcy Code §§ 542, 544, 545, 547, 548, 549 and 550. The release provided to the Wespac Released Parties and by the Debtor Releasing Parties in this paragraph is solely for the benefit of the Wespac Released Parties and shall not be construed as providing any release, waivers, rights, remedies or defenses to any other person or entity that is not a party to this Agreement. Notwithstanding the foregoing, the release provided by the Debtor Releasing Parties in this paragraph shall not release Wespac Construction, Wespac Residential or Wespac Communities from claims for latent defects which are defined as hidden or concealed defects which are unknown and could not be discovered as of the date of this agreement by a reasonable and customary observation or inspection.

11. **Maintenance of the Lawsuit.**

    a. Except as to the dismissal of certain defendants as provided in paragraph 6 above, notwithstanding anything in this Agreement to the contrary, Wespac Communities shall be entitled to maintain and prosecute its claims and causes of action in the Lawsuit for the following purposes:

        i. to determine the priority of the Wespac Lien on Elk Pass Lot 46; and

        ii. to enforce, foreclose and collect upon the Wespac Lien on Elk Pass Lot 46.

    b. Elk Pass stipulates and agrees that this Agreement and the Approval Order shall be admissible in evidence in the Lawsuit and shall establish conclusively, for the purposes of Wespac Communities' claims and causes of action in the Lawsuit, (i) the validity and enforceability under applicable non-bankruptcy law of the Wespac Secured Claim (as defined above in paragraph 4), less any payments made on the Wespac Secured Claim through a plan in the Joint Cases or in the Lawsuit, (ii) that the Wespac Secured Claim is secured by a valid and enforceable mechanic's lien in favor of Wespac Communities (*i.e.*, the Wespac Lien) against Elk Pass Lot 46 under applicable non-bankruptcy law.

    c. At the request of Wespac Communities, Elk Pass shall consent to, or join in, any pleading filed by Wespac Communities in the Lawsuit that is necessary to maintain the Lawsuit on the docket of the Coconino County Superior Court for the

7



petition for certiorari, or other proceeding for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to Wespac Construction, Wespac Communities and Wespac Residential or, in the event that an appeal, writ of certiorari, or re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court on the last such appeal shall have been determined by the highest court to which such order was appealed with no further remand or other proceedings contemplated, or certiorari, re-argument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for re-argument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or Rule 9023 or 9024 of the Federal Rules of Bankruptcy Procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

d. The Parties shall use their best efforts to obtain granting of the Approval Motion and entry of the Approval Order by the Bankruptcy Court in the Joint Cases as promptly as possible.

e. In the event (a) the Approval Motion is denied by the Bankruptcy Court, or (b) the Approval Motion is granted by the Bankruptcy Court, but only on terms that are not mutually-accepted by the Parties, or (c) the Approval Order is not entered by the Bankruptcy Court on or before 45 days after the date of the filing of the Approval Motion, this Agreement shall be null and void and the Parties shall return to the status quo ante. In the event this Agreement is terminated pursuant to this provision, this Agreement, the terms of this Agreement, the fact that the Parties entered into this Agreement, and the negotiations leading to this Agreement shall not be admissible in evidence for any purpose by any person or party in the Joint Cases, the Lawsuit, the Arbitration, or any other action or proceeding and this Agreement shall be treated as though it never existed.

13. **Attorneys' Fees.** Except as to Wespac Communities' right to collect its attorney's fees and costs as part of the Wespac Secured Claim out of foreclosure of the Wespac Lien against Elk Pass Lot 46, the Parties shall pay their own costs and attorneys' fees incurred in the Mediation, the Arbitration, and the Lawsuit, or during the Clubhouse Project, the Creekside Project or the Elk Pass Project. Notwithstanding the foregoing, if any party brings an action to enforce the terms of this Agreement or to obtain a declaration of the rights and obligations of the Parties hereunder, the prevailing party in any such action, as determined by the court, on trial or appeal, shall be entitled to its reasonable attorneys' fees and costs to be paid by the losing party, as determined by the court.

14. **No Admission of Liability.** This Agreement is not intended to and does not act as an admission by any party of any liability to any other party. Rather, the Parties enter into this Agreement solely in compromise and settlement of disputed claims, and to avoid risk, additional litigation costs and other expenses.

9

15. **Further Actions.** The Parties shall take all actions reasonably necessary to carry out the provisions and purposes of this Agreement.

16. **Authority to Execute.** The Parties, each of whom is and has been represented by counsel, jointly drafted this agreement. Each party or responsible agent thereof has read this Agreement and understands its contents. Each individual executing this Agreement represents and warrants that he or she has the necessary authority and is duly empowered to execute this Agreement on behalf of the entity indicated.

17. **No Assignment.** The Parties represent and warrant that they have not previously assigned or transferred or purported to assign or transfer any of the claims or obligations released by this Agreement.

18. **Integration Clause.** This Agreement constitutes the full and complete understanding of the Parties with respect to the subject matters addressed in the Agreement. This Agreement supersedes any and all prior or contemporaneous oral agreements or understandings and is the final agreement of the Parties with respect to the subject matters addressed in the Agreement.

19. **Severability.** If any provision of this Agreement is held to be illegal, invalid or unenforceable for any reason, such provision shall be fully severable from the Agreement and the remaining provisions shall be fully enforceable and effective notwithstanding the severance of the offending clause.

20. **Modification.** This Agreement shall not be modified or amended except by a written instrument signed by the Parties.

21. **Counterparts.** This Agreement may be executed in any number of counterparts; all counterparts are deemed to constitute one and the same instrument and each counterpart is deemed to be an original agreement. The Agreement may be executed and delivered by facsimile or electronic signature.

22. **Applicable Law.** The laws of the state of Arizona shall govern the validity, construction, interpretation and administration of this Agreement, except as to those matters governed by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. The provisions of this Agreement shall not be construed against any particular party.

WESPAC CONSTRUCTION, INC., AN ARIZONA CORPORATION

Dated: 4/1/11

By: _____

Its: Principal / Vice President

Dated: 4/1/11

WESPAC COMMUNITIES, INC., AN ARIZONA CORPORATION

By: *[signature]*

Its: Principal/Vice President

Dated: 4/1/11

WESPAC RESIDENTIAL, INC., AN ARIZONA CORPORATION

By: *[signature]*

Its: Principal/Vice President

Dated: 3/31/11

ELK PASS, L.L.C., AN ARIZONA LIMITED LIABILITY COMPANY

By Lone Tree Investments, LLC, its sole member

By Central and Osborn Properties, Inc., its manager

By *[signature]*
Patricia E. Nolan, President

Dated: 3/31/11

CREEKSIDE VILLAGE HOMES, LLC, AN ARIZONA LIMITED LIABILITY COMPANY

By Lone Tree Investments, LLC, its sole member

By Central and Osborn Properties, Inc., its manager

By *[signature]*
Patricia E. Nolan, President

Dated: 3/31/11        LONE TREE INVESTMENTS, LLC, AN ARIZONA
                      LIMITED LIABILITY COMPANY

                      By Central and Osborn Properties, Inc., its manager
                      By _____
                      Patricia E. Nolan, President


Dated: 3/31/11        PINE CANYON GOLF, LLC, AN ARIZONA LIMITED
                      LIABILITY COMPANY

                      By Lone Tree Investments, LLC, its sole member

                      By Central and Osborn Properties, Inc., its manager
                      By _____
                      Patricia E. Nolan, President


Dated: 3/31/11        MOUNTAIN VISTA AT PINE CANYON, LLC, AN
                      ARIZONA LIMITED LIABILITY COMPANY

                      By Lone Tree Investments, LLC, its sole member

                      By Central and Osborn Properties, Inc., its manager
                      By _____
                      Patricia E. Nolan, President


Dated: 3/31/11        DEER CREEK CROSSING, LLC, AN ARIZONA
                      LIMITED LIABILITY COMPANY

                      By Lone Tree Investments, LLC, its sole member

                      By Central and Osborn Properties, Inc., its manager
                      By _____
                      Patricia E. Nolan, President